## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br>257 Park Ave. S.<br>New York, NY 10010,<br><br>　　　Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRIGHT, in his official<br>capacity as Secretary of Energy,<br>1000 Independence Ave. SW<br>Washington, DC 20585,<br><br>UNITED STATES DEPARTMENT OF<br>ENERGY,<br>1000 Independence Ave. SW<br>Washington, DC 20585,<br><br>EDWARD FORST, in his official capacity<br>as Acting Archivist of the United States,<br>8601 Adelphi Road<br>College Park, MD 20740,<br><br>NATIONAL ARCHIVES AND RECORDS<br>ADMINISTRATION,<br>8601 Adelphi Road<br>College Park, MD 20740,<br><br>　　　Defendants. | Civil Action No. 26-cv-928 |

### AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.　　Plaintiff Environmental Defense Fund (EDF) brings this action to compel the U.S. Department of Energy (DOE) and the National Archives and Records Administration (NARA) to perform their legal duties to prevent DOE political appointee employees from unlawfully removing or destroying important federal records.

2.      Documents produced to EDF pursuant to a court order in a separate case reveal that multiple DOE political appointees have used personal email accounts extensively to conduct government business. Specifically, pursuant to the Federal Advisory Committee Act (FACA), EDF obtained communications between DOE political appointees and members of the advisory committee in question, the Climate Working Group (CWG). But in the FACA suit, the government appears to have only disclosed email records sent or received by CWG members, and thus all other emails of these federal officials have not been disclosed, such as internal DOE communications regarding the work of the CWG, and other emails reflecting the official work of the relevant DOE employees. Thus, the records that EDF obtained in the FACA suit are just one subset of the much broader universe of records that these officials have created and received in performing their duties.

3.      The Federal Records Act (FRA) requires agencies to preserve all federal records, and directs agency heads to recover records that have been removed from the agency. Given the many known instances of DOE political officials using personal email for official work, EDF notified DOE and NARA of these officials' inappropriate use of personal email accounts for official government business. EDF also requested that NARA specifically investigate the unauthorized use of the messaging app Signal by at least one DOE political appointee to conduct official government business, but to EDF's knowledge, NARA has not conducted any such investigation.

4.      Ensuring the recovery and preservation of government records, as required by the FRA, is of critical importance to fulfill principles of government transparency. The Freedom of Information Act provides a statutory pathway for the public to seek government records, but the government can only release such records to the public if they are in its possession.

5.      EDF accordingly brings this suit to prevent the unlawful removal or destruction of these records and to compel Defendants to fulfill their legal obligations to preserve and recover federal records sent or received by DOE officials on personal email accounts.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under federal law, specifically the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.*, the FRA, 44 U.S.C. §§ 3301 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

8.      Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to environmental problems based on law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

9.      EDF engages in extensive, daily efforts to inform the public about matters affecting public health, environmental and energy policy, as well as about climate change science and the human health impacts of pollution. EDF has long advocated for measures to protect people and communities from the harmful effects of air pollution and climate change. EDF advocated for and supported the Environmental Protection Agency's ("EPA") 2009 Endangerment Finding concluding that greenhouse gas emissions endanger human health and welfare, and supported protective EPA standards to reduce air and climate pollution from sources such as power plants, cars and trucks, and oil and gas operations. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, reports and analyses, scientific

studies, and engagement on social media. EDF is frequently called upon to share its expertise on important public health and environmental issues in the popular media and in other public forums.

10.    Defendant DOE is an agency of the United States government.

11.    Defendant Christopher Wright is the Secretary of Energy and is sued in his official capacity.

12.    Defendant National Archives and Records Administration is an agency of the United States government.

13.    Defendant Edward Forst is the Acting Archivist of the United States and is sued in his official capacity.

## BACKGROUND

**A.    The Federal Records Act**

14.    The Federal Records Act of 1950 governs the creation, management, and disposal of "records" by federal agencies. *See generally* 44 U.S.C. Chs. 21, 29, 31, and 33.

