IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRIGHT,<br>Secretary of Energy, et al.,<br><br>Defendants. | Civil Action No. 26-0928 (CJN) |

**DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM**

# TABLE OF CONTENTS

Table of Contents ........................................ i

Table of Authorities ........................................ ii

Background........................................3

Legal Standard........................................8

Argument ........................................ 10

I. Plaintiff's Claims Should Be Dismissed for Lack of Jurisdiction........................................11

A. Plaintiff Has Failed to Plausibly Plead Standing........................................13

B. Plaintiff's Failure to Act Claims Are Not Ripe for Judicial Review........15

C. Mootness........................................23

II. Plaintiff Has Failed to State a Claim for Relief on the Merits........................................25

Conclusion ........................................ 28

# TABLE OF AUTHORITIES

Cases

*Action Alliance of Senior Citizens v. Heckler*,
789 F.2d 931 (D.C. Cir. 1986) ........................................ 12

*Air Excursions v. Yellen*,
66 F.4th 272 (D.C. Cir. 2023) ........................................ 14

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Ag.*,
946 F.3d 615 (D.C. Cir. 2020) ........................................ 26

*American First Legal Foundation v. Greer*,
153 F. 4th 1311 (D.C. Cir. 2025) ........................................ 15

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) ........................................ 11

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) ........................................ 7, 8, 16, 20

*Ashcroft v. Iqbal*,
556 U.S. 678 (2009) ........................................ 10

*Barazandeh v. United States Dep't of State, Civ. A. No. 23-1581*
(BAH), 2024 U.S. Dist. LEXIS 15726 (D.D.C. Jan. 30, 2024) ........................................ 25-26

*Baylor v. Mitchell Rubenstein & Assocs., P.C.*,
55 F. Supp. 3d 43 (D.D.C. 2014) ........................................ 10

*BEG Invs., LLC v. Alberti*,
85 F. Supp. 3d 13 (D.D.C. 2016) ........................................ 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 555 (2007) ........................................ 9

*Cause of Action Inst. v. Pompeo*,
319 F. Supp. 3d 230 (D.D.C. 2018) ........................................ 24

*Cause of Action Inst. v. Tillerson*,
285 F. Supp. 3d 201 (D.D.C. 2018) ........................................ 23

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) ........................................ 12, 15

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Policy*,
241 F. Supp. 3d 14 (D.D.C. 2017) ........................................ 18

*Competitive Enter. Inst.*,
67 F. Supp. 3d ........................................................................................................ 16

*CREW v. Department of Education*,
538 F. Supp. 2d 24 (D.D.C. 2008) ................................................................... 14, 15

*CREW v. Pruitt*,
319 F. Supp. 3d 252 (D.D.C. 2018) ...................................................................... 16

*Curran v. Holder*,
626 F. Supp. 2d 30 (D.D.C. 2009) .......................................................................... 8

*Cutler v. Dep't of Health & Hum. Servs.*,
797 F.3d 1173 (D.C. Cir. 2015) ........................................................................... 12

*Dalton v. Specter*,
511 U.S. 462 (1994) .............................................................................................. 27

*Davis v. FEC*,
554 U.S. 724 (2008) ........................................................................................ 12, 13

*Dominguez v. UAL Corp.*,
666 F.3d 1359 (D.C. Cir. 2012) ........................................................................... 11

*Erby v. United States*,
424 F. Supp. 2d 180 (D.D.C. 2006) ........................................................................ 9

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .............................................................................................. 12

*Fisheries Survival Fund v. Haaland*,
858 F. App'x 371 (D.C. Cir. 2021) ....................................................................... 18

*Franklin v. Mass.*,
505 U.S. 788 (1992) .............................................................................................. 27

*Garden State Broad. Ltd. P'ship v. F.C.C.*,
996 F.2d 386 (D.C. Cir. 1993) .............................................................................. 23

*Hollingsworth v. Duff*,
444 F. Supp. 2d 61 (D.D.C. 2006) ................................................................... 8-9, 9

*In re Bluewater Network*,
234 F.3d 1305 (D.C. Cir. 2000) ........................................................................... 26

*In re Ctr. for Biological Diversity*,
53 F.4th 665 (D.C. Cir. 2022) ............................................................................... 16

*Jafarzadeh v. Duke*,
270 F. Supp. 3d 296 (D.D.C. 2017) ................................................................. 12-13

*Jovanovic v. U.S.-Algeria Bus. Council*,
561 F. Supp. 2d 103 (D.D.C. 2008) .......... 9

*Judicial Watch, Inc. v. Kerry*,
844 F.3d 952 (D.C. Cir. 2016) .......... 8, 20, 21, 23

*Karimova v. Abate*,
No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) .......... 25

*Kissinger v. Reporters Committee For Freedom of the Press*,
445 U.S. 136 (1980) .......... 7, 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 8

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993) .......... 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 12, 23

*Lujan v. Nat'l Wildlife Federation*,
497 U.S. 871 (1990) .......... 26

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009) .......... 16

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.C. Cir. 1998) .......... 23

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) .......... 27

*Phoenix Consulting Inc. v. Republic of Angola*,
216 F.3d 36 (D.C. Cir. 2000) .......... 9

*Price v. Dept. of Just.,* Civ. A. No. 18-1339
(CRC), 2019 U.S. Dist. LEXIS 102099 (D.D.C. June 19, 2019) .......... 8, 14, 16-17, 20

*Public Citizen v. Carlin*,
184 F.3d 900 (D.C. Cir. 1999) .......... 6

*Scahill v. District of Columbia*,
909 F.3d 1177 (D.C. Cir. 2018) .......... 13

*Schmidt v. United States*,
749 F.3d 1064 (D.C. Cir. 2014) .......... 4, 11

*Spokeo, Inc. v. Robins*,

578 U.S. 330 (2016) ........................................................................................... 12, 13

*Steel Co. v. Citizens for a Better Envt.*,
523 U.S. 83 (1998) ........................................................................................... 11

*Texas v. United States*,
523 U.S. 296 (1998) ........................................................................................... 12

*United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*,
778 F. Supp. 2d 37 (D.D.C. 2011) ........................................................................... 8

*United States v. Hicks*,
283 F.3d 380 (D.C. Cir. 2002) ............................................................................... 10