15.    The FRA defines "records" to include:

> All recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them[.]

44 U.S.C. § 3301(a)(1)(A).

16.    The FRA requires that agency heads "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. Agency heads also "shall establish safeguards against the removal or loss of records," including by "making it

4

known to officials and employees of the agency . . . that records in the custody of the agency are not to be alienated or destroyed," *id.* § 3105, and "shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," *id.* § 3102.

17.     Individual federal employees also have obligations under the FRA. Federal employees "may not create or send a record using a non-official electronic messaging account unless such officer or employee" takes one of two measures to ensure the record is preserved: "(1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record"; or (2) "forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). Congress has made clear that "an employee of an executive agency may not create or send a record from a nonofficial electronic messaging account without ensuring such record was submitted to an official electronic messaging account." *See* U.S. Senate Comm. on Homeland Sec. and Govt. Affairs, *Presidential and Federal Records Act Amendments of 2014*, S. Rep. No. 113-218 at 5 (2014).

18.     The FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a).

19.     The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency." *Id.*

20.     The Archivist also has a central role in ensuring fulfillment of FRA requirements. The Archivist "shall notify the head of a Federal agency" of any actual or impending unlawful removal or destruction of records "that shall come to the Archivist's attention." 44 U.S.C. § 2905(a). If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable time period," then the Archivist "shall request the Attorney General to initiate such an action." *Id.*; *see also id.* § 3106(b) (similar); *id.* § 2115 (similar).

21.     The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to agency discretion. *See Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016); *Armstrong v. Bush*, 924 F.2d 282, 295–96 (D.C. Cir. 1991).

22.     When both the agency head and the Archivist have "failed to initiate remedial action in a timely [manner], private litigants may sue under the APA to require them to do so." *CREW v. DHS*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (quotations omitted).

23.     Thus, the APA "authorizes the Court to entertain a claim that the head of the [agency] or the Archivist have breached their statutory obligations to take enforcement action to prevent an agency official from improperly destroying records or to recover records unlawfully removed from the agency." *Id.*

**B.     DOE Assembles a "Climate Working Group" to Advise the Federal Government on Climate Policy**

24.     In March 2025, Secretary of Energy Chris Wright convened a "Climate Working Group" ("CWG") of five individuals from outside the government to "write a report on issues in climate science relevant for energy policymaking, including evidence and perspectives that challenge the mainstream consensus." *See* U.S. Dept. of Energy Climate Working Group,

Report: *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate* at x (July 2025), https://perma.cc/2H32-MVCY ("CWG Report").

25.    Specifically, the CWG was charged with preparing a report that could be used by the Trump Administration to rescind the U.S. Environmental Protection Agency's (EPA) 2009 "Endangerment Finding," the science-based determination by EPA that greenhouse gases threaten the public health and welfare of current and future generations, and that emissions from motor vehicles and engines contribute to the greenhouse gas pollution that threatens public health and welfare. *See* 74 Fed. Reg. 66,496 (Dec. 15, 2009).

26.    Beginning in April 2025 and for the next three months, the CWG's five members worked on their report, as well as developing other policy recommendations requested by the Trump Administration. During this time, CWG members were in regular contact over email with each other as well as with officials at DOE, who provided direction and input throughout the process. As detailed below, DOE officials regularly used their personal email accounts to communicate with CWG members, even though they were discussing official government work.

27.    For example, on April 19, 2025, a DOE official who helped organize and oversee the CWG, Travis Fisher, emailed the group from his personal email address to convey the group's "exact charge" for the report, stating that it was "to provide an update on the science relevant to the EPA's endangerment determination with respect to [greenhouse gases]." *See* Ex. 1 (DOJ 17144).