*Univ. of Colo. Health at Mem'l Hosp. v. Azar*,
486 F. Supp. 3d 185 (D.D.C. 2020) ..................................................................... 11, 13

*Williams v. NASA,* Civ. A. No. 26-0564
(CRC), 2026 U.S. Dist. LEXIS 94392 (D.D.C. Apr. 29, 2026) ........................................... 19

Statutes

5 U.S.C. § 706 ........................................................................................... 16, 20, 26

5 U.S.C. § 1009 ........................................................................................... 3, 4

28 U.S.C. § 1361 ........................................................................................... 1, 4, 5, 16

44 U.S.C. § 2905 ........................................................................................... 7, 8

44 U.S.C. § 2911 ........................................................................................... 6, 7, 18, 23

44 U.S.C. § 3105 ........................................................................................... 7

44 U.S.C. § 3106 ........................................................................................... 8, 17

The Department of Energy (the "Department" or "DOE"), its Secretary, the National Archives and Records Administration ("NARA") and its Archivist (collectively, "Defendants"), move to dismiss this action under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).

Environmental Defense Fund ("EDF") alleges that federal records were unlawfully removed from agency custody when three Department officials, Seth Cohen, Travis Fisher, and Joshua Loucks, used their personal email accounts to perform work with members of the Department's Climate Working Group. EDF further alleges that the Department and NARA have failed in their alleged mandatory duty under the Federal Records Act ("FRA") to request that the Attorney General initiate an action to recover the records. In addition, after the filing of this action, EDF also has alleged that Cohen "regularly used the messaging app Signal for substantive work communications" and requested that NARA investigate that allegation.[1]

This action was filed on March 17, 2026, asserting claims under section 706(1) of the Administrative Procedure Act ("APA") and the mandamus statute, 28 U.S.C. § 1361, against the Secretary of Energy ("Secretary") and the Archivist for allegedly failing to undertake mandatory duties under the FRA related to the alleged personal email usage of the three DOE officials. On August 6, 2026, without leave of Court, EDF purported to add claims under the FRA to this action related to Cohen's alleged Signal usage by filing a pleading denominated as an "amended" complaint (ECF No. 17). Under Rule 15(d), however, that filing constituted a "supplemental" pleading that required leave of Court before filing.

---

[1] Cohen, Fisher, and Loucks separated from DOE at various times between July 2025 and June 2026 and are not presently employed by DOE. Burns Decl. ¶ 29

In addition to this procedural violation, EDF's claims require dismissal due to a host of jurisdictional and merits defects.

As to jurisdiction, Plaintiff has failed to plausibly plead that it has standing to bring its claims. The relief EDF seeks is an order requiring the Secretary and the Archivist to ask the Attorney General to initiate an enforcement action under the FRA. But the injury EDF alleges is to its ability to access agency records under the Freedom of Information Act ("FOIA"), and, because those requests are still being processed, EDF has not plausibly pled that it has a concrete injury to establish standing nor has it identified that redress of this alleged injury would be likely as opposed to speculative. In addition, EDF's claims were at the time of filing premature and not constitutionally ripe because EDF alleges only that a potential issue of non-compliance was brought to the attention of Defendants, not that facts were provided to the Secretary or Archivist that by themselves established an unlawful removal of records. In any event, both DOE and NARA already were taking steps to address EDF's allegations.

EDF's claims fare no better on the merits for similar reasons, including the absence of plausible allegations that the Secretary or the Archivist were on notice of an actual FRA violation when this lawsuit was filed and thus that there was a mandatory duty to act at that time. Likewise, even if the Court overlooks EDF's failure to obtain leave of Court before filing its supplemental pleading, the new claim that Plaintiff has asserted—related to alleged Signal usage "on information and belief"—is limited to conclusory allegations of notice of an actual FRA violation, which is insufficient to state a claim. Further, DOE has confirmed that Signal was not, and has never been, installed on Cohen's government-furnished devices.

The Court should thus dismiss this action for lack of jurisdiction or, alternatively, for failure to state a claim.

## BACKGROUND

### I. Factual Background Underlying Original Complaint

In March 2025, Secretary of Energy Chris Wright allegedly "convened a 'Climate Working Group' ('CWG') of five individuals from outside the government to 'write a report on issues in climate science relevant for energy policymaking, including evidence and perspectives that challenge the mainstream consensus.'" Am. Compl. ¶ 24. In August 2025, EDF sued Secretary Wright, the Department, and the CWG for violating the Federal Advisory Committee Act ("FACA"), for allegedly failing to make CWG's meetings, emails and other records open to the public. *Id.* ¶ 32. The district court in that case ruled that the CWG was subject to FACA, and ordered the Department to produce records of the CWG that would have been publicly disclosed pursuant to section 10(b) of FACA. *Id.* ¶ 35; *see* 5 U.S.C. § 1009(b).

EDF allegedly received over 100,000 pages of CWG records as a result of the FACA litigation and alleges that within those pages are emails sent to the CWG members from the personal email accounts of three agency officials, Seth Cohen, Travis Fisher, and Joshua Loucks. *Id*. ¶¶ 46, 54. On February 9, 2026, EDF "notified Secretary Wright and DOE by letter of its obligations to preserve electronic records under the FRA" and "provided examples of DOE political appointees Cohen, Fisher, and Loucks using their personal email accounts for official business." *Id*. ¶ 54. EDF "requested that the Secretary respond by March 2, 2026, describing the actions he has taken to address the issues raised in EDF's letter." *Id*. ¶ 55. EDF sent a similar letter to the Archivist, with a similar self-imposed deadline. *Id*. ¶¶ 56-57. In both letters, EDF stated that it had "submitted 15 [Freedom of Information Act ("FOIA")] requests to DOE since January 2025, with at least eight requests seeking correspondence of Trump Administration officials at DOE including emails, voicemails, text messages, Signal messages, and

correspondence transmitted through any other electronic platform. To date, EDF has not received any records from DOE in response to these FOIA requests." Ex. 1 and 2 to Burns Decl.; Neither letter stated whether processing of the FOIA requests had been completed or whether the requests sought communications from the three officials identified in the letter. *See id*. Further, neither letter alleged that those officials had failed to forward the emails from their personal accounts to their agency email.