28.    CWG members and government officials likewise discussed over email various different approaches to undermine the well-established science supporting the Endangerment Finding. For example, on April 21, 2025, one CWG member circulated an essay by a prominent climate skeptic and described it as providing a "good explanation of why the [Administration]

may want to move on the [Endangerment Finding] without a science paper." In response, a DOE official emailed from a personal email account that "the plan is to make a two-pronged argument . . . covering the strictly legal case [for repeal] and updating/revising the scientific underpinnings." Ex. 2 (DOJ 17278).

29.     CWG members and DOE officials also discussed over email issues related to timing and process. In an April 24 email to the CWG, a DOE official emailed from his personal account that Secretary Wright had told him that the CWG's "new deadline [for a draft report] is May 28" and that he "fe[lt] pretty strongly that this is a firm and final deadline." The DOE official also discussed "increas[ing] [the CWG's] coordination with EPA, particularly the legal team drafting the rulemaking." Ex. 3 (DOJ 16025).

30.     After further back and forth with DOE officials over their personal emails, on May 27, 2025, the CWG submitted the draft report to DOE, which DOE transmitted to EPA. *See* 90 Fed. Reg. 36288, 36292, n.10.

31.     On July 29, 2025, DOE published the final CWG Report, titled *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate*.

**C.      EDF Sues DOE and the CWG for Violating the Federal Advisory Committees Act**

32.     In August 2025, EDF and the Union of Concerned Scientists (UCS) sued Secretary Wright, DOE, and the CWG for violating the Federal Advisory Committee Act (FACA). FACA establishes several requirements for federal advisory committees, including that they generally make their meetings, emails, and other records open to the public. *See* 5 U.S.C. §§ 1009, 1010.

33.     The CWG complied with none of FACA's requirements. Rather than notifying the public promptly of the CWG's establishment, DOE kept the committee's existence secret

until after DOE published its report. CWG members worked in secret for months without making the advisory committee's meetings or records available to the public.

34. In light of these clear violations of FACA, EDF and UCS filed a complaint seeking to compel the government to disclose the records of the CWG, amongst other remedies. *See EDF v. Wright*, No. 25-cv-12249 (D. Mass. filed Aug. 12, 2025).

35. The district court agreed with Plaintiffs that the CWG "was a Federal Advisory Committee" subject to the requirements of FACA and ordered the government to produce all records of the CWG that the government had previously withheld. Judgment at 3, *EDF v. Wright*, No. 25-cv-12249 (D. Mass. Jan. 30, 2026), Dkt. 99; *see also* Order, *EDF v. Wright*, No. 25-cv-12249 (D. Mass. Dec. 8, 2025), Dkt. 78 (ordering the government "to produce FACA Records").

**D.   Government Records Reveal That DOE Officials Used Personal Email Accounts to Communicate with the CWG, a Federal Advisory Committee**

36. The records that the government produced in response to the Court's order in the FACA action revealed extensive use of personal email accounts by DOE political appointees to conduct government business. The records show that at least three DOE officials —Seth Cohen, Travis Fisher, and Joshua Loucks—communicated using their personal email accounts with each other and with members of the CWG regarding the work of the CWG. The records also show that DOE political appointees and CWG members were aware of the possibility of government records becoming public under the Freedom of Information Act and sought to prevent their correspondence from being accessed through FOIA.

37. The disclosed emails were clearly created for official DOE purposes—they discuss DOE's oversight of the CWG and coordination with EPA and the White House, as the

advisory committee developed a report to support EPA's rulemaking to repeal the Endangerment Finding.

38. For example, on April 19, 2025, DOE political appointee Fisher emailed the CWG advisory committee members, from a personal account, providing them an "assignment" for their work to draft the report, stating "I was asked to share the table of contents [for the report] with the EPA team this evening," and informing the CWG that "the EPA team asked that the document be DOE-branded." Ex. 1 (DOJ 17144).