EDF filed this action on March 17, 2026, alleging that "[a]s of the filing of this complaint, neither DOE nor the Archivist [had] responded to EDF's February 9 letters." Compl. (ECF No. 1) ¶ 56. EDF asserted claims under section 706(1) of the APA and the mandamus statute, 28 U.S.C. § 1361, against the Secretary and the Archivist for allegedly failing to undertake mandatory duties under the FRA. Specifically, EDF alleged that its February 9, 2026 letter to the Secretary afforded "actual or constructive" notice of an FRA violation and that the Secretary "has a nondiscretionary duty under the FRA to report the violation to the Archivist and to initiate an enforcement action through the Attorney General to recover the records." Compl. (ECF No. 1) ¶¶ 61-62. As to the Archivist, EDF alleged that by virtue of its letter the Archivist was aware of the unlawful removal of agency records and failed to act consistent with his independent obligation to initiate an action for recovery or other redress." *Id.* ¶¶ 70, 72. EDF sought declaratory relief and an injunction "ordering Defendants to comply with their respective duties under the FRA and APA, including by referring the matter to the Attorney General for enforcement of the FRA." *Id*. at 18-19.

In the Complaint, EDF also alleged that it submitted FOIA requests to the Department beginning January 2025. Plaintiff alleged that nine of the requests sought records that would encompass communications of the three officials who Plaintiff alleges used personal email accounts to communicate with the CWG. *Id.* ¶ 51. Plaintiff alleged that, at time this action was

filed, all those requests—with one exception—were still undergoing processing. *Id.* ¶¶ 48, 51. The one exception, Request No. HQ-2025-02085-F, allegedly had been closed. *Id.* ¶ 48. Although Plaintiff alleged that this request was closed "for a lack of responsive records," *id.*, the Department's records reflect that this request was closed due to the requester not responding to the Department's request to narrow the scope of the request. Burns Decl. ¶ 22.

## II. Plaintiff's "Amended" Complaint

On August 6, 2026, Plaintiff filed an "Amended Complaint" without leave of Court, apparently under the view that leave of Court was unnecessary because Defendants had not yet responded to the original Complaint. That pleading, however, is properly considered a "supplemental" Complaint because the new allegations all pertain to a "transaction, occurrence, or event that happened after the date of the [original] pleading," and thus it should have been accompanied by a motion for leave to file. *See* Rule 15(d). For ease of reference, and without waiver of this issue, Defendants refer to this supplemental pleading in this motion by its title, "Amended Complaint."

The Amended Complaint asserts the following additional allegations, all of which post-date the filing of this action.

As to the issue of private email usage, the Amended Complaint alleges that, on May 6, 2026, NARA sent DOE a letter, requesting that DOE investigate the unauthorized disposition allegation raised in EDF's February 9, 2026 letters, and that DOE provided a report to NARA on June 18, 2026, and sent additional documentation on June 30, 2026. Am. Compl. (ECF No. 17) ¶ 58.

The Amended Complaint also seeks to add an additional alleged FRA violation within the existing claims based on alleged Signal usage by a DOE employee, Seth Cohen. Plaintiff alleges

that "on information and belief, at least one DOE political appointee (Seth Cohen) regularly used the messaging app Signal for substantive work communications" and "[o]n information and belief, individuals such as Mr. Cohen who have used Signal for government work have not forwarded copies of work-related Signal messages to an official electronic messaging account, as the FRA requires. 44 U.S.C. § 2911(a)." Am. Compl. (ECF No. 17) ¶¶ 47-48. On June 4, 2026, EDF wrote to NARA to request an investigation into alleged Signal usage at DOE. *Id.* ¶ 59. That letter rests entirely on the conclusory and unsupported assertion that "EDF has learned that Cohen specifically has regularly used Signal for substantive work communications, and therefore the investigation and recovery of his Signal records should occur at the same time as the inquiry into his personal email use." Ex. 4 to Burns Decl.

EDF also alleges in the Amended Complaint that it now has submitted seventeen FOIA requests to DOE (as compared to the fifteen referenced in the original Complaint). Am. Compl. (ECF No. 17) ¶¶ 49, 53. Of those, sixteen allegedly remain pending. *Id.* ¶ 50. Accordingly, as of the filing of the Amended Complaint, the only closed request identified by Plaintiff was the request identified as closed in the original Complaint. As established above, that request was not closed due to a "lack of records" as alleged by Plaintiff (*id.* ¶ 53 n.1) but because EDF failed to respond to the Department's request to narrow the scope of the request. Burns Decl. ¶ 22.[2]

## III. Statutory Background

The FRA is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Public Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999), *cert denied* 529 U.S. 1003 (2000); *see* 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. The FRA

[2] Another request was closed but it did not seek information relating to Cohen, Loucks or Fisher. Burns Decl. ¶ 19.

"authorizes the head of each Federal agency to establish a records management program and to define the extent to which documents are appropriate for preservation as agency records." *Kissinger v. Reporters Committee For Freedom of the Press*, 445 U.S. 136, 147 (1980). Agency heads are directed by the FRA to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," and "shall establish safeguards against the removal or loss of records [they] determine[] to be necessary and required by regulations of the Archivist." 44 U.S.C. § 3105.

Under 44 U.S.C. § 2911, "[a]n officer or employee of an executive agency may not create or send a record using a non-official electronic messaging account unless such officer or employee—

> (1) copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record; or
>
> (2) forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record.

*Id*. § 2911 (a). Congress further provided that intentional violations of this provision "shall be a basis for disciplinary action" in the form of an adverse personnel action in the discretion of the appropriate supervisor. *Id.* § 2911(b).