39. In an April 24, 2025 email sent from a personal account, Fisher emailed the CWG members describing discussions between DOE, the White House, and EPA, including sharing that "Wright and Zeldin are traveling together today, so we should have an answer soon"— referring to Energy Secretary Wright and EPA Administrator Zeldin's pending decision about the deadline for the CWG to complete their report. Ex. 4 (DOJ 16021).

40. On June 3, 2025, DOE political appointee Fisher emailed the CWG from his personal account, with guidance regarding an effort to critique the Fifth National Climate Assessment (NCA5) and the U.S. Global Change Research Program, stating: "[M]y understanding is that we should critically review NCA 5 (at whatever level of detail is feasible in a period of a couple of weeks) through the lens of the statute, the executive order, and the DOE report. As of right now, we should write this document as a response to a request from OSTP [the White House's Office of Science and Technology Policy] . . . ." Ex. 5 (DOJ 15571).

41. On June 3, 2025, DOE official Seth Cohen emailed, from a personal account, Travis Fisher and Joshua Loucks (on their personal email accounts) and the CWG members, in a discussion regarding the "Scoping" for the above-referenced NCA5 critique to be developed by the CWG. Ex. 6 (DOJ 329).

42.     As stated in an email sent June 4, 2025, DOE political appointee Loucks used his personal email account to organize a Google Drive folder for the CWG, to manage their files and drafting process for the project critiquing NCA5. Ex. 7 (DOJ 17550).

43.     On July 1, 2025, Fisher, from a personal account, emailed DOE political appointees Loucks (at a personal account) and Cohen (at a government account) and the CWG members, to inform the group that "the draft notice of proposed rulemaking from EPA was circulated earlier today for interagency review"—presumably referring to EPA's proposed rule to repeal the Endangerment Finding. Ex. 8 (DOJ 17250).

44.     On July 19, 2025, Fisher, from a personal account, emailed the CWG members: "I'm sending this email to warn you that all the reviewer materials will be coming from my DOE account . . . please keep in mind that my DOE emails (and your replies) will be easily discoverable by outside parties." Ex. 9 (DOJ 160).

45.     After the release of its report, one CWG member sent an email to the group with the subject line "keeping it to ourselves," that warned that "email communications that go to DOE addresses are subject to FOIA" and urged the group to keep future communications "restricted to the authors (except, of course, for matters that directly involve the DOE . . .)." Ex. 10 (DOJ 1942).

46.     EDF has reviewed the more than 100,000 pages of CWG records it received through the FACA case, approximately 8,000 of which contain email records. The FACA records contain at least 400 email chains (meaning an unbroken series of emails in which each message is a direct reply to preceding one) involving the personal email accounts of DOE political appointees, and at least 1,300 individual emails sent from or received by a DOE political appointee's personal email account. Some of the emails involve the personal email

11

account of one DOE employee and the government email account of another DOE employee. Additionally, there are at least 50 email chains and at least 80 individual emails where it is unclear from the records provided whether DOE political appointees were using their personal or government email accounts, in emails involving government business.

47.     In addition to using personal email accounts for government business, on information and belief, at least one DOE political appointee (Seth Cohen) regularly used the messaging app Signal for substantive work communications.

48.     Government employees are not authorized to use Signal for official government business. On information and belief, individuals such as Mr. Cohen who have used Signal for government work have not forwarded copies of work-related Signal messages to an official electronic messaging account, as the FRA requires. 44 U.S.C. § 2911(a).

**E.     EDF Requests DOE Records Through FOIA**

49.     Since January 2025, EDF has submitted seventeen Freedom of Information Act (FOIA) requests to DOE, with eleven requests pending before the agency that seek records of the correspondence of DOE Trump Administration officials including emails, voicemails, text messages, and Signal messages.

50.     Of EDF's 17 requests, 16 remain pending and DOE has released records in response to only three of them, releasing 33 pages on February 13, 2026 (for Request No. HQ-2026-00069-F via sub-request GFO-2026-00983-F) and releasing 875 pages during March through July 2026 (for Request Nos. HQ-2025-03874/75-F). EDF expects further additional productions in response to the pending requests. One request sought records of correspondence of DOE political appointees, and was closed by the agency for a lack of responsive records (Request No. HQ-2025-02085-F).