The FRA also establishes an administrative enforcement scheme, consisting of two complementary mechanisms for protecting records. *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991). Under 44 U.S.C. § 2905, if the Archivist learns that federal records have been unlawfully removed, then he or she may notify the relevant agency head, assist the agency head in initiating an action through the Attorney General (or initiate the action himself or herself if the

agency head refuses) "for the recovery of records unlawfully removed and for other redress provided by law," and (in certain situations) notify Congress. 44 U.S.C. § 2905(a). 44 U.S.C. § 3106, in turn, directs each agency head to alert the Archivist of the unlawful removal of federal records and, with the assistance of the Archivist, initiate action through the Attorney General to recover records the agency head knows or has reason to believe have been unlawfully removed. 44 U.S.C. § 3106. "Hence, an agency head, once he *knows* records are being *unlawfully* removed, must (1) notify the Archivist and (2) enlist the aid of the Attorney General in recovering the lost records," *Price v. Dept. of Just.*, Civ. A. No. 18-1339 (CRC), 2019 U.S. Dist. LEXIS 102099, at *35 (D.D.C. June 19, 2019) (emphasis added), although an agency may "first attempt[] its own remedial measures (rather than immediately rushing to the Attorney General)." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016); *accord Armstrong v. Bush*, 924 F.2d 282, 296 n.12 (D.C. Cir. 1991) ("[T]he FRA contemplates that the agency head and Archivist may proceed first by invoking the agency's 'safeguards against the removal or loss of records, 44 U.S.C. § 3105[.]'").

## LEGAL STANDARD

### I. <u>Rule 12(b)(1) Standard</u>

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*,

444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

When a defendant makes a facial challenge under Rule 12(b)(1), the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). For factual challenges, the Court "may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

## II. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Jovanovic v. U.S.-Algeria Bus. Council*, 561 F. Supp. 2d 103, 110 (D.D.C. 2008).

Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007). The facts alleged "must be enough to raise a right to relief above the speculative level," *id.* at 555, or must be sufficient to "state a claim for relief that is plausible on its face," *id.* at 570. The plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 678 (2009). The Court, moreover, can consider on a Rule 12(b)(6) motion documents incorporated by reference into the Complaint. *EEOC v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624 (D.C. Cir. 1997). Further, when the allegations in the Complaint conflict with those in a document incorporated by reference, the content of the document controls. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 55 F. Supp. 3d 43, 49 (D.D.C. 2014).

**ARGUMENT**

As an initial matter, the only pleading properly before the Court is the original Complaint because the Amended Complaint constitutes a supplemental pleading under Rule 15(d) that required leave of Court before it could be filed. Rule 15 provides two principal means of adding matters to a complaint: amendment under Rule 15(a) and supplementation under Rule 15(d). The difference is that an amendment "typically rest[s] on matters in place prior to the filing of the original pleading," while a supplement "sets forth 'transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (quoting Fed. R. Civ. P. 15(d) (amended 2007)). Supplementing a complaint with new matters postdating the filing of the original complaint and resting on "new facts bearing on the relationship between the parties" always requires leave of court. Rule 15(d); *Hicks*, 283 F.3d at 385–86. An attempt to supplement a complaint without leave has no legal effect. *Cf. Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014) (holding that an attempt to amend a complaint under Rule 15(a)(2) without leave of court is "without legal effect"); *accord BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 26 (D.D.C. 2016). The operative pleading pursuant to which the Court should evaluate this motion is therefore Plaintiff's original Complaint.

Defendants recognize that at least one court in this district has determined that courts have authority to treat a supplemental complaint that had been improperly filed without leave of Court

as an amended complaint filed as a matter of right. *See Univ. of Colo. Health at Mem'l Hosp. v. Azar*, 486 F. Supp. 3d 185, 210 (D.D.C. 2020). The equitable circumstances that influenced that result, however, are not present here. For instance, unlike *University of Colorado Health*, there is no "distinct 'gotcha' quality" here. *Id*. Defendants have been clear from the moment Plaintiff raised the issue of a potential amendment that leave would be required. *See* Mot. for Ext. (ECF No. 16) at 2 n.1; Mot. for Ext. (ECF No. 18) at 2 n.1. Accordingly, there is no basis to excuse the Plaintiff here from compliance with the requirements of Rule 15(d).

Nevertheless, without waiver of its threshold position that the Amended Complaint is "without legal effect," *Schmidt*, 749 F.3d at 1069, and that only the original Complaint is properly before the Court, Defendants analyze the arguments below based on both pleadings.

## I. <u>Plaintiff's Claims Should Be Dismissed for Lack of Jurisdiction</u>.

Federal courts are courts of limited subject-matter jurisdiction and "possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because of "the nature and limits of the judicial power of the United States," the Court must determine its jurisdiction "as a threshold matter" and may not resolve the merits of a case without first confirming its jurisdiction. *Steel Co. v. Citizens for a Better Envt.,* 523 U.S. 83, 94-95 (1998).

Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III. *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.,* 666 F.3d 1359, 1361 (D.C. Cir. 2012). To establish standing, Plaintiff must demonstrate that it suffered an injury-in-fact, specifically an injury that is "'concrete, particularized, and actual or imminent;'" that the injury is "'fairly traceable to the challenged action;'" and that it is "likely," not speculative, that

the injury is "'redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l,* 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Plaintiffs bear the burden of establishing each element. *Lujan,* 504 U.S. at 561. Standing, moreover, is "'not dispensed in gross.'" *Davis v. FEC*, 554 U.S. 724, 734 (2008). "Rather, 'a plaintiff must demonstrate standing for each claim [s]he seeks to press' and 'for each form of relief' that is sought." *Id.* To meet its burden of establishing standing at the pleadings stage, Plaintiff must "make a plausible allegation of facts establishing each element of standing." *Cutler v. Dep't of Health & Hum. Servs.,* 797 F.3d 1173, 1179 (D.C. Cir. 2015). "Article III standing requires a concrete injury even in the context of a statutory violation" and, "[f]or that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Thus, "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *FDA v. All. for Hippocratic Med*., 602 U.S. 367, 381 (2024).

In contrast to standing, which is designed to determine who may institute the asserted claim for relief, ripeness "addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *Action Alliance of Senior Citizens v. Heckler,* 789 F.2d 931, 940 (D.C. Cir. 1986). A claim is not constitutionally ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes and citation omitted). Ripeness also is evaluated at the time the action is commenced. *See Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 303 (D.D.C. 2017) ("The twin doctrines of mootness and ripeness can be described as 'standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must

continue throughout its existence (mootness).'" (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). While constitutional ripeness is distinct from Article III standing, "in this case the two issues 'boil down to the same question,' . . . whether 'judicial resolution of this dispute is premature.'" *Sidak v. U.S. Int'l Trade Comm'n*, 174 F. 4th 151, 157 (D.C. Cir. 2026); *see also Trump v. New York*, 592 U.S. 125, 134 (2020) ("At the end of the day, the standing and ripeness inquiries both lead to the conclusion that judicial resolution of this dispute is premature.").