51.     On information and belief, the DOE officials who used their personal email accounts to create or receive the records obtained in the FACA litigation did not forward the emails to their official email accounts. EDF would not have obtained these records had they not prevailed in the FACA lawsuit. To date, EDF has not received any records from DOE in response to its FOIA requests that indicate that DOE political appointees successfully preserved their personal email records as government records.

52.     On information and belief, these DOE officials have also used their personal email addresses to engage in other official business, including but not limited to communicating about the CWG and the Endangerment Finding but not with members of the CWG, and the officials did not copy or forward these emails to their official email accounts as the FRA requires.

53.     On information and belief, the records that have not been properly preserved by the agency pursuant to the FRA are relevant to the following EDF FOIA requests:

1. Request No. HQ-2025-02094-F
2. Request No. HQ-2025-02347-F
3. Request No. HQ-2025-02670-F
4. Request No. HQ-2025-03740-F
5. Request No. HQ-2025-03628-F
6. Request No. HQ-2025-03874-F
7. Request No. HQ-2025-03875-F
8. Request No. HQ-2026-00069-F / GFO-2026-00983-F
9. Request No. HQ-2026-01548-F
10. Request No. HQ-2026-02154-F
11. Request No. HQ-2025-02085-F[1]

---

[1] As noted above, DOE closed this Request due to lack of records. To the extent that any responsive records were created using personal email addresses, those documents would not have been collected and reviewed prior to DOE making that determination.

**F.**     **EDF Notifies the Government of Its Obligations Under the Federal Records Act, But Receives No Response**

54.     After receiving and reviewing the government records revealing extensive use of personal email accounts by DOE political appointees, on February 9, 2026, EDF notified Secretary Wright and DOE by letter of its obligations to preserve electronic records under the FRA. EDF provided examples of DOE political appointees Cohen, Fisher, and Loucks using their personal email accounts for official business; provided a sample of 44 pages of email records demonstrating such use of personal email accounts; and reminded the agency of its obligations to preserve federal records, including the obligation of employees not to use personal email accounts without ensuring that the record is preserved. *See* 44 U.S.C. § 2911(a). EDF further reminded the agency that agency heads *must* notify the Archivist of the United States of any "actual, impending, or threatened" unlawful removal or other destruction of federal records. *Id.* § 3106(a).

55.     EDF requested that Secretary Wright immediately take appropriate action to fulfill DOE's obligations under the FRA, including to ensure preservation of records in the possession of agency staff, and to ensure that employees are appropriately creating and preserving records within government systems on a going-forward basis. EDF requested that the Secretary respond by March 2, 2026, describing the actions he has taken to address the issues raised in EDF's letter.

56.     At the same time, EDF wrote to James Byron and the National Archives regarding the DOE officials' use of personal email for government business and reminded them of the Archivist's obligations under the FRA. Specifically, as noted, the Archivist has an obligation under federal law to "notify the head of a Federal agency" of an actual or impending unlawful removal or destruction of agency records "that shall come to the Archivist's attention." 44 U.S.C.

14

§ 2905(a). And if an agency "does not initiate an action" for the recovery of records after having been notified, then the Archivist "shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." *Id.*

57.     EDF requested that the Archivist notify Secretary Wright of the unlawful removal of agency records through the use of personal messaging platforms. EDF requested that the Archivist respond regarding steps he had taken to address the issues by March 2.