Although jurisdiction is assessed at the time a lawsuit is filed, *Davis*, 554 U.S. at 734, the D.C. Circuit has held that "a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint," *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018), and the logic of that decision presumably would apply to a ripeness defect as well. But *Scahill* does not suggest that allegations in a supplemental complaint filed, as here, without leave of court and thus not properly before the Court should be part of the jurisdictional analysis. *See Univ. of Colo. Health at Mem'l Hosp.*, 486 F. Supp. 3d at 209.

**A. Plaintiff Has Failed to Plausibly Plead Standing.**

Plaintiff has failed to plausibly plead a concrete injury to satisfy its burden to plead standing regardless of whether the Court gives effect to the Amended Complaint. To satisfy the injury-in-fact requirement, Plaintiff must do more than allege a bare statutory violation "divorced from any concrete harm." *Spokeo*, 578 U.S. at 341. Plaintiff has failed to do so. To the extent Plaintiff alleges an injury based on the alleged removal from agency records systems of communications between the three Department officials and the CWG by virtue of the officials' use of personal email accounts, Plaintiff had not been harmed at the time this lawsuit was filed because Plaintiff already has obtained those records through discovery in the FACA litigation. Compl. ¶ 46; Am.

Compl. ¶ 46. To the extent Plaintiff alleges "on information and belief" that these officials might have used personal email accounts for other government business (Compl. ¶ 50; Am. Compl. ¶ 52), or that, "on information and belief" DOE employees have used Signal for work and not forwarded copies of work-related messages to an official electronic messaging account (Am. Compl. ¶¶ 47-48), Plaintiff has not alleged any facts to support that speculation. *See Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (conclusory statements are insufficient to establish standing).

Nor can Plaintiff meet its burden of establishing a concrete injury in that regard by relying on the pending FOIA requests. EDF alleges that "[t]o date, [it] has not received any records from DOE in response to its FOIA requests that indicate that DOE political appointees successfully preserved their personal email records as government records." Compl. ¶ 49; Am. Compl. ¶ 51. But this allegation is of no moment because, with one exception, Plaintiff has not alleged that processing has been completed on the FOIA requests. Compl. ¶ 48; Am. Compl. ¶ 50. And the one exception involves a FOIA request that was closed not based on the absence of responsive records but because Plaintiff failed to respond to the Department's request for narrowing. Burns Decl. ¶ 22. As regards Signal messages, the Plaintiff does not even seek to connect that claim to the responses it has received from its FOIA requests. *See* Am. Compl. ¶ 51.

Consequently, as in *Price,* Plaintiff's FOIA allegations have "put the cart before the horse." *Price*, 2019 U.S. Dist. LEXIS 102099, at *25. Indeed, "it would be a fool's errand to assess" whether Plaintiff has suffered a concrete injury based on pending FOIA requests when the requests are still undergoing processing. *See id*. This case is analogous to *CREW v. Department of Education*, 538 F. Supp. 2d 24 (D.D.C. 2008), where the Court found that the plaintiff failed to plead standing in a FRA case based on pending FOIA requests, referring to such arguments as

being "based on the substitution of unarticulated speculation for a necessary intermediate factual step: that [the agency] has searched for the records and missed or otherwise failed to produce responsive documents inaccessible due to use of private e-mail." *Id*. at 30.

A similar result was reached in an analogous context in *American First Legal Foundation v. Greer,* 153 F. 4th 1311 (D.C. Cir. 2025). There, the plaintiff filed a lawsuit to compel the Office of Special Counsel to investigate plaintiff's allegations that an agency's withholding of information under FOIA was arbitrary and capricious. *Id*. at 1313. The Court characterized plaintiff's standing theory as "that OSCs failure to investigate [the agency] . . . has prevented [plaintiff] from receiving the records it requested under FOIA," and rejected that theory as unduly speculative. *Id*. at 1315.

Based on the same rationale, Plaintiff has failed to plausibly plead that it is "likely," as opposed to speculative, that the alleged injury would be "'redressable by a favorable ruling.'" *Clapper*, 568 U.S. at 409. Plaintiff has not provided any non-speculative basis to raise a plausible inference that additional recovery efforts by the Department would have any impact on the documents Plaintiff will receive in response to its FOIA requests.

Accordingly, for the above reasons, standing has not been plausibly pled here regardless of whether standing is evaluated based on the original or Amended Complaint.

**B. Plaintiff's Failure to Act Claims Are Not Ripe for Judicial Review**

Plaintiff also has failed to meet its burden to establish that its claims are constitutionally ripe for judicial review. This ripeness defect is addressed below under both the original and Amended Complaint (in the event the Court were to give effect to the latter).

1. Plaintiff's Original Complaint Fails to Plead a Constitutionally Ripe Claim.

There is no private right of action under the FRA. *See Kissinger*, 445 U.S. at 148; *Competitive Enter. Inst.*, 67 F. Supp. 3d at 31 ("[P]rivate litigants cannot state a claim for legal relief under [the] FRA."). However, this Circuit has recognized that "in some cases, the APA can provide a jurisdictional hook for a suit alleging noncompliance with the FRA," *CREW v. Pruitt*, 319 F. Supp. 3d 252, 257 (D.D.C. 2018), specifically as is relevant here, a claim that the agency head and Archivist "breached the statutory duty to take enforcement action" through the Attorney General. *Armstrong*, 924 F.2d at 297.

Here, Plaintiffs seek an injunction compelling the head of the Department and Archivist to fulfill their obligations under the FRA to "refer[] the matter to the Attorney General for enforcement of the FRA." Compl. (ECF No. 1) at 19; Am. Compl. (ECF No. 17) at 20. That is, Plaintiffs seek to "compel agency action unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1), or relatedly a claim for mandamus under 28 U.S.C. § 1361. Compl. (ECF No. 1) at 15-18; Am. Compl. (ECF No. 17) at 16-20. Such claims depend on the existence of a non-discretionary duty to act existing at the time a lawsuit is filed. *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) ("a petitioner seeking mandamus must first establish that the agency has violated 'a crystal-clear legal duty'"); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (to make out a claim of agency inaction under Section 706 of the APA, the plaintiff must "identify a legally required, discrete act that the [agency] has failed to perform.").