58.     Neither DOE nor the Archivist have responded to EDF's February 9 letters. On May 28, 2026, counsel for Defendants informed EDF's counsel that NARA had initiated an investigation into the issues raised in EDF's February letters. According to Defendants, NARA sent DOE a letter on May 6, 2026, requesting that DOE investigate the unauthorized disposition allegation submitted to NARA by EDF. *See* NARA Status Report at 1, Dkt. 14 (July 1, 2026). According to Defendants, DOE provided its report to NARA on June 18, 2026 and sent additional documentation to NARA on June 30, 2026. *Id.* According to Defendants, NARA is reviewing the additional documentation. *Id.*

59.     Meanwhile, on June 4, 2026, EDF wrote to Defendant Forst and NARA to supplement its letter of February 9 to expressly request that NARA's investigation into DOE include review of the use of Signal by DOE political officials, including Seth Cohen, who was already a subject of NARA's investigation into unauthorized personal email use.[2] Dkt. 12-3.

---

[2] Indeed, Cohen was a central figure in the Department of Government Efficiency (DOGE), and it has been widely reported that DOGE employees communicated extensively using Signal. *See, e.g. CREW v. DOGE*, 769 F. Supp. 3d 8, 12 (D.D.C. 2025) ("[DOGE] employees reported being added to Signal groups after joining the organization, and on the eve of President Trump's inauguration, '[p]eople involved in the operation [said] that secrecy and avoiding leaks is paramount, and much of its communication is conducted on Signal.") (quoting Theodore Schleifer & Madeleine Ngo, *Inside Elon Musk's Plan for DOGE to Slash Government Costs*, N.Y. Times (Jan. 12, 2025, updated Jan. 23, 2025), https://www.nytimes.com/2025/01/12/us/politics/elon-musk-doge-government-trump.html (Jan. 23, 2025)); Avi Asher-Schapiro, *DOGE*

60.     NARA has not responded to EDF's June 4, 2026 letter. On information and belief, neither DOE nor the Archivist have taken steps to preserve work-related Signal messages or to recover Signal messages that have been lost or deleted.

## CLAIMS FOR RELIEF

### COUNT I – Violation of the Federal Records Act
### (APA Cause of Action Against Defendants DOE and Wright)

61.     Plaintiff incorporates by reference all preceding paragraphs.

62.     The communications that were sent or received by DOE officials on personal email accounts and Signal are federal records under the FRA, 44 U.S.C. § 3301(a)(1)(A), and must be preserved and safeguarded against removal or loss, *see id.* §§ 2904(c)(1), 3105.

63.     Defendant Wright, in his capacity as Secretary of Energy, knows or reasonably should know that the DOE officials in question, have been communicating about official work from the personal email accounts and Signal, and knows or reasonably should know that these communications are "records" under the FRA.

64.     Defendant Wright has actual or constructive notice that the emails described above have been removed from DOE, as Plaintiff notified the Secretary of that fact by letter dated February 9, 2026. On information and belief, Defendant Wright also has actual or constructive notice that at least some of the DOE officials in question used Signal to communicate about official work.

---

*Goes Nuclear: How Trump Invited Silicon Valley Into America's Nuclear Power Regulator*, N.Y. Times (Mar. 20, 2026), https://www.propublica.org/article/trump-nuclear-power-nrc-safety-doge-vought.

65.     Because Defendant Wright has notice of the FRA violations, he has a nondiscretionary duty under the FRA to report the violations to the Archivist and to initiate an enforcement action through the Attorney General to recover the records.

66.     Defendant Wright has failed to perform his nondiscretionary duty to preserve and recover the unlawfully removed records.

67.     Defendant Wright has failed to perform his nondiscretionary duty to notify the Archivist of the above-described known FRA violations.

68.     Defendant Wright has failed to perform his nondiscretionary duty to initiate an action through the Attorney General to preserve and recover the unlawfully removed records or for other redress.

69.     Defendant Wright's failures and violations have injured Plaintiff by compromising federal records that may be responsive to Plaintiff's pending and future FOIA requests, thereby increasing the likelihood that Plaintiff will be unable to obtain responsive federal records now and in the future.