Those obligations, however, only arise when the agency head and Archivist have "*actual* knowledge that records are being *unlawfully* removed or destroyed before either can be sued." *Price*, 2019 U.S. Dist. LEXIS 102099, at *42 (explaining that without this condition, courts would

be required to decide "whether an FRA violation has occurred in the first instance," which is a question "unfit for judicial review"). Furthermore, the Archivist's duty to initiate an enforcement action arises only when "the head of a Federal agency does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action." 44 U.S.C. § 3106(b). Citing this provision, the D.C. Circuit held in *Armstrong* that the FRA does not require an agency attempting its own remedial measures to take enforcement action through the Attorney General until "those efforts are unsuccessful." *Armstrong*, 924 F.2d at 295.

Accordingly, § 3106 imposes no duty upon either the agency head or Archivist "to find that an agency has removed records in violation of the FRA; it does impose mandatory duties upon each of them if they know that such unlawful removal of records has occurred, is occurring, or will occur." *Id*. at *38. In all events, the mandatory duties set forth in 44 U.S.C. § 3106 arise only after the agency head or Archivist has identified an "unlawful 'actual, impending, or threatened' removal of records." *Id*. Even upon obtaining knowledge of an unauthorized removal of records, moreover, the agency head may still attempt to resolve the problem on his own, and the referral obligation does not attach until those measures fail.

A section 3106 claim is premature, therefore, when all that is alleged by a plaintiff is that it provided a letter to the agency head and the Archivist "'of what it thought were FRA-compliance issues,'" but the agency head or Archivist never "replied or indicated in any way that a violation had occurred." *Id.* at *44-45. Even were an investigation into the allegations to begin prior to the lawsuit, it would be "of no moment" because an investigation does "'not amount to 'any actual finding of a violation.'" *Id*. at *45. Section 3106, moreover, does not set forth a defined period by which any investigation or determination must be made but speaks only in terms of a "reasonable period of time." *See generally* 44 U.S.C. § 3106(b) (If the agency head fails to "initiate

an action for such recovery or other redress within a reasonable period of time," "the Archivist shall request the Attorney General to initiate such an action"). Nor does section 3106 establish any obligation on behalf of the Department or the Archivist to respond to a private entity's assertions of alleged non-compliance with the FRA. *See id.*

Here, all the original Complaint alleges is that, as of March 17, 2026—the date this lawsuit was filed—Plaintiff had sent a letter to the Secretary and the Archivist dated February 9, 2026, with examples of three Department officials using their personal email accounts to communicate with the CWG, and that neither the Secretary nor the Archivist had responded to Plaintiff by that date. Compl. (ECF No. 1) ¶¶ 52-56. Beyond reciting the elements of a section 706(1) claim, Plaintiff did not allege that this five-week period constituted unreasonable delay. *Id*. ¶¶ 67, 73.

The allegations in the February 9, 2026 letters, moreover, do not by themselves establish an unlawful removal of records. The letters allege only that personal email accounts were used to conduct agency business. Under 44 U.S.C. § 2911, however, federal government employees may "create or send a record using a non-official electronic messaging account" provided the employee "forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." *Id*. § 2911(a) (emphasis added). Federal agencies are entitled to a "presumption of regularity." *Fisheries Survival Fund v. Haaland*, 858 F. App'x 371, 373 (D.C. Cir. 2021) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)). And government employees are entitled to the presumption that they will comply with agency policies, absent evidence to the contrary. *Competitive Enter. Inst. v. Off. of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 21 (D.D.C. 2017). Plaintiff did not allege in its February 9, 2026 letters non-compliance with section 2911(a) nor did it allege facts in its letters that established such non-compliance. At most, Plaintiff

generically referenced having submitted FOIA requests to the Department but provided no information in those letters regarding the status of those requests that could indicate non-compliance with section 2911(a). Ex. 1 and 2 to Burns Decl.

Those limited allegations are in contrast to allegations in the pleadings (themselves still inadequate), where Plaintiff alleges "[o]n information and belief, the DOE officials who used their personal email accounts to create or receive the records obtained in the FACA litigation did not forward the emails to their official email accounts." Compl. (ECF No. 1) ¶ 49; Am. Compl. (ECF No. 17) ¶ 51. Plaintiff, however, did not make that assertion in the letters to the Department or NARA and, in assessing whether a duty to act had arisen, the relevant inquiry is the information presented to the agency and NARA and whether it was sufficient to establish actual knowledge of a FRA violation. For the same reason, Plaintiff's allegation that "[t]o date, EDF has not received any records from DOE in response to its FOIA requests that indicate that DOE political appointees successfully preserved their personal email records as government records" (Compl. ¶ 49; Am. Compl. ¶ 51) has no bearing on whether the letters were sufficient alone to provide actual knowledge of an improper removal of federal records.

Equally baseless would be any argument by Plaintiff that the production in the FACA litigation was sufficient to put the head of the agency on notice of a potential issue that should have been investigated sooner. By Plaintiff's own account, the production encompassed 100,000 pages, of which a fraction allegedly involved emails from personal email accounts. Compl. ¶ 46. That is insufficient to establish the requisite actual notice to the head of the agency. *See Williams v. NASA*, Civ. A. No. 26-0564 (CRC), 2026 U.S. Dist. LEXIS 94392, at *35-36 (D.D.C. Apr. 29, 2026).

The Complaint, therefore, failed to plausibly allege that the head of the Department or the Archivist had actual knowledge of an unlawful removal of records at the time this lawsuit was filed. At most, it contends that allegations of potential non-compliance were provided to the Secretary and the Archivist approximately five weeks earlier. That is insufficient to plead that a mandatory duty under the FRA had arisen as of the filing date of the Complaint and thus is insufficient to present a ripe claim for unlawful delay under 5 U.S.C. § 706(1) or for mandamus. *See Price*, 2019 U.S. Dist. LEXIS 102099, at *44.