70.     Defendant Wright's failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### COUNT II – Violation of the Federal Records Act
### (APA Cause of Action Against Defendants NARA and Forst)

71.     Plaintiff incorporates by reference all preceding paragraphs.

72.     Defendants NARA and Forst, in his capacity as Acting Archivist, have an independent nondiscretionary duty under the FRA to initiate a recovery action or action for other redress through the Attorney General when the agency head fails to do so.

17

73.     Defendants NARA and Forst have been made aware of the unlawfully removed agency records by Plaintiff.

74.     Defendant Forst knows or reasonably should know that Defendant Wright failed to take appropriate action to preserve the communications involving or relating to the CWG described above and work-related Signal messages.

75.     Defendant Forst has also failed to act consistent with his independent obligation to initiate an action for recovery or other redress. Accordingly, Defendants NARA and Forst are in default of their nondiscretionary obligations under the FRA.

76.     This failure to act is a final agency action for which there is no adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

### COUNT III – Mandamus for Failure to Take Nondiscretionary Actions
### (Against Defendant Wright)

77.     Plaintiff incorporates by reference all preceding paragraphs.

78.     "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

79.     As set forth above, the FRA imposes non-discretionary duties on agency heads with respect to federal records.

80.     As set forth above, Defendant Wright has violated his non-discretionary duties under the FRA.

81.     As set forth above, Plaintiffs have a clear right to relief from Defendant Wright's FRA violations.

82.     To the extent the Court finds that the APA does not authorize the relief sought herein, mandamus is Plaintiffs' only adequate remedy, and there are compelling equitable circumstances for issuing a writ of mandamus.

83.     Plaintiff is therefore entitled to a writ of mandamus compelling Defendant Wright to comply with his non-discretionary duties under the FRA.

### COUNT IV – Mandamus for Failure to Take Nondiscretionary Actions
### (Against Defendant Forst)

84.      Plaintiff incorporates by reference all preceding paragraphs.

85.     "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

86.     As set forth above, the FRA imposes non-discretionary duties on the Archivist with respect to federal records.

87.     As set forth above, Defendant Forst has violated his non-discretionary duties under the FRA.

88.     As set forth above, Plaintiffs have a clear right to relief from Defendant Forst's FRA violations.

89.     To the extent the Court finds that the APA does not authorize the relief sought herein, mandamus is Plaintiffs' only adequate remedy, and there are compelling equitable circumstances for issuing a writ of mandamus.

90.     Plaintiff is therefore entitled to a writ of mandamus compelling Defendant Forst to comply with his non-discretionary duties under the FRA.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

19

1.	Declare that the communications sent and received by DOE employees from personal electronic messaging accounts and Signal related to the transaction of government business are agency records subject to the FRA;

2.	Declare that the failure to ensure such messages and communications are preserved, as required by 44 U.S.C. § 2911, constitute an unlawful removal of federal records in violation of the FRA;

3.	Declare that Defendants have violated their respective duties under the FRA and APA;

4.	Issue injunctive relief ordering Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA;

5.	Issue injunctive relief ordering Defendants to preserve all materials relating to Plaintiffs' claims under the FRA;

6.	Grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action; and

7.	Grant Plaintiff any other relief this Court deems appropriate.


August 6, 2026	Respectfully submitted,

	/s/ John Robinson
	Daniel F. Jacobson (D.C. Bar 1016621)
	Lynn D. Eisenberg (D.C. Bar 1017511)
	John Robinson (D.C. Bar 1044072)
	JACOBSON LAWYERS GROUP PLLC
	5100 Wisconsin Ave NW, Suite 301
	Washington DC, 20016
	(301) 823-1148
	dan@jacobsonlawyersgroup.com


20

*/s/ Erin Murphy*
Erin Murphy (Bar ID D00532)*
ENVIRONMENTAL DEFENSE FUND
555 12th St. NW, Suite 400
Washington, D.C. 20004
(202) 572-3525
emurphy@edf.org
*Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)*

*Counsel for Environmental Defense Fund*
*Fund*

21