This claim is unripe for the additional reason that both DOE and NARA were undertaking remedial measures to address the allegations at the time the lawsuit was filed on March 17, 2026, and those efforts have not been unsuccessful. *See Armstrong*, 924 F.2d at 295. By that time, DOE's Office of General Counsel already had reached out to Fisher, Loucks, and Cohen to confirm that they had forwarded all work-related emails to or from their private email account to their DOE email account to ensure compliance with applicable federal record requirements. Burns Decl. ¶ 24. Each confirmed in return emails that as of the date of their response they had taken the requested action. *Id.* Relatedly, NARA had begun preparing a letter to DOE in response to Plaintiff's allegations prior to the filing of this action. Bradley Decl. ¶ 13.

Consequently, as to DOE, it already was addressing the potential issue raised by EDF's letter prior to March 17, 2026 and, as to NARA, Plaintiff failed to afford it a "reasonable period of time" to initiate an inquiry into the allegations before Plaintiff filed its lawsuit. *See Armstrong,* 924 F.2d at 296 ("If, however, the agency head does not initiate an enforcement action 'within a reasonable period of time,' the Archivist 'shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.'"); *Judicial Watch,* 844 F.3d at 954 ("As the district court's dismissal relied exclusively on its finding of mootness, and

not on a possible claim that the 'reasonable period of time' referred to in *Armstrong* had not run, we focus on mootness."). Because neither DOE nor NARA had any obligation under the FRA to notify Plaintiff of the internal steps it had taken prior to March 17, 2026, Plaintiff had no ripe claim against either DOE or NARA at the time this action was filed even if those steps were unknown to Plaintiff.

2. The Amended Complaint Fails to Cure the Lack of Ripeness as to the Use of <u>Private Email Claim or Establish Ripeness as to the Signal Claim</u>.

Were the Court to give effect to the Amended Complaint (it should not for reasons addressed above), there still would remain a ripeness defect.

As to the use of personal email claim, Plaintiff alleges in the Amended Complaint that, on May 6, 2026, NARA had sent DOE a letter requesting that DOE initiate an investigation into the allegations made in the February 9, 2026 letter and that DOE had provided its response by June 30, 2026. Am. Compl. (ECF No. 17) ¶ 56. That response advised NARA that "DOE's Office of the General Counsel engaged with the three DOE employees involved to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE.gov accounts" and that "GC has confirmed with all three individuals that these actions have been completed." Ex. 3 to Burns Decl.; Bradley Decl. ¶ 19. As established above, DOE already had acted prior to that communication from NARA (and, indeed, prior to the filing date of this action). Consequently, the allegations in the Amended Complaint fail to cure the ripeness defect as to DOE.

Those allegations also fail to cure the ripeness defect as to NARA. Any mandatory referral duty under section 3106 as to NARA would not have arisen as of the Amended Complaint's filing because a "reasonable period of time" had not passed. *See Judicial Watch,* 844 F.3d at 954 ("As the district court's dismissal relied exclusively on its finding of mootness, and not on a possible

claim that the 'reasonable period of time' referred to in *Armstrong* had not run, we focus on mootness.").

Here, at the time this lawsuit was filed—just five weeks from the submission of the February 9, 2026 letters—Plaintiff had not only failed to plead actual knowledge of a FRA violation but had not afforded NARA a reasonable period of time to conduct an inquiry into Plaintiff's allegations regarding personal email usage. And, at the time the Amended Complaint was filed on August 6, 2026, DOE already had reported to NARA that remedial actions had been successfully taken. Based on that response, NARA has determined that DOE has demonstrated that it has recovered all records. Bradley Decl. ¶ 21. Accordingly, no mandatory reporting obligation existed on the part of NARA at the time the Amended Complaint was filed regarding Plaintiff's allegations of personal email usage.

As to the Signal claim, Plaintiff's claim was not ripe based on the same ripeness defect applicable to the personal email usage claim at the time the original Complaint was filed. Plaintiff's June 4, 2026 letter to NARA (a letter was not sent directly to DOE) contained generalized allegations of improper Signal usage by one DOE official, but failed to provide sufficient information to place NARA on notice of an actual Federal Records Act violation. Am. Compl. ¶ 59. The substance of the letter consisted of an unsupported assertion that "EDF has learned that Cohen specifically has regularly used Signal for substantive work communications, and therefore the investigation and recovery of his Signal records should occur at the same time as the inquiry into his personal email use." Ex. 4 to Burns Decl.

That is echoed in the corresponding allegation in the Amended Complaint, which asserts "*on information and belief*, at least one DOE political appointee (Seth Cohen) regularly used the messaging app Signal for substantive work communications" and "*[o]n information and belief*,

individuals such as Mr. Cohen who have used Signal for government work have not forwarded copies of work-related Signal messages to an official electronic messaging account, as the FRA requires. 44 U.S.C. § 2911(a)." Am. Compl. (ECF No. 17) ¶¶ 47-48 (emphasis added). Thus, Plaintiff has failed to plausibly plead that the Secretary or NARA had actual knowledge of any FRA violation related to Signal usage at the time the Amended Complaint was filed and thus failed to plead that any mandatory duty under the FRA had arisen at that time. Accordingly, that claim also should be dismissed for lack of ripeness.

### C. Mootness

"Mootness and standing are related concepts," and "[t]he Supreme Court has characterized mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Garden State Broad. Ltd. P'ship v. F.C.C.*, 996 F.2d 386, 394 (D.C. Cir. 1993) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). In this context, the substantive "difference is almost inconsequential," and cases deciding FRA claims on mootness grounds are "both factually and legally instructive" on the question of redressability. *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 207-08 (D.D.C. 2018). The difference is one of burden: as "[t]he party invoking federal jurisdiction," the plaintiff "bears the burden of establishing the[] elements" of standing, including redressability, *Lujan*, 504 U.S. at 561; once jurisdiction has been established, however, "[t]he burden of establishing mootness rests on the party that raises the issue." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998).

In the context of the FRA, "no court action can provide further relief" if "the requested enforcement action could not shake loose a few more [records]," including in cases in which the records have been "fatal[ly] los[t]." *Judicial Watch,* 844 F.3d at 954-56. To establish

redressability, Plaintiff needs some non-speculative basis to contend that "there is a 'substantial likelihood' that the Attorney General could find some [federal records]." *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 234 (D.D.C. 2018).

This Court's decision in *Cause of Action Institute* is illustrative. Plaintiff in that case sought an order requiring the Secretary of State and the Archivist to request an enforcement action from the Attorney General to recover "work-related emails that [former] Secretary [of State Colin] Powell exchanged on a person email account." *Id.* at 232. The government moved to dismiss on mootness grounds. *Id.* at 234. This Court determined that "the Government's evidence satisfie[d] th[e] high bar" for establishing mootness because, "[b]y establishing that Secretary Powell's missing emails cannot be obtained through Secretary Powell himself, his devices, or his service provider, the Government has established the fatal loss of these federal records." *Id.* at 236.

Here, Plaintiff cannot establish a substantial likelihood that federal records would be recovered because DOE has taken remedial measures to ensure that work-related personal emails were transferred to agency email accounts and NARA has found those steps sufficient. Burns Decl. ¶ 26; Bradley Decl. ¶ 21. Further, as to the issue of alleged Signal usage, the DOE has advised NARA by letter dated September 14, 2026, that DOE's Office of the Chief Information Officer has "completed a digital investigation of Mr. Seth Cohen's Government Furnished Equipment (GFE) and determined that Signal was not, and has never been, installed on his GFE devices." Ex. 5 to Burns Decl. Accordingly, to the extent Plaintiff had standing to assert a claim of an improper removal based on Mr. Cohen's alleged Signal usage, and to the extent such a claim was ripe at the time of the filing of the Amended Complaint (all of which Defendants deny), any such claim is now moot.

## II. **Plaintiff Has Failed to State a Claim for Relief on the Merits.**

Even if the Court were to determine that jurisdiction is proper to consider any or all of EDF's claims, this action should be dismissed because Plaintiff has failed to plausibly plead the existence of a mandatory duty in existence at the time this lawsuit was filed or amended. Similarly, Plaintiff has failed to plead any unreasonable delay related to the February 9, 2026 and June 4, 2026 letters.

First, "to make out a claim of agency inaction under Section 706 of the APA, the plaintiff must identify a legally required, discrete act that the agency has failed to perform.'" *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (citation modified; quoting *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009)). "The court may act 'only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'" *Karimova*, 2024 WL 3517852, at *2 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted)). Here, for reasons already addressed, Plaintiff has failed to plausibly plead that its February 9, 2026 and June 4, 2026 letters were sufficient to place the Secretary or the Archivist on actual notice of an unlawful removal of records. Thus, no mandatory duty under the FRA arose as of the filing date of the Complaint or Amended Complaint.

Second, even were Plaintiff to contend that its letters created a duty to investigate Plaintiff's allegations—a claim not alleged in the pleadings—Plaintiff has failed to plausibly plead any unreasonable delay. All that is alleged is that at the time the lawsuit was filed—March 17, 2026—the Secretary and the Archivist had not responded to the February 9, 2026 letters. Setting aside the absence of any obligation under the FRA to respond to a letter alleging non-compliance, the five-week period between the submission of those letters and the filing of this action was not unreasonable. *See Barazandeh v. United States Dep't of State,* Civ. A. No. 23-1581 (BAH), 2024 U.S. Dist. LEXIS 15726, at *21-22 (D.D.C. Jan. 30, 2024) (delay is measured up to the date the

lawsuit is filed). Likewise, the time between Plaintiff's June 4, 2026 letter to NARA and the filing of the Amended Complaint on August 4, 2026—approximately two months—also was not unreasonable. Indeed, the term "unreasonable delay" does not appear in the original or Amended Complaint other than in Plaintiff's paraphrasing of 5 U.S.C. § 706 in the counts of each pleading. E.g., Am. Compl. ¶¶ 70, 76.

When a plaintiff seeks a writ of mandamus to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), a court "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000). "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). The Complaint makes no allegation that the five-week period between the February 9, 2026 letter and the filing of the lawsuit on May 17, 2026, or the two-month period between the June 4, 2026 letters and the filing of the Amended Complaint, was unreasonable under the FRA.

EDF also generically references the alleged failure to act as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Compl. ¶¶ 67, 73; Am. Compl. ¶¶ 70, 76. Such assertions pertain to Section 706(2) of the APA, which allows review only for "'final agency action.'" *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 882 (1990) (quoting 5 U.S.C. § 704). To be final, an action must "(1) 'mark[] the consummation of the agency's decisionmaking process' and (2) be one by which 'rights or obligations have been determined, or from which legal consequences will flow.'" *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Ag.*, 946 F.3d 615, 520 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

Even assuming that a failure to act can qualify as final agency action, the inaction EDF complains of here does not qualify. The Amended Complaint does not allege that Defendants have taken no steps to respond to Plaintiff's allegations but appears to challenge the pace of the inquiry. But Plaintiff fails to engage meaningfully with Supreme Court precedent that in "APA cases, an agency's subsidiary decisions merge into the final agency action," *Mullin v. Doe*, 146 S. Ct. 2121, 2136 (2026), and here Plaintiff has not alleged that either DOE or NARA had made a final determination whether to refer the matter to the Attorney General.

Even a final and conclusive decision not to make such a request does not determine any rights or obligations or create any legal consequences. With or without such a request, the Attorney General retains the same discretion over enforcement of the FRA. Making or declining to make such a request thus carries "no direct consequences" and serves "more like a tentative recommendation than a final and binding determination." *Franklin v. Mass.*, 505 U.S. 788, 798 (1992) (presentation of decennial census results that remained subject to correction to the President not final agency action); *see also Dalton v. Specter*, 511 U.S. 462, 469-71 (1994) (submission of non-binding base-closure recommendations to the President not final agency action). Thus, Plaintiff is limited to an APA claim under section 706(1) which, as addressed above, has not been plausibly pled here.

## CONCLUSION

For the foregoing reasons, the Court should dismiss each of Plaintiff's claims for lack of jurisdiction, or if the Court determines that it may exercise jurisdiction as to any of Plaintiff's claims, for failure to state a claim on the merits.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Jeremy S. Simon*
Jeremy S. Simon, D.C. Bar #447956
Derrick A. Petit, D.C. Bar # 144466
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2528

*Attorneys for the United States of America*

List of Attachments

Declaration of Todd Burns and Exhibits 1-5 thereto
Declaration of Michelle Bradley
Proposed Order