UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRIGHT,<br>Secretary of Energy, et al.,<br><br>Defendants. | Civil Action No. 26-0928 (CJN) |

**DECLARATION OF TODD BURNS**

I, Todd R. Burns, hereby declare as follows:

1. I am employed by the United States Department of Energy ("DOE"), and my current job title is Assistant General Counsel for Finance and Information Law

2. My responsibilities include overseeing DOE appropriations, information law (including privacy), and property law portfolios, as well as serving as DOE Headquarters ("HQ") Freedom of Information Act ("FOIA") Officer. In my role as FOIA Officer, I facilitate legal review of all FOIA requests received by DOE HQ and our responses. My responsibilities also include overseeing the review, analysis, and processing of FOIA requests submitted to DOE HQ.

3. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. I make this declaration in support of DOE's motion to dismiss.

4. DOE HQ FOIA Office has approximately nineteen federal and contractor staff: approximately thirteen contractor employees, consisting of eleven FOIA analysts, one Program Manager, and one Deputy Program Manager, and six federal employees.

5. The DOE HQ FOIA staff must process a large number of FOIA requests. As of today, the DOE HQ FOIA Office is currently actively processing over 2,000 open FOIA requests, the majority of which were received before Plaintiff's FOIA requests. More than 16 of those FOIA requests are currently in litigation, adding additional burdens on processing staff, including obligations such as preparation of *Vaughn* indexes, processing and search declarations, and briefing.

6. The workload that must be handled in this office has increased significantly in recent years. In the 2022 fiscal year, DOE HQ received 859 FOIA requests. The number has increased each year and in the 2025 fiscal year the DOE HQ FOIA office received 2,982 new FOIA requests, more than triple the 2022 number. DOE HQ FOIA staffing has increased its production capacity over time, but still faces significant challenges in addressing this volume of requests.

7. When DOE receives a FOIA request that contains a broad scope and/or requests records from a large number of individuals, DOE typically engages with the requester in an effort to obtain agreement to narrow the scope of the request to something more reasonable. DOE has pursued, and in some cases continues to pursue, this process of narrowing by mutual agreement for each of the FOIA requests identified by number in this declaration.

8. Once a FOIA request is "perfected," meaning it is reasonable as to scope of subject matter, date range, and components to search, the next step is to start the search. This is done in one of two ways. The first search method is an automated search by our Office of the Chief Information Officer (OCIO). This method requires a search memo signed by me that describes in detail the custodians and components to be searched, the date range, and any keywords. The alternative search method is when specific topics or documents are sought, DOE conducts a "self-

search" where a custodian who knows the records manually searches, and along with a signed "Search Certification Form," forwards potentially responsive records to my staff.

9. Once our FOIA contractors receive the records, a member of my staff begins responsiveness review. This is a largely manual process including but not limited to: matching records to the request language, engaging internal and external stakeholders for review of their equities, and checking for consistency.

10. From there, our contractors forward the work to me for legal review, where I delegate the work to my team of attorney-advisers. Upon completion of legal review, a response is made to the requester. Most FOIA requests end in a final response, but if we are constrained by time or a large volume of records, we occasionally issue a series of partial responses spread out over months.

11. Over the course of review, DOE HQ uses "FOIAXpress" software for FOIA case tracking from receipt to closure.

12. FOIA request HQ-2025-02094-F was submitted to DOE by EDF and is dated February 3, 2025. FOIAXpress reflects that this request is open, and DOE is presently in the responsiveness review phase for this request.

13. FOIA request HQ-2025-02347-F was submitted to DOE by EDF and is dated February 28, 2025. FOIAXpress reflects that this request is open, and DOE is presently conducting responsiveness review on the search results for this request.

14. FOIA request HQ-2025-02670-F was submitted to DOE by EDF and is dated March 26, 2025. FOIAXpress reflects that this request is open, and DOE produced a first partial response on September 10, 2026 and is presently preparing the second partial response for this request.

15. FOIA request HQ-2025-03740-F was submitted to DOE by EDF and is dated July 11, 2025. FOIAXpress reflects that this request is open, and DOE is presently in the responsiveness review phase for this request.

16. FOIA request HQ-2025-03628-F was submitted to DOE by EDF and is dated June 24, 2025. FOIAXpress reflects that this request is open, and DOE is presently in the search phase for this request.

17. FOIA request HQ-2025-03874-F was submitted to DOE by EDF and is dated August 1, 202. FOIA request HQ-2025-03875-F was submitted to DOE by EDF and is dated August 1, 2025. FOIAXpress reflects that these requests are open, and DOE has completed the search phase. By agreement of the parties, DOE is processing 500 pages per month and making productions of responsive non-exempt records on or about the first business day of each month. At EDF's request, DOE is applying a custodian prioritization list and prioritizing the review of records in the custody of a list of individuals provided by Plaintiffs. To date, DOE has produced 1,595 pages in response to these requests, prioritizing records from Secretary of Energy Chris Wright and Travis Fisher. DOE continues to review and process records from the custody of Travis Fisher for its production due on or about October 1, 2026, and due to the large number of responsive records in the custody of Travis Fisher, anticipates at least two additional monthly productions will focus on Mr. Fisher's records. Future monthly productions thereafter will include responsive records produced in order of EDF's custodian prioritization list: Joshua Loucks, one other custodian not relevant to this action, and Seth Cohen. The complete production of Mr. Cohen's records is not expected until early-mid 2027.

18. FOIA request HQ-2026-00069-F was submitted to DOE by EDF and is dated October 7, 2025. FOIAXpress reflects that this request is open, and DOE is presently in the responsiveness review phase for this request.

19. FOIA request GFO-2026-00983-F was submitted to DOE by EDF and is dated October 7, 2025. FOIAXpress reflects that this request to DOE's Golden Field Office is closed. This request sought records from a single employee of the Golden Field Office and did not seek records from Seth Cohen, Travis Fisher, or Joshua Loucks.

20. FOIA request HQ-2026-01548-F was submitted to DOE by EDF and is dated April 9, 2026. FOIAXpress reflects that this request is open, and DOE is presently in the search phase for this request.

21. FOIA request HQ-2026-02154-F was submitted to DOE by EDF and is dated July 24, 2026. FOIAXpress reflects that this request is open, and DOE is presently in the search phase for this request. EDF recently agreed to amend the scope of the request due to a particularly large number of potentially responsive records in DOE's initial search results.

22. FOIA request HQ-2025-02085-F was submitted to DOE by EDF and is dated February 3, 2025. FOIAXpress reflects that this request is closed due to the requester not responding to DOE's request to narrow the scope of the request. The contractor assigned to this request is no longer with DOE, and therefore DOE cannot definitively confirm all correspondence that may have occurred about this request. However, available records concerning this request do not contain a communication from DOE stating that DOE has no records responsive to this request.

23. DOE received a letter from EDF to the Secretary of Energy, dated February 9, 2026, alleging that records DOE had recently produced to EDF in litigation contained instances of three DOE employees—Travis Fisher, Joshua Loucks, and Seth Cohen—communicating using their

personal email accounts for purposes of official DOE business. EDF requested that the Secretary take appropriate action in accordance with the Federal Records Act and FOIA. A true and correct copy of this letter, including an attachment containing 44 pages of emails produced by DOE to EDF in prior litigation, is attached to this declaration as Exhibit 1 (except personal email addresses have been redacted in part to protect privacy).

24. On March 9 and 10, 2026, the DOE Office of the General Counsel asked Travis Fisher, Joshua Loucks, and Seth Cohen to confirm that they had forwarded all work-related emails to/from their private email account to their DOE email account to ensure compliance with applicable federal record requirements. Mr. Fisher, Mr. Loucks, and Mr. Cohen each confirmed that as of the date of their response they had taken the requested action. Records in the official DOE email account of a specified custodian, including those forwarded from a personal email address, become part of DOE's search for records responsive to a FOIA request. To the extent records responsive to EDF's pending FOIA requests were forwarded from the personal email addresses of Mr. Fisher, Mr. Loucks, or Mr. Cohen to their official DOE email accounts, they will be reviewed and produced in the ordinary course of FOIA processing, or in some cases, in accordance with judicially approved production schedules.

25. On May 6, 2026, DOE received an inquiry letter from the National Archives and Records Administration ("NARA") concerning the potential unauthorized loss and/or destruction of Federal records in the custody of Travis Fisher, Joshua Loucks, and Seth Cohen due to the alleged use of personal email accounts for official DOE business. A true and correct copy of that letter is attached to this declaration as Exhibit 2. Attached to this letter was a letter EDF had sent NARA officials, dated February 9, 2026, which was similar to a letter EDF had sent to DOE of

the same date and included the same 44 pages of emails previously produced by DOE. *See* Exhibit 1. To avoid duplicative filings, the 44-page attachment is not reproduced as part of Exhibit 2.

26. On June 18, 2026, DOE's Departmental Records Officer responded by letter to NARA's May 6, 2026 letter. A true and correct copy of this letter is attached to this declaration as Exhibit 3. In this letter, DOE stated that "DOE's Office of the General Counsel engaged with the three DOE employees involved to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE .gov accounts. GC has confirmed with all three individuals that these actions have been completed." DOE provided NARA additional documentation by email dated June 30, 2026.

27. NARA sent DOE a second inquiry letter, dated July 29, 2026, concerning another allegation from EDF regarding the unauthorized disposition of records related to the alleged use of the Signal application by Seth Cohen. A true and correct copy of that letter is attached to this declaration as Exhibit 4. That letter attached a letter that EDF had sent to NARA dated June 4, 2026. EDF, however, had not sent a similar letter to DOE.

28. On September 14, 2026, DOE's Departmental Records Officer responded by letter to NARA's July 29, 2026 letter. A true and correct copy of DOE's letter is attached to this declaration as Exhibit 5.

29. Travis Fisher, Joshua Loucks, and Seth Cohen separated from DOE at various times between July 2025 and June 2026 and are not presently employed by DOE.

I hereby declare to the best of my knowledge and belief, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 17th day of September, 2026, at Washington, D.C.

TODD BURNS Digitally signed by TODD BURNS Date: 2026.09.17 16:18:24 -04'00'

Todd Burns
Assistant General Counsel for
Finance and Information Law
DOE HQ FOIA Officer

# Exhibit 1

Environmental Defense Fund

February 9, 2026

VIA EMAIL

Secretary Christopher Wright
U.S. Department of Energy
1000 Independence Ave., SW
Washington, DC 20585

**Re: Obligations to Preserve Electronic Federal Records and Produce Such Records When Lawfully Requested**

Dear Secretary Wright:

Environmental Defense Fund ("EDF") respectfully writes to identify legal responsibilities of the Secretary under the Federal Records Act and the Freedom of Information Act, to ensure the preservation of federal government records, and to produce such records to members of the public when they are requested.

Recently disclosed records clearly demonstrate that Trump Administration officials at the U.S. Department of Energy ("DOE") have used, and may be continuing to use, personal email addresses to conduct government business—including involving the U.S. Environmental Protection Agency ("EPA") and the White House.

A federal judge recently ordered DOE and the Climate Working Group ("CWG")—a committee subject to the Federal Advisory Committee Act ("FACA")—"to produce FACA Records," *EDF v. Wright*, Case 1:25-cv-12249, ECF No. 78 (D. Mass., order issued at hearing and docketed Dec. 8, 2025). The disclosed records show multiple instances of at least three DOE political appointees—Travis Fisher, Joshua Loucks, and Seth Cohen—communicating using their personal email accounts with each other and members of the CWG. The disclosed emails were clearly created for official DOE business purposes—they discuss DOE's oversight of the CWG and coordination with EPA and the White House, as the advisory committee developed a report to support EPA's ongoing rulemaking to repeal the Endangerment Finding.

The Endangerment Finding is EPA's 2009 determination—based on mountains of scientific evidence—that greenhouse gases in the atmosphere threaten the public health and welfare of current and future generations, and that emissions from motor vehicles and engines contribute to the greenhouse gas pollution that threatens public health and welfare. *See* 74 Fed. Reg. 66,496 (Dec. 15, 2009). On March 12, 2025, EPA issued a press release announcing "Trump EPA Kicks Off Formal Reconsideration of Endangerment Finding with Agency Partners,"

including a statement from Secretary of Energy Wright.[1] On July 29, 2025, in a joint event, EPA Administrator Zeldin issued EPA's proposal to repeal the Endangerment Finding and all standards to limit vehicle greenhouse gas emissions, and Secretary of Energy Wright issued the CWG's Report, "A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate."[2] The EPA proposal cites the CWG Report 22 times. *See* 90 Fed. Reg. 36,288 (Aug. 1, 2025).

The recently disclosed records reveal extensive use of personal email accounts by DOE political appointees to conduct government business, with intention to avoid records rules. Attachment 1, appended to this letter, contains a small sample of these records, which also include references to communications these officials were having with EPA and the White House. For example:

- On April 19, 2025, DOE political appointee Fisher emailed the CWG advisory committee members, from a personal account, providing them an "assignment" for their work to draft the report, stating "I was asked to share the table of contents [for the report] with the EPA team this evening," and informing the CWG that "the EPA team asked that the document be DOE-branded." (Attachment 1 at 32, Bates 17144).
- In an April 24, 2025 email sent from a personal account, Fisher emailed the CWG members describing discussions between DOE, the White House, and EPA, including sharing that "Wright and Zeldin are traveling together today, so we should have an answer soon"—referring to Energy Secretary Wright and EPA Administrator Zeldin's pending decision about the deadline for the CWG to complete their report. (Attachment 1 at 28, Bates 16021).
- On June 3, 2025, DOE political appointee Seth Cohen emailed, from a personal account, Travis Fisher and Joshua Loucks (on their personal email accounts) and the CWG members, in a discussion regarding the "Scoping" for an analysis to be developed by the CWG. (Attachment 1 at 7, Bates 329).
- On July 1, 2025, Fisher, from a personal account, emailed DOE political appointees Loucks (at a personal account) and Cohen and the CWG members, to inform the group that "the draft notice of proposed rulemaking from EPA was circulated earlier today for interagency review"—presumably referring to EPA's proposed rule to repeal the Endangerment Finding. (Attachment 1 at 39-40, Bates 17250-17251).
- On July 19, 2025, Fisher, from a personal address, sent an email "to warn [CWG members] that all the reviewer materials will be coming from my DOE account . . . please keep in mind that my DOE emails (and your replies) will be easily discoverable by outside parties." (Attachment 1 at 3, Bates 160).
- After the release of its report, one CWG member sent an email to the group with the subject line "keeping it to ourselves," that warned that "email communications that go to DOE addresses are subject to FOIA" and urged the Group to keep future communications "restricted to the authors (except, of course, for matters that directly involve the DOE . . .)." (Attachment 1 at 23, Bates 1939).

---

[1] U.S. EPA, Press Release: Trump EPA Kicks Off Formal Reconsideration of Endangerment Finding with Agency Partners (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-kicks-formal-reconsideration-endangerment-finding-agency-partners.

[2] *See* U.S. DOE, Department of Energy Issues Report Evaluating Impact of Greenhouse Gasses on U.S. Climate, Invites Public Comment (July 29, 2025), https://www.energy.gov/articles/department-energy-issues-report-evaluating-impact-greenhouse-gasses-us-climate-invites.

***Federal Records Act Obligations.*** The Federal Records Act ("FRA") requires that agency heads "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. Agency heads also "shall establish safeguards against the removal or loss of records," including by "making it known to officials and employees of the agency . . . that records in the custody of the agency are not to be alienated or destroyed," *id.* § 3105; and "shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," *id.* § 3102.

Individual federal employees also have obligations under the law. The FRA requires that federal employees "may not create or send a record using a non-official electronic messaging account unless such officer or employee" ensures the record is preserved, such as by "forward[ing] a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). Congress implemented this update to the FRA in 2014 to make clear that "an employee of an executive agency may not create or send a record from a nonofficial electronic messaging account without ensuring such record was submitted to an official electronic messaging account."[3]

The FRA further requires that the head of an agency "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records." 44 U.S.C. § 3106(a).

Federal records include "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(a).

***Freedom of Information Act ("FOIA") Obligations.*** Pursuant to FOIA, DOE must promptly make records available to any person that requests them, so long as the request is reasonably clear and satisfies agency rules. 5 U.S.C. § 552(a)(3)(A). The agency must issue a determination on a FOIA request within 20 working days from the date of receipt, *id.* § 552(a)(6)(A)(i), and "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Government records, even if held in a personal email account or elsewhere outside of the government in violation of obligations under the FRA, are subject to FOIA. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149 (D.C. Cir. 2016).

EDF has submitted 15 FOIA requests to DOE since January 2025, with at least eight requests seeking correspondence of Trump Administration officials at DOE including emails, voicemails, text messages, Signal messages, and correspondence transmitted through any other electronic platform. EDF sought expedited processing for 13 of those requests in light of the urgent public

---

[3] U.S. Senate Comm. on Homeland Sec. and Govt. Affairs, *Presidential and Federal Records Act Amendments of 2014*, S. Rep. No. 113-218 at 5 (2014), https://www.congress.gov/committee-report/113th-congress/senate-report/218/1?outputFormat=pdf.

interest in accessing information about significant agency actions. To date, EDF has not received any records from DOE in response to these FOIA requests.

***The Secretary must uphold his duties under the FRA and FOIA***. EDF is concerned that DOE political officials are systematically using non-governmental emails and electronic messaging accounts to conduct official government business, and that the agency may be failing to appropriately preserve these records and, when requested, provide them to the public. The Secretary must notify the Archivist of any actual, impending, or threatened unlawful erasure or other destruction of DOE records, and must initiate action through the Attorney General to recover such records. Then, the Secretary must ensure that DOE is fulfilling its obligations under FOIA to release such records.

EDF respectfully requests that the Secretary immediately take all appropriate actions to fulfill these obligations—including to ensure preservation of records in the possession of former agency staff, and to ensure that employees are appropriately creating and preserving records within government systems on a going-forward basis. EDF requests that by March 2, the Secretary respond in full to describe any and all actions taken to address this time sensitive matter, including the initiation of any actions in conjunction with the Archivist and the Attorney General to recover records.

Respectfully,

Erin Murphy
Peter Zalzal
Environmental Defense Fund
555 12th Street NW, Suite 400
Washington, DC 20004
emurphy@edf.org
202-572-3525

Cc: Sarah Nelson, Acting DOE Inspector General
Jeffrey Novak, Principal Deputy General Counsel and Designated Agency Ethics Official
Carl Coe, Chief of Staff to the Secretary

**From:** John Christy <[redacted]@gmail.com>
**Sent:** Monday, June 30, 2025 5:24 PM
**To:** Cohen, Seth
**Cc:** Steven Koonin; Travis Fisher; Josh Loucks; Ross McKitrick; Judith Curry; Roy W. Spencer
**Subject:** Re: [EXTERNAL] NYTimes on warming

All

I was in Fairbanks Alaska when the Heat Advisory was announced. Didn't bother us (85F is a cool June day in Alabama - and their dewpoint was 24F - crisp, bone dry air).

Station, (Year Began), June 2025 Max, Hottest ever June temp, All Time Hottest
Aurora, (2002), 86F, 93F, 93F
College Observatory, (1948), 86F, 94F, 94F
Fairbanks Intl AP, (1929), 85F, 96F, 96F
Fairbanks RAWS, (1988), M, 95F,100F
Univ Exp Stn, (1904), M (report after end of month), 95F, 95F

June usually has the hottest temperature since the interior (Fairbanks) is so dry, and solar radiation is the big deal there, so June usually generates the hottest annual temperature. This First Ever heat advisory warned of temperatures 11F to 7F below the max temperatures we know have visited the region.

From the AP story on Alaska Heat Advisories, "It's not the first instance of unusually high temperatures in what many consider the nation's coldest state, but the National Weather Service only recently allowed for heat advisories to be issued there."

I guess the NY Times doesn't appreciate historical perspective.

For the global tropospheric temperatures, the situation looks more like a step function - it's a little warmer after each El Nino than before. Short time series allow all kinds of mischief with trends. The UAH global atmospheric trend for 2010 to 2025 is +0.36 °C/decade. But starting in 1998, the trend is cut to half of that (+0.17 °C/decade). If you are going to end on a peak, you need to start on a peak - and 15 years is way too short for a climate signal. To chuckle at the absurdity, the global trend since April 2024 is -3.3 °C/decade ... we're going to freeze to death!

By the way, Vermont's flood-of-record occurred in 1927.

"Nothing is defying our big picture about the physics of the climate system," Dr. Bitz said. Uh, Dr. Bitz, ... how about models warming much too quickly?

That's enough of that.

John C.

On Mon, Jun 30, 2025 at 2:31 PM Cohen, Seth <seth.cohen@hq.doe.gov> wrote:

Y axis is overweighted up, x axis has a skewed tail to the left (90 years), versus 50 on the right.

---

**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Monday, June 30, 2025 3:30 PM
**To:** 'Travis Fisher' <[redacted]gmail.com>; 'Josh Loucks' <[redacted]@gmail.com>; Cohen, Seth <seth.cohen@hq.doe.gov>
**Cc:** 'Ross McKitrick' <[redacted]@gmail.com>; 'Judith Curry' <[redacted]@gmail.com>; 'Roy W. Spencer' <[redacted]@hotmail.com>; 'John Christy' <[redacted]@gmail.com>
**Subject:** [EXTERNAL] NYTimes on warming

A quiz for our non-scientist colleagues:

Critique the lead graphics in this recent NYT article:

https://www.nytimes.com/2025/06/26/climate/climate-heat-intensity.html?unlocked_article_code=1.S08.1xcl.nm658aV-Q3kU&smid=url-share

Steve Koonin

PS Bonus question- critique the article itself

*******************************************************************
This message does not originate from a known Department of Energy email system.
Use caution if this message contains attachments, links or requests for information.
*******************************************************************

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Saturday, July 19, 2025 11:05 AM
**To:** John Christy
**Cc:** Roy Spencer; Judith Curry; Ross McKitrick; Steven Koonin; Josh Loucks
**Subject:** Review of CWG Report

Team,

I have now sent the CWG report to a total of eight reviewers internal to the DOE enterprise (five people from the national labs and three from the Office of Science). I've asked for a quick review to conclude by the end of the day on Monday.

Two things as we move forward:

1) We should plan to hash out reviewers' comments on Tuesday. My suggestion is to have a virtual meeting (or more than one) focused on responding to comments and either implementing the suggested change or explaining why we chose not to implement the change. Is most of the team available for that?

2) As promised, you all have the ultimate pen on the report. No changes to the process there. However, let's think strategically about how we want to construct the "peer review report." For example, I've just reviewed the set of comments from the first lab reviewer, and it's my hunch that most comments will be rejected. If that's the case, we should treat our response to comments as an opening salvo in the long debate ahead.

If you're wondering why we would document and potentially publish the private back-and-forth between this author group and DOE peer reviewers, it's partly a CYA exercise from the Office of Science but I also suspect the peer review comments and your responses will be the subject of a future FOIA request. As with the CWG report itself, I think the peer review report should be as respectful as possible (even though I know some comments will make your blood boil—for example, our first reviewer is a fan of RCP8.5) and should help readers better understand the debate.

Finally, I'm sending this email to warn you that all the reviewer materials will be coming from my DOE account. If you don't see anything from me in the next hour or so, please check your spam filters. Also please keep in mind that my DOE emails (and your replies) will be easily discoverable by outside parties.

Best,
Travis

**From:** Steven Koonin [[redacted]@gmail.com]
**Sent:** 6/8/2025 1:41:18 PM
**To:** 'Judith Curry' [[redacted]@gmail.com]; 'John Christy' [redacted]@gmail.com]
**CC:** 'Ross McKitrick' [[redacted]@gmail.com]; 'Roy W. Spencer' [[redacted]@hotmail.com]; 'Travis Fisher' [[redacted]@gmail.com]; 'Josh Loucks' [[redacted]@gmail.com]; seth.cohen@hq.doe.gov
**Subject:** RE: Traceable accounts
**Attachments:** ~WRD3424.jpg

I've incorporated this, with minor edits, into the working draft.

SEK

---

**From:** Judith Curry <[redacted]@gmail.com>
**Sent:** Saturday, June 7, 2025 6:44 PM
**To:** John Christy <[redacted]@gmail.com>
**Cc:** Steve Koonin <[redacted]@gmail.com>; Ross McKitrick <[redacted]@gmail.com>; Roy W. Spencer <[redacted]@hotmail.com>; Travis Fisher <[redacted]@gmail.com>; Josh Loucks <[redacted]@gmail.com>; seth.cohen@hq.doe.gov
**Subject:** Traceable accounts

Text attached

On Sat, Jun 7, 2025 at 3:27 PM John Christy <[redacted]@gmail.com> wrote:

All

How will we handle Key Message 2.2? This covers much of what we've analyzed. We've got heat waves, downpours, hurricanes and wildfires (Oh My!) here. This thing is a real target-rich environment.

[Key Message 2.2] Extreme Events Are Becoming More Frequent and Severe

Observations show an increase in the severity, extent, and/or frequency of multiple types of extreme events. Heatwaves have become more common and severe in the West since the 1980s (high confidence). Drought risk has been increasing in the Southwest over the past century (very high confidence), while at the same time rainfall has become more extreme in recent decades, especially east of the Rockies (very high confidence). Hurricanes have been intensifying more rapidly since the 1980s (high confidence) and causing heavier rainfall and higher storm surges (high confidence). More frequent and larger wildfires have been burning in the West in the past few decades due to a combination of climate factors, societal changes, and policies (very high confidence).

I like the last sentence that says to me, "Wildfires are increasing in the West due to increases in everything that makes wildfires increase."

Also, as evidence of wandering outside of the congressional guardrails how about all those sections on "Climate Action …."

John C.

John Christy
Director, Earth System Science Center

Professor, Atmos and Earth Science
Alabama State Climatologist
The University of Alabama in Huntsville
[redacted]@gmail.com

On Jun 7, 2025, at 3:38 PM, Steven Koonin <[redacted]@gmail.com> wrote:

Attached is the latest draft that reflects discussion we had this afternoon, as well as edits Judy sent around a few hours ago.

A few specifics:
? Travis et al to work on the charge letter appearing in Appendix I
? Seth to produce some text summarizing legal guidance on NCA requirements and process
? We'll frame deficiencies as two types – endemic (with a few examples of each) and specific; perhaps try our hand at how we're rewrite key findings to reflect deficiencies we identify. Try to keep each item to a single page.
? Suggest we reconvene Tuesday June 10 at noon EDT (I'll be at Stanford). Let Josh know if that works for you.

Steve Koonin

<NCA5 report Jun7[SEK][JC].docx>

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com | +1[redacted]
http://www.cfanclimate.net

**From:** Ross McKitrick [[redacted]@gmail.com]
**Sent:** 7/4/2025 8:05:30 PM
**To:** Judith Curry [[redacted]gmail.com]; Steven Koonin [[redacted]@gmail.com]; John Christy [redacted]@gmail.com]; Roy W. Spencer [[redacted]@hotmail.com]; Travis Fisher [[redacted]gmail.com]; Josh Loucks [[redacted]@gmail.com]; Cohen, Seth [seth.cohen@hq.doe.gov]
**Subject:** Post-meeting edition
**Attachments:** NCA5.ReviewJuly4.docx

I applied the agreed-upon changes (Sct 3.3 & 4.1) and cleaned things up. I added some language about trend analysis (green font, Sct 4.1); pls check. See also proposed name for Ch 4.

Happy Independence Day everyone

**From:** Seth Cohen [[redacted]@gmail.com]
**Sent:** 6/3/2025 11:34:16 PM
**To:** Travis Fisher [[redacted]gmail.com]
**CC:** Steven Koonin [[redacted]@gmail.com]; Roy Spencer [[redacted]@hotmail.com]; Ross [redacted]ail.com]; Judith Curry [[redacted]mail.com]; John Christy [[redacted]@gmail.com]; Josh Loucks [[redacted]@gmail.com]
**Subject:** Re: Scoping

100%

On Tuesday, June 3, 2025, Travis Fisher <[redacted]@gmail.com> wrote:

Sounds good!

I can already tell this is going to be a whopper of an assignment (but fun, in a dark and twisted way).

Here's Key Message 15.1:

## Climate Change Is Harming Human Health

It is an established fact that climate change is harming physical, mental, spiritual, and community health and well-being through the increasing frequency and intensity of extreme events, increasing cases of infectious and vector-borne diseases, and declines in food and water quality and security. Climate-related hazards will continue to grow, increasing morbidity and mortality across all regions of the US (very likely, very high confidence).

Would it make sense to focus some attention on these key messages, especially given that they're on the summary pages on the website and appear verbatim within the report itself?

On Tue, Jun 3, 2025 at 5:52 PM Steven Koonin <[redacted]@gmail.com> wrote:

A couple of additional comments:

- As you writeup your two examples, include, if appropriate, an account of whether NASEM approved or criticized the point and what was the NCA5 team's response to the criticism
- I attach a very rough outline of the report so you can see how I think it might all come together. Please suggest improvements; this will evolve as text gets written
- Travis, Josh- In a few hours, I'll send you suggestions for a "library" we should establish

SEK

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Tuesday, June 3, 2025 4:36 PM
**To:** Roy Spencer <[redacted]@hotmail.com>; [redacted]@gmail.com
**Cc:** Ross McKitrick [redacted]@gmail.com>; Steven Koonin <[redacted]@gmail.com>; Judith Curry <[redacted]@gmail.com>; John Christy <[redacted]gmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** Re: Scoping

Adding Seth.

Here's the whole hog: https://nca2023.globalchange.gov/downloads/NCA5_2023_FullReport.pdf

As we discussed at the end of the call, each scientist will identify two glaring errors or omissions in the report and send a written synopsis/insert to the group on Friday, if not before. Large discrepancies between the underlying report and the summary pages are also fair game.

We'll reconvene on Saturday to discuss how to spend next week. Josh and I will be the administrative wizards for this second assignment. Steve is the spiritual leader. Judy may take a deep dive into the idea of NCA 5's fitness for purpose. We forgot to give Roy a tough assignment after he left (my fault... maybe his list of errors should be like 3 or 4 things?). Ross deserves a(n American) medal for his stewardship of the May report. As usual, John is already halfway done with his assignment.

Thanks again for contributing so much to this important work!

On Tue, Jun 3, 2025 at 2:10 PM Roy Spencer <[redacted]@hotmail.com> wrote:

"a billion here, a billion there..."

---

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Tuesday, June [redacted]
**To:** Ross McKitrick <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]mail.com>; Judith Curry <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Roy Spencer <[redacted]@hotmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** Re: Scoping

I'll put all my cards on the table, but I urge you to keep your expectations low because the assignment remains a moving target.

I can't blame anyone if you find a deep sense of irony (or affirmation?) in my inability to model the future of our work assignments just 14 days in advance. Some might say it's a non-linear and chaotic system.

Ross, this is a public data point for the USGCRP budget (warning, you may get very depressed seeing how much it is just for one FY): https://www.globalchange.gov/budget

On Tue, Jun 3, 2025 at 12:06 PM Ross McKitrick <[redacted]@gmail.com> wrote:

I agree Steve, there's no way to discuss the summaries without discussing the underlying reports. In focusing on the Summaries I'm trying to avoid taking on a mandate to critique the entire NCA5 since it's too big and would have too many defenders. But we should give ourselves the scope to do both.

And, at the end of the day, whoever is asking us for the report should have some say in what we do, so maybe in our meeting Travis can let us know what the higher-ups are really looking for.

On Tue, Jun 3, 2025 at 11:41 AM Steven Koonin <[redacted]gmail.com> wrote:

The two alternatives Judy mentions (fundamental deficiencies vs specific criticisms of the summaries) aren't mutually exclusive – covering both would make the report more powerful. And any criticism of the summaries will necessarily refer to the coverage of those topics in the report itself.

---

**From:** Judith Curry <[redacted]@gmail.com>
**Sent:** Tuesday, June 3, 2025 11:23 AM
**To:** Ross McKitrick <[redacted]@gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Roy Spencer <[redacted]@hotmail.com>; Travis Fisher <[redacted]@gmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** Re: Scoping

The recommendations part will definitely be the most interesting

However, I think focusing on the summaries of the NCA5 is misguided; if we find the summaries aren't useful, then people could infer that you just need to read the full report

I suggest focusing on fundamental deficiencies of their approach for purposes of informing policy making

On Tue, Jun 3, 2025 at 8:15 AM Ross McKitrick <[redacted]@gmail.com> wrote:

Here's a slight revision of the charge letter. #3 and #4 are replaced by a new #3 that simply asks for recommendations. From what we've discussed previously and my own inclinations I would list things like the following:

- expand and secure support for basic climate monitoring including the MSU series, Argo floats, radiosondes etc.

- expand discussion of potential benefits of climate change including reduced cold-weather mortality and enhanced $CO_2$ fertilization

- red team review of problems with the global surface thermometer network, including lack of spatial coverage and formal assessment of whether the bias adjustments actually remove known UHI biases

- cull the GCM herd and retire those models that have intractable problems of warming bias

- Invest in substantial efforts to digitize hand-written records of temperature and precip across the US. Basically, hire a team of 100 researchers to see if they can do in 5 years what John does in a month.

- Create a public-facing data dissemination site that provides access to complete records of climate-relevant metrics including extreme weather, in every case showing the entire data set not merely the last 20 years

- Reduce or eliminate regional climate projections on the basis that models are incapable of doing it and the information provided is useless. Focus instead on providing information geared to optimizing adaptation and resilience

Etc.

On Mon, Jun 2, 2025 at 4:10 PM Judith Curry <[redacted]@gmail.com> wrote:

yes that is exactly what palmer is up to, but it works for us

On Mon, Jun 2, 2025 at 1:06 PM Steven Koonin <[redacted]@gmail.com> wrote:

Neat!

Roy, part of the context for the Palmer/Stevens statements is that they were campaigning for a bigger computer facility (maybe they still are – some big EU climate computer center analogous to CERN for particle physics). Saying (politely) that the current models aren't any good helps in the justification.

**From:** John Christy <[redacted]@gmail.com>
**Sent:** Monday, June 2, 2025 3:59 PM
**To:** Steven Koonin <[redacted]@gmail.com>
**Cc:** Roy Spencer <[redacted]@hotmail.com>; Judith Curry <[redacted]@gmail.com>; Ross McKitrick <[redacted]@gmail.com>; Travis Fisher <[redacted]ail.com>; Josh Loucks <[redacted]gmail.com>
**Subject:** Re: Scoping

All

I was able to grab the CMIP6 model output. To give an example of regional climate models' purpose-fitting capability, we now have a good set of continuous precip stations in the upper Midwest with which to compare. In terms of the extreme events, I think we'll find no significant regional observational trends, but Ross will test that statement. In terms of forecasted bulk growing season rainfall, this will be a fair test for climate models since they don't have to contend with (and thus make excuses for) significant issues of irregular topography and coastlines. I got a kick out of the trend for the 21st century in the growing season rainfall. The model average is -0.13 inches PER CENTURY, or less than 1 percent. The only policy here would be one we've long recommended - adapt to high interannual (natural) variability if you want to thrive. A point here too is that the NCA5 never looked at the details in a scientific way ... they just waved their hands.

John C.







On Mon, Jun 2, 2025 at 2:40 PM Steven Koonin <[redacted]@gmail.com> wrote:

Here are the three quotes from Palmer and Stevens that I often invoke (the third one was not in a public forum).




**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Monday, June 2, 2025 3:34 PM
**To:** Judith Curry <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; Ross McKitrick <[redacted]nail.com>; Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** RE: Scoping

If we end up saying that models are not fit for purpose (policy-wise), are we not making a judgement about policy already? If policy is based upon Precautionary Principle hogwash, then it can be argued models ARE fit for purpose.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: Judith Curry <[redacted]@gmail.com>

Date: 6/2/25 12:35 PM (GMT-06:00)

To: John Christy <[redacted]@gmail.com>

Cc: Steven Koonin <[redacted]gmail.com>, Roy Spencer [redacted]@hotmail.com>, Ross McKitrick <[redacted]gmail.com>, Travis Fisher <[redacted]@gmail.com>, Josh Loucks <[redacted]@gmail.com>

Subject: Re: Scoping

I think we can reframe #3 and #4 to address more general issues at the science-policy interface I'll try to find time today to write something

On Mon, Jun 2, 2025 at 10:29 AM John Christy <[redacted]@gmail.com> wrote:

Ross

I can contribute to #1 and #2, but wouldn't be much help with #3 and #4.

John C.

On Mon, Jun 2, 2025 at 10:47 AM Steven Koonin <[redacted]@gmail.com> wrote:

I think the preamble and questions 1 and 2 are right on point.

But I've a problem with questions 3 and 4 as they're out of our lane. We are not experts in USG organization, roles, responsibilities, authorities. We see the beast only from the periphery.

A better question replacing 3 and 4 would be to ask for recommendations as to how the NCA process could be improved.

SEK

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Monday, June 2, 2025 11:14 AM
**To:** Judith Curry <[redacted]gmail.com>; Ross McKitrick <[redacted]gmail.com>
**Cc:** Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]mail.com>; John Christy <[redacted]@gmail.com>; Steven Koonin <[redacted]gmail.com>
**Subject:** Re: Scoping

Looks good to me... not sure the last (4th) question is necessary. Supposedly, the USGCRP was formed to coordinate global change research across agencies... Pielke Jr (whose PhD thesis was on its formation and purpose) claims that putting USGCRP control in the WH makes the whole process unavoidably political, which was probably the intent. Not sure how that factors in here...

-Roy

---

**From:** Judith Curry <[redacted]gmail.com>
**Sent:** Monday, June 2, 2025 9:56 AM
**To:** Ross McKitrick <[redacted]gmail.com>
**Cc:** Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]mail.com>; John Christy <[redacted]@gmail.com>; Roy W. Spencer <[redacted]@hotmail.com>; Steven Koonin <[redacted]gmail.com>
**Subject:** Re: Scoping

this is good

On Mon, Jun 2, 2025 at 7:32 AM Ross McKitrick <[redacted]@gmail.com> wrote:

I have drafted a 1-page charge letter for the Secretary, setting out what I think are entirely defensible questions for a cabinet official to ask, and which would be feasible for us to answer on a short time scale. Comments welcome.

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1.[redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1.[redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1 [redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1 [redacted]
http://www.cfanclimate.net

**From:** Travis Fisher [[redacted]gmail.com]
**Sent:** 6/3/2025 5:52:36 PM
**To:** Steven Koonin [[redacted]@gmail.com]
**CC:** Ross McKitrick [[redacted]@gmail.com]; Judith Curry [[redacted]@gmail.com]; John Christy [[redacted]@gmail.com]; Roy Spencer [[redacted]@hotmail.com]; Josh Loucks [[redacted]@gmail.com]
**Subject:** Re: Scoping

A detailed critique would be great, but we might have only 2-3 weeks to turn something in to the relevant higher-ups, so I think we should prioritize our work to address the most significant errors first. We'll never catch them all, but it would be great to highlight all the top-tier issues. Given the time crunch, please treat me, Josh, and Seth as staff researchers who can help you dig into anything you like.

And yes, if you all can do NCA 6 for the low price of $2.5 billion, I'd love to retire on the 0.5% finder's fee associated with that!

On Tue, Jun 3, 2025 at 1:36 PM Steven Koonin <[redacted]@gmail.com> wrote:

Yes, we can't (and shouldn't) critique the whole thing. We don't have the expertise and don't have the time. But I think the overview and Chapters 2-3 are ripe for criticism, as are selected parts of the rest where we've got cred.

And then we can say the rest either relies on these chapters ("fruit of the poisonous tree" argument) and/or that if what we looked at is so flawed, its very likely the rest is as bad.

**From:** Ross [redacted] <[redacted]@gmail.com>
**Sent:** Tuesday, June 3, 2025 12:07 PM
**To:** Steven Koonin <[redacted]@gmail.com>
**Cc:** Judith Curry <[redacted]gmail.com>; John Christy <[redacted]gmail.com>; Roy Spencer <[redacted]@hotmail.com>; Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]gmail.com>
**Subject:** Re: Scoping

I agree Steve, there's no way to discuss the summaries without discussing the underlying reports. In focusing on the Summaries I'm trying to avoid taking on a mandate to critique the entire NCA5 since it's too big and would have too many defenders. But we should give ourselves the scope to do both.

And, at the end of the day, whoever is asking us for the report should have some say in what we do, so maybe in our meeting Travis can let us know what the higher-ups are really looking for.

On Tue, Jun 3, 2025 at 11:41 AM Steven Koonin <[redacted]gmail.com> wrote:

The two alternatives Judy mentions (fundamental deficiencies vs specific criticisms of the summaries) aren't mutually exclusive – covering both would make the report more powerful. And any criticism of the summaries will necessarily refer to the coverage of those topics in the report itself.

**From:** Judith Curry <[redacted]gmail.com>
**Sent:** Tuesday, June 3, 2025 11:23 AM
**To:** Ross McKitrick <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Roy Spencer

<[redacted]otmail.com>; Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** Re: Scoping

The recommendations part will definitely be the most interesting

However, I think focusing on the summaries of the NCA5 is misguided; if we find the summaries aren't useful, then people could infer that you just need to read the full report

I suggest focusing on fundamental deficiencies of their approach for purposes of informing policy making

On Tue, Jun 3, 2025 at 8:15 AM Ross McKitrick <[redacted]@gmail.com> wrote:

Here's a slight revision of the charge letter. #3 and #4 are replaced by a new #3 that simply asks for recommendations. From what we've discussed previously and my own inclinations I would list things like the following:

- expand and secure support for basic climate monitoring including the MSU series, Argo floats, radiosondes etc.
- expand discussion of potential benefits of climate change including reduced cold-weather mortality and enhanced CO2 fertilization
- red team review of problems with the global surface thermometer network, including lack of spatial coverage and formal assessment of whether the bias adjustments actually remove known UHI biases
- cull the GCM herd and retire those models that have intractable problems of warming bias
- Invest in substantial efforts to digitize hand-written records of temperature and precip across the US. Basically, hire a team of 100 researchers to see if they can do in 5 years what John does in a month.
- Create a public-facing data dissemination site that provides access to complete records of climate-relevant metrics including extreme weather, in every case showing the entire data set not merely the last 20 years
- Reduce or eliminate regional climate projections on the basis that models are incapable of doing it and the information provided is useless. Focus instead on providing information geared to optimizing adaptation and resilience

Etc.

On Mon, Jun 2, 2025 at 4:10 PM Judith Curry <[redacted]gmail.com> wrote:

yes that is exactly what palmer is up to, but it works for us

On Mon, Jun 2, 2025 at 1:06 PM Steven Koonin <[redacted]@gmail.com> wrote:

Neat!

Roy, part of the context for the Palmer/Stevens statements is that they were campaigning for a bigger computer facility (maybe they still are – some big EU climate computer center analogous to CERN for particle physics). Saying (politely) that the current models aren't any good helps in the justification.

**From:** John Christy <[redacted]@gmail.com>
**Sent:** Monday, June 2, 2025 3:59 PM
**To:** Steven Koonin <[redacted]@gmail.com>
**Cc:** Roy Spencer <[redacted]@hotmail.com>; Judith Curry <[redacted]@gmail.com>; Ross McKitrick <[redacted]@gmail.com>; Travis Fisher <[redacted]@gmail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** Re: Scoping

All

I was able to grab the CMIP6 model output. To give an example of regional climate models' purpose-fitting capability, we now have a good set of continuous precip stations in the upper Midwest with which to compare. In terms of the extreme events, I think we'll find no significant regional observational trends, but Ross will test that statement. In terms of forecasted bulk growing season rainfall, this will be a fair test for climate models since they don't have to contend with (and thus make excuses for) significant issues of irregular topography and coastlines. I got a kick out of the trend for the 21st century in the growing season rainfall. The model average is -0.13 inches PER CENTURY, or less than 1 percent. The only policy here would be one we've long recommended - adapt to high interannual (natural) variability if you want to thrive. A point here too is that the NCA5 never looked at the details in a scientific way ... they just waved their hands.

John C.






On Mon, Jun 2, 2025 at 2:40 PM Steven Koonin <[redacted]@gmail.com> wrote:

Here are the three quotes from Palmer and Stevens that I often invoke (the third one was not in a public forum).

## Even climate modelers don't believe their own (regional) results

... for many key applications that require regional climate model output or for assessing large-scale changes from smallscale processes, we believe that **the current generation of models is not fit for purpose.**
- T. Palmer and B. Stevens, PNAS (2019)



Our understanding makes a compelling case for reducing greenhouse gas emissions. What remains unclear is what happens when it warms. In fact, **it is difficult, and in many places impossible, to scientifically advise societal efforts to adapt in the face of unavoidable warming.** Our knowledge gaps are frightful because they make it **impossible to assess the extent to which a given degree of warming poses existential threats.**
– Bjorn Stevens, UCLA Yanai Lecture, 5/5/22



It is an unfortunate fact of the matter that most policy and decision makers view the science of climate change as done and dusted and hence the research we fluid-earthers are involved in is perceived to be largely irrelevant to the important question of how to tackle the climate emergency. On top of this, if we are let out of our ivory towers to express the fact that **our understanding of climate change - especially at the regional scale - is rather poor (how can a country adapt if it doesn't even know the sign of precipitation change with any confidence - as IPCC figures show)**, the same policy and decision makers start to feel uncomfortable. They'd rather we didn't say such things in public - they claim it undermines the public's faith in the need to take action. – T. Palmer, NAS group email 4/15/23

16

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Monday, June 2, 2025 3:34 PM

**To:** Judith Curry <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; Ross McKitrick <[redacted]@gmail.com>; Travis Fisher <[redacted]ail.com>; Josh Loucks <[redacted]@gmail.com>
**Subject:** RE: Scoping

If we end up saying that models are not fit for purpose (policy-wise), are we not making a judgement about policy already? If policy is based upon Precautionary Principle hogwash, then it can be argued models ARE fit for purpose.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Judith Curry <[redacted]@gmail.com>
Date: 6/2/25 12:35 PM (GMT-06:00)
To: John Christy <[redacted]@gmail.com>
Cc: Steven Koonin <[redacted]@gmail.com>, Roy Spencer <[redacted]@hotmail.com>, Ross McKitrick <[redacted]@gmail.com>, Travis Fisher <[redacted]@gmail.com>, Josh Loucks <[redacted]@gmail.com>
Subject: Re: Scoping

I think we can reframe #3 and #4 to address more general issues at the science-policy interface I'll try to find time today to write something

On Mon, Jun 2, 2025 at 10:29 AM John Christy <[redacted]@gmail.com> wrote:

Ross

I can contribute to #1 and #2, but wouldn't be much help with #3 and #4.

John C.

On Mon, Jun 2, 2025 at 10:47 AM Steven Koonin <[redacted]@gmail.com> wrote:

I think the preamble and questions 1 and 2 are right on point.

But I've a problem with questions 3 and 4 as they're out of our lane. We are not experts in USG organization, roles, responsibilities, authorities. We see the beast only from the periphery.

A better question replacing 3 and 4 would be to ask for recommendations as to how the NCA process could be improved.

SEK

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Monday, June 2, 2025 11:14 AM
**To:** Judith Curry <[redacted]gmail.com>; Ross McKitrick <[redacted]gmail.com>
**Cc:** Travis Fisher <[redacted]ail.com>; Josh Loucks <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Steven Koonin <[redacted]@gmail.com>
**Subject:** Re: Scoping

Looks good to me... not sure the last (4th) question is necessary. Supposedly, the USGCRP was formed to coordinate global change research across agencies... Pielke Jr (whose PhD thesis was on its formation and purpose) claims that putting USGCRP control in the WH makes the whole process unavoidably political, which was probably the intent. Not sure how that factors in here...

-Roy

---

**From:** Judith Curry <[redacted]gmail.com>
**Sent:** Monday, June 2, 2025 9:56 AM
**To:** Ross McKitrick <[redacted]gmail.com>
**Cc:** Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Roy W. Spencer <[redacted]@hotmail.com>; Steven Koonin <[redacted]@gmail.com>
**Subject:** Re: Scoping

this is good

On Mon, Jun 2, 2025 at 7:32 AM Ross McKitrick <[redacted]@gmail.com> wrote:

I have drafted a 1-page charge letter for the Secretary, setting out what I think are entirely defensible questions for a cabinet official to ask, and which would be feasible for us to answer on a short time scale. Comments welcome.

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1[redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1[redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1[redacted]
http://www.cfanclimate.net

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1.[redacted]
http://www.cfanclimate.net

**From:** Roy Spencer <[redacted]@nsstc.uah.edu>
**Sent:** Tuesday, August 5, 2025 6:39 AM
**To:** 'Steven Koonin'; [redacted]@gmail.com; [redacted]@gmail.com; 'Judith Curry'
**Subject:** RE: keeping it to ourselves

Steve:

I had not noticed my work email address was in some of these.

Our previous correspondence used my Hotmail address… I never use gmail:

[redacted]@hotmail.com

-Roy

**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Monday, August 4, 2025 10:53 AM
**To:** [redacted]@gmail.com; [redacted]@nsstc.uah.edu; [redacted]@gmail.com; 'Judith Curry' <[redacted]@gmail.com>
**Subject:** keeping it to ourselves
**Importance:** High

We should be mindful that our email communications that go to DOE addresses are subject to FOIA. While I don't think we've been saying anything untoward in our recent group exchanges, one never knows how they might be twisted by those of nefarious intent.

I'd therefore urge that we keep our future email communications restricted to the authors (except, of course, for matters that directly involve the DOE – like the recent AI query from the New Yorker).

Steve Koonin

PS Roy- is there are gmail address we can use for you, rather than the UAH address (which may itself be subject to FOIA)?

**From:** Travis Fisher [[redacted]gmail.com]
**Sent:** 5/21/2025 7:24:18 PM
**To:** Roy Spencer [[redacted]@hotmail.com]; Steven Koonin [[redacted]@gmail.com]; Judith Curry [[redacted]gmail.com]; Ross McKitrick [[redacted]gmail.com]; John Christy [redacted]@gmail.com]
**CC:** [redacted]@gmail.com
**Subject:** Re: revised SLR figure
**Attachments:** Report Draft May 21.docx

Hi Everyone,

Josh here, sending an updated version of the document. This should have the newest drop box versions of each chapter in it, as well as the forward, glossary, etc.

Travis and I are available to chat whenever is convenient. Let's plan for 4 pm EST if that works for everyone.

Let me know if you have any questions or concerns with this version of the report.

Thanks - Josh

On Wed, May 21, 2025 at 11:12 AM Roy Spencer <[redacted]@hotmail.com> wrote:

I LIKE THE FIRST ONE.

---

**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Wednesday, May 21, 2025 9:42 AM
**To:** 'Ross McKitrick' <[redacted]gmail.com>
**Cc:** 'Judith Curry' <[redacted]@gmail.com>; 'Roy W. Spencer' <[redacted]@hotmail.com>; 'Travis Fisher' <[redacted]gmail.com>; 'John Christy' <[redacted]@gmail.com>
**Subject:** RE: revised SLR figure

More alternatives for the SLR figure









**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Tuesday, May 20, 2025 8:13 PM
**To:** 'Ross [redacted]' <[redacted]@gmail.com>
**Cc:** 'Judith Curry' <[redacted]@gmail.com>; 'Roy W. Spencer' <[redacted]@hotmail.com>; 'Travis Fisher' <[redacted]gmail.com>; 'John Christy' <[redacted]@gmail.com>
**Subject:** RE: revised SLR figure

How's this?




**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Tuesday, May 20, 2025 8:02 PM
**To:** 'Ross [redacted]' [redacted]@gmail.com>
**Cc:** 'Judith Curry' <[redacted]@gmail.com>; 'Roy W. Spencer' <[redacted]@hotmail.com>; 'Travis Fisher' <[redacted]gmail.com>; 'John Christy' <[redacted]@gmail.com>
**Subject:** revised SLR figure

Here, the text, citation, figure caption, and figure.

SEK

---

**Text:**

In February 2022, NOAA issued its projections of sea level rise for various sites along the US coast (Sweet, 2022). They claim that by 2050, the sea will have risen one foot at The Battery in Manhattan. A one foot rise in thirty years is a rate of 4 inch/decade, twice the current rate and more than three times the average rate over the past century. In that historical context, NOAA's projection is remarkable—as shown in Figure 7.6, it would require a dramatic acceleration beyond anything observed in the early 20th century. But even more noteworthy is that they say this rise is "locked in"—it will happen no matter what future emissions are. We should know in a decade or so whether that prediction has legs.

**Citation:** https://www.usgs.gov/publications/global-and-regional-sea-level-rise-scenarios-united-states

**Figure 7.6** Rate of sea level rise at the Battery in Manhattan. Shown is the historical thirty-year trailing trend, together with the allegedly "locked in" NOAA predicted trend for 2050. Historical data: NOAA Tides and Current.


Battery Sea Level rates (1923-2025)
30-year trailing rate (inches/decade)
0
1
2
3
4
1920
1940
1960
1980
2000
2020
2040
2060
NOAA
Prediction
Historical
Average

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Thursday, April 24, 2025 3:06 PM
**To:** John Christy
**Cc:** Ross McKitrick; Roy Spencer; Steve Koonin; Judith Curry
**Subject:** Re: Apr 20 update

Hi all,

I've been waiting to chime in because I was hoping for more certainty by now, but the only thing I have to add is that Ross has won his fight with the White House about joining via contract (even though Ross is an evil foreigner from a strange place where people are conspicuously nice). It took a call from the Secretary, but we prevailed. (Ross, you'll be hearing more very soon.)

I can also confirm all the other information that was shared so far by Ross and John. The Secretary wants a thorough report that you all are proud of. If the EPA declines to use it, or demands an April 30 deadline, so be it, but the Secretary will move forward with the full report in any case.

The remaining variable (for me, anyway) is what to offer EPA if they demand a document before you all are comfortable putting your names on it. My preference is to supply them with something, even if it's in rough shape and unfit for attribution. Please think about what you all might want to do in that case because I think it's still a strong possibility. The main argument against supplying something in that case is that it would essentially be an early draft of the report Secretary Wright wants, so think about ways to differentiate the documents, etc.

Thanks again for your hard work under an impossible deadline. I'll update you all as soon as we get a new (interim/rushed) deadline from EPA. It's my understanding that the Secretary initially asked for May 15, but it's possible he will ask for even more time after hearing directly from Ross about how helpful it would be to get another full month (or more). Wright and Zeldin are traveling together today, so we should have an answer soon.

Best,
Travis

On Thu, Apr 24, 2025 at 1:12 PM John Christy <[redacted]@gmail.com> wrote:

All

My plane was late, so I just missed the meeting with Ross, Travis and the Secretary, but did meet with Ross and Travis for over an hour immediately afterward.

Ross's summary below is what I gathered from our meeting. My sense was that the difficulties being encountered are related to a lack of communication between EPA and DoE, and even the White House, aided by the general sand-in-the-gears that some career federal employees are supplying. As Ross indicates we may have two phases - a generic, "un-authored" document fairly soon and a compete "authored" document later. The purpose of these documents is still murky as the challenge to the EF may or may not use them, but the Secretary absolutely wants the products. I mentioned again that an authored document would be a real commitment because we would have to deal with answering criticism as well as dealing with personal attacks for months.

As Ross said, we should be hearing more very soon.

John C.

John Christy
Director, Earth System Science Center
Professor, Atmos and Earth Science
Alabama State Climatologist
The University of Alabama in Huntsville
[redacted]@gmail.com

On Apr 23, 2025, at 7:49 AM, Ross McKitrick <[redacted]@gmail.com> wrote:

Thanks Steve and Roy. I have a few wording suggestions but am off to a meeting so I'll write later.
Travis and I had a meeting with Secretary Wright yesterday. I'll let Travis provide a more complete summary but my takeaway was:
- Chris was unaware of the problems we had encountered until we briefed him
- The current deadline and lack of direction conflicts with his vision of the project
- He is going to try to get more time for us; and there might be an option which gives us a lot more time
- He wants us to have the time and support to produce a substantive document with our names on it. He understands why if we are held to an Apr 30 deadline we would not be able to do that.
- More to come as he digs into the situation.

On Wed, Apr 23, 2025 at 6:59 AM Roy Spencer <[redacted]@hotmail.com> wrote:

All:

I've made some edits to Steve's document (attached).

The first (rather large) edit has to do with the implication that climate change is only due to changes in the radiative energy balance of the Earth, which I (and Dick Lindzen) disagree with. How to handle this, though, is not that obvious to me. I realize we are addressing human influences on climate, but I don't think we should accept such an anthropocentric view of climate change at the outset... This comes up later, too, in the discussion of global radiative forcing since the 1700s... We have no clue what kinds of other energy imbalances (either at the surface or at top-of-atmosphere) might have been occurring due to Nature since the 1700s.

Again, I'm open to suggestions. Maybe such issues are not necessary to mention if even the putative human forcings lead to non-damaging impacts (?)

-Roy

**From:** Steven Koonin <[redacted]@gmail.com>
**Sent:** Tuesday, April 22, 2025 11:05 PM

**To:** 'Ross McKitrick' <[redacted]@gmail.com>; 'Travis Fisher' <[redacted]gmail.com>; 'John Christy' <[redacted]@gmail.com>; 'Roy W. Spencer' <[redacted]@hotmail.com>; 'Judith Curry' <[redacted]gmail.com>
**Subject:** RE: Apr 20 update

Attached is my take on an integrated Part 1 (together with a modest introduction). I've incorporated relevant material from others.

1. See if you like the narrative arc, which to me feels pretty natural. Note that the subsections turned out to have somewhat different titles
2. Most problematic for me is the technical level. Trying to avoid too much "Climate 101", but some of the material, particularly in Parts 2 and 3 will get pretty technical
3. I'm feeling like it lacks punch. "So what" is missing
4. Obviously, the mechanics need work. Formatting, citations, better figures, …
5. If you all aren't too dissatisfied with this, I'd propose doing a similar job on Part 2 in the next few days.

SEK

---

**From:** Ross McKitrick <[redacted]gmail.com>
**Sent:** Sunday, April 20, 2025 8:09 PM
**To:** Travis Fisher <[redacted]gmail.com>; John Christy <[redacted]@gmail.com>; Roy W. Spencer <[redacted]@hotmail.com>; Steven Koonin <[redacted]@gmail.com>; Judith Curry <[redacted]gmail.com>
**Subject:** Apr 20 update

I've created a new dropbox folder called April 20 version which contains the revised outline, the associated chapters and the reference list for all my sections. I took the documents done prior to this point and renumbered the files and sections accordingly.

The new outline is (bold denotes draft posted)

Part I: Human influence on the climate
1 Components of anthropogenic radiative forcing and their history to date
**2 The carbon cycle and future emission scenarios**
3 Aerosols and the uncertainties associated with them

Part II: Climate response to anthropogenic influence
**4 Measuring climate sensitivity to CO2 doubling**

**5 Models versus observations in recent past**
**6 Uncertainties in analysis of attribution**
**7 Evidence on trends and attributable changes in extreme weather**
8 Sea level rise

Part III: Impacts on ecosystems and society
**9 Managing risks of extreme weather**
10 Mortality risk from extreme heat and cold
**11 Climate change and US agriculture**
12 Climate change and global greening
**13 Climate change and economic growth**
14 Estimates of the Social Cost of Carbon
15 US vehicle-based $CO_2$ emissions and the global climate

Steve: can you draft 1 & 3?

Judy: hoping you can do 8, 10 and 14 (I have info on 14 as well.)

John I think you have something on 15.

Cheers,
Ross

**From:** Travis Fisher [[redacted]gmail.com]
**Sent:** 4/19/2025 2:03:43 AM
**To:** Judith Curry [[redacted]@gmail.com]
**CC:** Ross McKitrick [[redacted]@gmail.com]; John Christy [[redacted]gmail.com]; Roy Spencer [[redacted]@hotmail.com]; Steven Koonin [[redacted]@gmail.com]
**Subject:** Re: I'll need help: 10 sections to go

Thanks so much, Judy!

Great questions. I don't think anyone has taken on the "air pollutant" issue. Please feel free to tackle it if you like!

Regarding the regulation in question, I've been told this summary of the science will be published as a technical support document relevant to a new proposed rule on tailpipe emissions standards for motor vehicles. I don't know whether that means all motor vehicles or just light- and medium-duty vehicles. It might be helpful to differentiate GHG emissions from the different classes to give the EPA flexibility in that regard.

The previous administration combined the rules for GHGs and criteria pollutants into a "multi-pollutant" rule, and I don't have any information on how this administration will package the different emissions standards. The exact charge for you all is to provide an update on the science relevant to the EPA's endangerment determination with respect to GHGs. As I understand the assignment, the scope is only GHGs, not criteria pollutants.

Keep the questions coming! I can run them up the chain if I don't know the answers, and I am happy to relay any questions you all have to the relevant folks at DOE or other agencies.

For your awareness, I was asked to share the table of contents with the EPA team this evening, which I did (the April 18 version), with the understanding that it is a one-way street (me informing them of your work so they know what's coming, not them sending feedback or micro-managing it). As I assured Steve in the early stages of this work, scientific integrity is paramount, and I will do everything in my power to preserve every word of the document as you all write it. In fact, the EPA team asked that the document be DOE-branded, meaning our true audience is the Secretary of Energy, and he emphasized to me that he wants nothing but science. In other words, the only compromise you have to make in how this is written is among yourselves, not between you all and policymakers, lawyers, or economists.

Thanks again for lending your expertise to this effort, all of you.

Best,
Travis

On Fri, Apr 18, 2025 at 8:46 PM Judith Curry <[redacted]@gmail.com> wrote:

I have a lot of material already written that should be relevant. I have a draft of the sea level rise section completed, am sending this to my assistant to format, will upload monday.

Roy, let me know if there are sections you can't complete, i may have some text that is already written

On Fri, Apr 18, 2025 at 3:06 PM Travis Fisher <[redacted]gmail.com> wrote:

Good afternoon,

I'm happy to report that I just talked with Judy, and she accepted the mission (in case you're wondering, the vetting issue was a mishap). This is great news because the Secretary wanted all of you to be able to contribute.

Let's make sure to include Judy in all of our correspondence from now on. The documents should be available here: https://www.dropbox.com/scl/fo/wahx6lpwzu33m5vyrri8x/ANTU1qAQJ-zXCFzP_gsJcOs?rlkey=l1z3qj9v46e1t5f4ywwxq7p8c&e=1&dl=0. Please let us know if you don't have access.

Best,
Travis

On Fri, Apr 18, 2025 at 4:59 PM Ross McKitrick <[redacted]@gmail.com> wrote:

Thanks John. The quote from Mauritsen and Roeckner is a great addition.
I find the figure hard to follow, whereas the quote makes the point very clearly, in their own words.

On Fri, Apr 18, 2025 at 4:55 PM John Christy <[redacted]@gmail.com> wrote:

Ross

I've never been successful with dropbox and my record is still intact.

Attached is 1.6.2 to which I added a paragraph.

Also attached is a chart I annotated from AR6. I think this story demonstrates modelers are just playing with tuning parameters. Is there some way to use this information here (not necessarily in this format)?

John C.




On Fri, Apr 18, 2025 at 3:32 PM Ross McKitrick <[redacted]@gmail.com> wrote:

I've uploaded a new version of Section 2.2 to your folder. It includes the earlier material quoting all the relevant IPCC and NCA17 stuff and adds some external source information I found. Still needs a brief summary. Others may have more to add.

On Fri, Apr 18, 2025 at 3:05 PM Roy Spencer <[redacted]@hotmail.com> wrote:

Ross:

Let me look early in the morning to see which ones I feel like I can knock out the fastest. Our "guidance" has been to start from "scratch", while relying on preexisting materials where it helps. I think I know why we've been told this, but it's not my place to say.

- Roy

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Ross McKitrick <[redacted]@gmail.com>
Date: 4/18/25 10:49 AM (GMT-06:00)
To: Roy Spencer <[redacted]@hotmail.com>
Cc: Travis Fisher <[redacted]@gmail.com>, Steven Koonin <[redacted]@gmail.com>, John Christy <[redacted]@gmail.com>
Subject: Re: I'll need help: 10 sections to go

Sorry Roy, I didn't mean to swamp you, I figured those were sections you already had in the can from previous work. Looking through my own folders I have some material I forgot I had written which I can repurpose. Can you send a list of the sections you are able to do, and the ones you would like to hand off for the time being?

Also to Travis' point we should look to having Judy help some of the sections. Travis, she can be reached via [redacted]gmail.com

Ross

On Fri, Apr 18, 2025 at 7:40 AM Roy Spencer <[redacted]@hotmail.com> wrote:

All:

I don't see how I'm going to do the 10 more sections assigned to me (1.6.1 onward) in the time remaining. Feel free to jump in.

-Roy

---

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Friday, April 18, 2025 6:34 AM
**To:** Ross McKitrick <[redacted]gmail.com>; Travis Fisher <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>
**Subject:** Section 1.4.3 attached

Ross:

I think we should combine sections 1.4.3 and 1.4.4 (attached) which I now call "The carbon cycle, emissions scenarios, and global greening".

I found that all of these need to be discussed together. Feel free to reword the section title.

-Roy

---

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Thursday, April 17, 2025 6:17 AM
**To:** Ross McKitrick <[redacted]@gmail.com>; Travis Fisher <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>
**Subject:** Section 1.4.2 Can climate models reproduce the recent past?

Attached. This is the minimum I think needs to be in this section. Of course, more could be added, but I think we need to stick to our strongest arguments, given the limited time available.

-Roy

---

**From:** Roy Spencer <[redacted]@hotmail.com>
**Sent:** Wednesday, April 16, 2025 7:16 AM
**To:** Ross McKitrick <[redacted]@gmail.com>; Travis Fisher <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>
**Subject:** Some Spencer inputs

I took it upon myself to write a preamble in **Section 1.3 Drivers of climate change** (attached), which seemed necessary to introduce some basic concepts.

Also attached are my initial submissions for **1.3.2** and **1.3.3**.

**NO references** added yet.

One of the things I believe we need to watch out for is *neglecting to come to conclusions along the way*... There is a tendency to get mired in the technical details without getting around to saying what each section might mean in eventual policy decisions related to the Endangerment Finding. In my experience, it is not possible to dumb-down this stuff too much. I suggest some sort of "Summary Boxes" with 1-2 simplified statements highlighting a main conclusion of each section that would have policy relevance.

-Roy

---

**From:** Ross McKitrick <[redacted]gmail.com>
**Sent:** Monday, April 14, 2025 1:37 PM
**To:** Travis Fisher <[redacted]gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; [redacted]@hotmail.com <[redacted]@hotmail.com>
**Subject:** Re: Kickoff

Hi Travis
We developed the outline a bit further and assigned sections out yesterday. We'll keep you cc'd going forward.

Here is a Dropbox link that contains the current outline (also attached) which indicates who is working on each section

https://www.dropbox.com/scl/fo/wahx6lpwzu33m5vyrri8x/ANTU1qAQJ-zXCFzP_gsJcOs?rlkey=l1z3qj9v46e1t5f4ywwxq7p8c&dl=0
The link should give you all editing privileges.

I put folders in there for each of us. If the use of that Dropbox (which is on my own account) is acceptable for this project then we can share our work using it. Otherwise once we have an official Dropbox created we can transfer the material over to it.

Do you think it would be helpful to have a section specifically addressing the question of whether CO2 is a pollutant like CO, NOx, SOx, PM, etc.? If you want to add topics or suggest changes please do, the earlier the better as we begin filling out the contents.
Cheers,
Ross

On Mon, Apr 14, 2025 at 2:12 PM Travis Fisher <[redacted]@gmail.com> wrote:

> This is an excellent start! Can we move forward by iterating with this document for now? Please feel free to add whatever material you like, and I can collate if there are any simultaneous changes. I will leave the substance to you all because I view my role as a facilitator rather than a contributor, but please let me know how I can be most helpful.
>
> Steve is correct that this document should be clear and understandable for non-experts. My understanding is that it should also be sufficiently technical and comprehensive to inform policymakers on all relevant aspects of the science.
>
> One area I can help with might be targeting your work for the very brief window we have open at the moment. I am including a few lines verbatim below from key documents to highlight the areas of inquiry that are most relevant to the policymaking process. Of course, you all should make your own judgments about what to include versus what to leave out.
>
> Here is a key section of the Clean Air Act, 202(a)(1): "The Administrator shall by regulation prescribe (and from time to time revise) in accordance with the provisions of this section, standards applicable to the emission of any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in his judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare. Such standards shall be applicable to such vehicles and engines for their useful life (as determined under subsection (d), relating to useful life of vehicles for purposes of certification), whether such vehicles and engines are designed as complete systems or incorporate devices to prevent or control such pollution."
>
> Section 202 can be found here.
>
> Here is another key section of the Clean Air Act, section 302(g): "The term 'air pollutant' means any air pollution agent or combination of such agents, including any physical, chemical, biological, radioactive (including source material, special nuclear material, and byproduct material) substance or matter which is emitted into or otherwise enters the ambient air. Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term 'air pollutant' is used."
>
> A threshold question raised in Justice Scalia's dissent in *Mass v. EPA* (which can be found here) is whether CO2 falls under the definition of an "air pollutant" under the Clean Air Act. The majority in *Mass v. EPA* found that *any* compound emitted into the ambient air fits the definition of "air pollutant,"

leading to a colorful footnote in the Scalia dissent ("It follows that everything airborne, from Frisbees to flatulence, qualifies as an 'air pollutant.' This reading of the statute defies common sense."). A scientific interpretation of this definition could be very helpful.

The next section in the statute is 302(h), which defines effects on welfare: "All language referring to effects on welfare includes, but is not limited to, effects on soils, water, crops, vegetation, manmade materials, animals, wildlife, weather, visibility, and climate, damage to and deterioration of property, and hazards to transportation, as well as effects on economic values and on personal comfort and well-being, whether caused by transformation, conversion, or combination with other air pollutants." Positive impacts, including fertilization effects and beneficial warming, seem to be within scope here.

Section 302 can be found here.

As you all develop the draft, I encourage you to include as many citations to published materials as possible (links would work fine as placeholders). I have found this works better under a tight timeline than going back and looking for sources later. Please also feel free to task me with any research help you might need.

Best,
Travis

On Fri, Apr 11, 2025 at 8:10 PM Steven Koonin <[redacted]@gmail.com> wrote:

I assume we're writing for non-experts. If so, some educating beyond the root questions is in order (it always helps if people feel smarter after reading).

So I've taken Ross' material, added some broader context, and cast it into the forcing/response/impact syllogism that most non-experts seem to get. The result is attached.

I think we can deal with the differences relative to 2009 in an appendix.

SEK

**From:** John Christy <[redacted]@gmail.com>
**Sent:** Friday, April 11, 2025 6:34 PM
**To:** Ross McKitrick <[redacted]gmail.com>
**Cc:** Travis Fisher <[redacted]gmail.com>; [redacted]@gmail.com; [redacted]@hotmail.com
**Subject:** Re: Kickoff

Excellent list Ross. Wildfires are a significant topic to be addressed.

John C.

Sent from my iPhone

On Apr 11, 2025, at 4:05 PM, Ross McKitrick <[redacted]gmail.com> wrote:

The attached represents my summary of the most questions needing to be answered, which I think this group is capable of answering in the next couple of weeks. Probably lots of material already in hand.

On Fri, Apr 11, 2025 at 4:24 PM Travis Fisher <[redacted]gmail.com> wrote:

Gentlemen,

I can't thank you enough for taking this on under such a tight timeline. Let's use this thread to exchange information, links, etc., and as we move forward, I'll see about a document-sharing platform and a shared document to work on simultaneously.

Best,
Travis

<DE.memo.outline.Apr.11.[RM].docx>

--

The linke

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]@cfanclimate.com |
+1.[redacted]
http://www.cfanclimate.net

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Tuesday, July 1, 2025 9:36 PM
**To:** Ross McKitrick
**Cc:** Judith Curry; Steven Koonin; John Christy; Roy W. Spencer; Josh Loucks; Seth Cohen
**Subject:** Re: June 27 version of CWG report

We'll have a lot to discuss on Thursday!

For everyone's awareness, the draft notice of proposed rulemaking from EPA was circulated earlier today for interagency review. I expect more media questions to come given that the news of the policy change likely won't stay under wraps for long. I appreciate the close hold you all have had on this issue.

I'll elaborate on the process going forward and timelines etc. on our call. All I can say right now is rest assured your services will be in demand for the long haul!

On Tue, Jul 1, 2025 at 9:26 PM Ross McKitrick <[redacted]@gmail.com> wrote:

She didn'tcontact me.

On Tue, Jul 1, 2025 at 8:28 PM Judith Curry <[redacted]@gmail.com> wrote:

likewise. Odd that she contacted all three of us?

On Tue, Jul 1, 2025 at 3:33 PM Steven Koonin <[redacted]@gmail.com> wrote:

Same here.

Steven E. Koonin

On Jul 1, 2025, at 18:22, John Christy <[redacted]@gmail.com> wrote:

All

Just turned down a request from a NY Times reporter to comment on the EF. Maxine Joselow.

John C.

On Tue, Jul 1, 2025 at 2:25 PM Steven Koonin <[redacted]@gmail.com> wrote:

Now with some time back from vacation, I've gone through this version of the CWG report.

Suggested changes in the attached are mostly typos and minor wording. The few of more substance are highlighted in yellow with COMMENTS IN CAPS.

It IS a very good document. It will be interesting to see how it's received.

SEK

---

**From:** Ross McKitrick <[redacted]@gmail.com>
**Sent:** Friday, June 27, 2025 9:49 PM
**To:** Judith Curry <[redacted]@gmail.com>; Roy W. Spencer <[redacted]@hotmail.com>; John Christy <[redacted]@gmail.com>; Steven Koonin <[redacted]@gmail.com>; Travis Fisher <[redacted]gmail.com>; Josh Loucks <[redacted]@gmail.com>; Cohen, Seth <seth.cohen@hq.doe.gov>
**Subject:** June 27 version of CWG report

All errata fixed including Fig 5.7, all metadata listed.

Have a nice weekend everyone.

--

Judith Curry, President
CFAN - Climate Forecast Applications Network
Reno, NV USA
[redacted]cfanclimate.com | +1[redacted]
http://www.cfanclimate.net

**From:** Ross McKitrick [[redacted]@gmail.com]
**Sent:** 5/19/2025 11:05:45 PM
**To:** Roy [redacted] [[redacted]@hotmail.com]
**CC:** Travis Fisher [[redacted]@gmail.com]; Steven Koonin [[redacted]@gmail.com]; judith curry [[redacted]gmail.com]; John Christy [[redacted]@gmail.com]
**Subject:** Re: update
**Attachments:** 0.Template.May18.docx

Travis,
Here's my suggestion for the template. Titles, group name, etc are placeholders until finalized.
The headings are linked up so if you insert a new one it will automatically renumber chapters and subsections.
Also the table of contents can be updated by right-clicking and selecting Update field.
Cheers,
Ross

On Mon, May 19, 2025 at 6:18 PM Ross McKitrick <[redacted]gmail.com> wrote:
It was a very good, very productive meeting. I'll send the template this evening.
Ross

On Mon, May 19, 2025 at 5:19 PM Roy Spencer <[redacted]@hotmail.com> wrote:
I think it was AWESOME. We should do it EVERY DAY.

But seriously, folks, I'm honored to be part of this group.

-Roy

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Travis Fisher <[redacted]@gmail.com>
Date: 5/19/25 4:14 PM (GMT-06:00)
To: Ross McKitrick <[redacted]@gmail.com>
Cc: Steven Koonin <[redacted]@gmail.com>, judith curry <[redacted]@gmail.com>, John Christy <[redacted]@gmail.com>, Roy Spencer <[redacted]hotmail.com>
Subject: Re: update

How was the marathon review?

Ross, would you share the report template you want to use? Josh and I will start adding near-final material as soon as we get the green light from this group.

On Mon, May 19, 2025 at 9:58 AM Ross McKitrick <[redacted]@gmail.com> wrote:
Thanks Steve. I renumbered the chapter sections etc. to Ch 5 and put it in the folder for today's meeting. Also since you asked for the tropical amplification material to be shrunk to a single figure (which I'd been meaning to do anyway but hadn't got to it yet) I went ahead and made the change.

See you all shortly.

On Mon, May 19, 2025 at 9:29 AM Steven Koonin <[redacted]@gmail.com> wrote:

I have uploaded my comments/edits on Chapter 6 to the "Final Comments" Dropbox folder (also attached).

Looking forward to our marathon zoom session starting in about an hour.

SEK

**From:** Travis Fisher <[redacted]gmail.com>
**Sent:** Sunday, May 18, 2025 4:54 PM
**To:** Steven Koonin <[redacted]@gmail.com>
**Cc:** Ross McKitrick <[redacted]ail.com>; judith curry <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Roy Spencer <[redacted]@hotmail.com>
**Subject:** Re: update

I agree with Ross that the central point made in Chapter 1 (that $CO_2$ is not directly harmful to humans at ambient concentrations) is a big one. That said, the last paragraph of Chapter 1 functions a bit like an introduction, so maybe we could parse these out and keep a stand-alone chapter on the main point while moving the last P of Chapter 1 to the introduction? It reads:

> The growing amount of $CO_2$ in the atmosphere directly influences the earth system by promoting plant growth (global greening), thereby enhancing agricultural yields, and also by neutralizing ocean alkalinity. But the primary concern about $CO_2$ is its role as a greenhouse gas (GHG), that alters the earth's energy balance. How the climate will respond to that influence is a complex question that will occupy much of this report.

Chapter 2 then discusses the "direct impacts" of $CO_2$ on the environment, namely global greening and reduced ocean alkalinity. To the untrained reader (people like me), it might seem like you all are distinguishing between temperature and non-temperature impacts (or energy and non-energy impacts), and that you deem temperature impacts to be distinct from "direct" impacts. I note this for two reasons: 1) if that wasn't the intent, perhaps you could add some clarity in the introduction, and 2) if that was the intent, you could explain why you're saving the warming/RF for later discussion. (Most people expect to see the big-ticket item up front.)

If temperature change / RF is a direct impact, I'd recommend saying something like "we note three broad categories of direct impacts from increased $CO_2$ concentrations: global greening, reduced alkalinity of the oceans, and increased radiative forcing. We touch on the first two briefly in Chapter 2 before discussing anthropogenic radiative forcing in Chapter 3. Then we take a deeper look at the climate's response to increased $CO_2$ concentrations in Chapters 4 through X [Part 2]." [You could also set up Part 3 in the introduction and explain how you see the different parts of the report as covering different themes.]

On Sun, May 18, 2025 at 4:32 PM Steven Koonin <[redacted]@gmail.com> wrote:

On the preface: First, technically it's not a foreword, which is front matter written by a non-author (in this case, the Secretary). A "preface" is something written by the authors (us). Both of them are distinct from the Introduction (guess we all know what that is).

I'd like our foreword to be a more personal statement, incorporating some of the material now in the section called "Intro". I'll come back with a draft of that tomorrow. But I'd note now that I'd like it welcome community response, both to simulate an open dialog and to model behavior missing from IPCC/NCA/…

Meanwhile, I think the material now in Chap 1 would work very well as the ending of the Introduction.

SEK

**From:** Ross McKitrick <[redacted]@gmail.com>
**Sent:** Sunday, May 18, 2025 4:22 PM
**To:** judith curry <[redacted]@gmail.com>
**Cc:** Steven Koonin <[redacted]@gmail.com>; John Christy <[redacted]@gmail.com>; Travis Fisher <[redacted]@gmail.com>; Roy Spen[redacted]@hotmail.com>
**Subject:** Re: update

I like chapter 1 on its own even though it's very brief. I don't think the material fits anywhere else and it makes an important point.

On Sun, May 18, 2025 at 4:12 PM judith curry <[redacted]@gmail.com> wrote:

I think we should lose chapter 1 and incorporate in preface

Sent from my iPhone

On May 18, 2025, at 12:44 PM, Steven Koonin <[redacted]@gmail.com> wrote:

I've now been through almost all the May15 chapters in the 01.Report Draft folder.

My comments/edits on each are in the files in the "Final Comments" Dropbox folder.

Many of my suggested edits are aimed at clarifying and tightening language, but some are substantial.

I've done little in those chapters I've reviewed before, but there's a lot in others where I've not yet had a chance to weigh in.

A major missing yet is the Model v Observations chapter, which I'll get to before we start tomorrow.

Also will weigh in on the new albedo and emissions text and offer something about the Preface

SEK

# Exhibit 2

NATIONAL ARCHIVES

Office *of the* Chief Records Officer *for the* U.S. Government

***Sent Via Email. No Hard Copy to Follow.***

May 6, 2026

Andrea Heimbrock
Acting Departmental Records Officer
Department of Energy
1000 Independence Ave., SW
Washington DC 20585-1290

Dear Ms. Heimbrock:

The National Archives and Records Administration (NARA) has received an allegation of unauthorized disposition of records regarding the Department of Energy (DOE), Climate Working Group (CWG). This allegation asserts that three DOE employees/advisers and five members of the CWG used personal accounts to avoid the Freedom of Information Act (FOIA) when conducting official DOE business. If confirmed, this conduct would amount to an unauthorized removal of federal records. This information came to light when a federal judge ruled that the CWG is subject to the Federal Advisory Committee Act (FACA), ordering the DOE/CWG to disclose FACA Records (*Environmental Defense Fund, Inc. v. Wright (1:25-cv-12249)).*

In accordance with 36 CFR 1230.14(a), NARA requests that DOE investigate this allegation and respond within 30 calendar days of the date of this letter. If it is determined that an unauthorized disposition of records has occurred, the response should include the following information:

- A complete description of the records with volume, dates, and applicable disposition authority number if known;
- The office maintaining the records;
- A statement of the exact circumstances surrounding the removal, defacing, alteration, or destruction of records;
- A statement of the safeguards established to prevent further loss of documentation; and
- Details of the actions taken to salvage, retrieve, or reconstruct the records.

However, if there was no unauthorized disposition incident, please provide sufficient information to support that finding. I appreciate your attention to this matter. If you have any questions or

wish to discuss further, please contact the Records Management Oversight and Reporting Program by email at UnauthorizedDisposition@nara.gov.

Sincerely,

WILLIAM FISCHER
Chief Records Officer
for the U.S. Government (Acting)

Enclosure:
2026-02-10_UD20260022_RUD-att-1.pdf
2026-02-10_UD20260022_RUD-att-2.pdf

Environmental Defense Fund

February 9, 2026

VIA EMAIL

James Byron, Senior Advisor to the Archivist of the United States
William P. Fischer, Acting Chief Records Officer
National Archives & Records Administration
8601 Adelphi Road
College Park, MD 20740

**Re: Obligations to Preserve Electronic Federal Records and Enable Production of Such Records by Agencies When Lawfully Requested**

Dear Senior Advisor Byron and Acting Chief Records Officer Fischer:

Environmental Defense Fund ("EDF") respectfully writes to identify legal responsibilities of the Archivist (or acting official) and Acting Chief Records Officer under the Federal Records Act to ensure the preservation of records by federal agencies across the government, and to notify agency heads of possible failures to preserve agency records.

Recently disclosed records clearly demonstrate that Trump Administration officials at the U.S. Department of Energy ("DOE") have used, and may be continuing to use, personal email addresses to conduct government business—including involving the U.S. Environmental Protection Agency ("EPA") and the White House.

A federal judge recently ordered DOE and the Climate Working Group ("CWG")—a committee subject to the Federal Advisory Committee Act ("FACA")—"to produce FACA Records," *EDF v. Wright*, Case 1:25-cv-12249, ECF No. 78 (D. Mass., order issued at hearing and docketed Dec. 8, 2025). The disclosed records show multiple instances of at least three DOE political appointees—Travis Fisher, Joshua Loucks, and Seth Cohen—communicating using their personal email accounts with each other and members of the CWG. The disclosed emails were clearly created for official DOE business purposes—they discuss DOE's oversight of the CWG and coordination with EPA and the White House, as the advisory committee developed a report to support EPA's ongoing rulemaking to repeal the Endangerment Finding.

The Endangerment Finding is EPA's 2009 determination—based on mountains of scientific evidence—that greenhouse gases in the atmosphere threaten the public health and welfare of current and future generations, and that emissions from motor vehicles and engines contribute to the greenhouse gas pollution that threatens public health and welfare. *See* 74 Fed. Reg. 66,496 (Dec. 15, 2009). On March 12, 2025, EPA issued a press release announcing "Trump EPA Kicks Off Formal Reconsideration of Endangerment Finding with Agency Partners,"

including a statement from Secretary of Energy Wright.[1] On July 29, 2025, in a joint event, EPA Administrator Zeldin issued EPA's proposal to repeal the Endangerment Finding and all standards to limit vehicle greenhouse gas emissions, and Secretary of Energy Wright issued the CWG's Report, "A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate."[2] The EPA proposal cites the CWG Report 22 times. *See* 90 Fed. Reg. 36,288 (Aug. 1, 2025).

The recently disclosed records reveal extensive use of personal email accounts by DOE political appointees to conduct government business, with intention to avoid records rules. Attachment 1, appended to this letter, contains a small sample of these records, which also include references to communications these officials were having with EPA and the White House. For example:

- On April 19, 2025, DOE political appointee Fisher emailed the CWG advisory committee members, from a personal account, providing them an "assignment" for their work to draft the report, stating "I was asked to share the table of contents [for the report] with the EPA team this evening," and informing the CWG that "the EPA team asked that the document be DOE-branded." (Attachment 1 at 32, Bates 17144).
- In an April 24, 2025 email sent from a personal account, Fisher emailed the CWG members describing discussions between DOE, the White House, and EPA, including sharing that "Wright and Zeldin are traveling together today, so we should have an answer soon"—referring to Energy Secretary Wright and EPA Administrator Zeldin's pending decision about the deadline for the CWG to complete their report. (Attachment 1 at 28, Bates 16021).
- On June 3, 2025, DOE political appointee Seth Cohen emailed, from a personal account, Travis Fisher and Joshua Loucks (on their personal email accounts) and the CWG members, in a discussion regarding the "Scoping" for an analysis to be developed by the CWG. (Attachment 1 at 7, Bates 329).
- On July 1, 2025, Fisher, from a personal account, emailed DOE political appointees Loucks (at a personal account) and Cohen and the CWG members, to inform the group that "the draft notice of proposed rulemaking from EPA was circulated earlier today for interagency review"—presumably referring to EPA's proposed rule to repeal the Endangerment Finding. (Attachment 1 at 39-40, Bates 17250-17251).
- On July 19, 2025, Fisher, from a personal address, sent an email "to warn [CWG members] that all the reviewer materials will be coming from my DOE account . . . please keep in mind that my DOE emails (and your replies) will be easily discoverable by outside parties." (Attachment 1 at 3, Bates 160).
- After the release of its report, one CWG member sent an email to the group with the subject line "keeping it to ourselves," that warned that "email communications that go to DOE addresses are subject to FOIA" and urged the Group to keep future communications "restricted to the authors (except, of course, for matters that directly involve the DOE . . .)." (Attachment 1 at 23, Bates 1939).

---

[1] U.S. EPA, Press Release: Trump EPA Kicks Off Formal Reconsideration of Endangerment Finding with Agency Partners (Mar. 12, 2025), https://www.epa.gov/newsreleases/trump-epa-kicks-formal-reconsideration-endangerment-finding-agency-partners.

[2] *See* U.S. DOE, Department of Energy Issues Report Evaluating Impact of Greenhouse Gasses on U.S. Climate, Invites Public Comment (July 29, 2025), https://www.energy.gov/articles/department-energy-issues-report-evaluating-impact-greenhouse-gasses-us-climate-invites.

***Federal Records Act Obligations.*** The Federal Records Act ("FRA") requires that agency heads "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." 44 U.S.C. § 3101. Agency heads also "shall establish safeguards against the removal or loss of records," including by "making it known to officials and employees of the agency . . . that records in the custody of the agency are not to be alienated or destroyed," *id.* § 3105; and "shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," *id.* § 3102.

Individual federal employees also have obligations under the law. The FRA requires that federal employees "may not create or send a record using a non-official electronic messaging account unless such officer or employee" ensures the record is preserved, such as by "forward[ing] a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). Congress implemented this update to the FRA in 2014 to make clear that "an employee of an executive agency may not create or send a record from a nonofficial electronic messaging account without ensuring such record was submitted to an official electronic messaging account."[3]

The Archivist has a central role in ensuring fulfillment of these requirements. The Archivist "shall notify the head of a Federal agency" of any actual or impending unlawful removal or destruction of agency records "that shall come to the Archivist's attention." 44 U.S.C. § 2905(a). And the Archivist shall "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." *Id.* If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time after being notified," then "the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." *Id.*; *see also* 44 U.S.C. §§ 2115, 3106. Furthermore, if "the head of a Federal agency . . . is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." *Id.* at § 3106(b).

Federal records include "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(a).

***Freedom of Information Act ("FOIA") Obligations.*** Pursuant to FOIA, federal agencies must promptly make records available to any person that requests them, so long as the request is reasonably clear and satisfies agency rules. 5 U.S.C. § 552(a)(3)(A). Government records, even if held in a personal email account or elsewhere outside of the government in violation of obligations under the FRA, are subject to FOIA. *See Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149 (D.C. Cir. 2016).

The National Archives & Records Administration must ensure that agencies are comprehensively preserving government records. Compliance with the FRA is necessary to

[3] U.S. Senate Comm. on Homeland Sec. and Govt. Affairs, *Presidential and Federal Records Act Amendments of 2014*, S. Rep. No. 113-218 at 5 (2014), https://www.congress.gov/committee-report/113th-congress/senate-report/218/1?outputFormat=pdf.

ensure that agencies can comply with FOIA by releasing government records to the public when requested.

EDF has submitted 15 FOIA requests to DOE since January 2025, with at least eight requests seeking correspondence of Trump Administration officials at DOE including emails, voicemails, text messages, Signal messages, and correspondence transmitted through any other electronic platform. To date, EDF has not received any records from DOE in response to these FOIA requests. EDF has submitted 26 FOIA requests to EPA since January 2025, with at least 19 requests seeking correspondence of Trump Administration officials.

***The Archivist (or acting official) must uphold their duties under the FRA***. EDF is concerned that DOE political officials are systematically using non-governmental email and electronic messaging accounts to conduct official government business, and that the agencies may be failing to appropriately preserve these records and, when requested, provide them to the public. In light of the records detailed above, EDF is also concerned that these practices could be in use more broadly, such as by EPA or White House officials. The Archivist must notify the heads of DOE and any other relevant agencies of the unlawful removal of agency records through the use of personal messaging platforms to conduct government business; monitor to ensure the agency heads initiate action to recover the records; and if they do not, the Archivist must request that the Attorney General initiate such an action.

EDF respectfully requests that the Archivist (or acting official) immediately take all appropriate actions to fulfill these obligations—including to ensure preservation of records in the possession of former agency staff, and to ensure that employees are appropriately creating and preserving records within government systems on a going-forward basis. EDF requests that by March 2, the Archivist (or acting official) respond in full to describe any and all actions taken to address this time sensitive matter, including the initiation of any actions in conjunction with the Attorney General, Secretary of Energy, or other agency head to recover records.

Respectfully,

Erin Murphy
Peter Zalzal
Environmental Defense Fund
555 12th Street NW, Suite 400
Washington, DC 20004
emurphy@edf.org
202-572-3525

Cc: Will Brown, Acting Inspector General, National Archives & Records Administration

# Exhibit 3

**Department of Energy**
Washington, DC 20585

June 18, 2026

Chief Records Officer for the U.S. Government
National Archives and Records Administration
8601 Adelphi Rd
College Park, Maryland 20740-6001

Please accept this letter pursuant to 36 CFR § 1230.14 to satisfy the reporting requirement for the noted regulation. The U.S. Department of Energy (DOE or Department) Records Management (RM) Program formally received the National Archives & Records Administration (NARA) notice on May 6, 2026 concerning the potential unauthorized loss and/or destruction of Federal records. NARA describes the allegations regarding unauthorized removal of federal records as relating to "three DOE employees/advisers and five members of the [DOE Climate Working Group]". However, DOE understands that the allegations relate specifically to "three DOE political appointees—Travis Fisher, Joshua Loucks, and Seth Cohen". *See* Enclosure 1 to May 6, 2026 NARA Notice. The following responses to 36 CFR §1230.14 reporting criteria constitute the report required by the CFR subpart.

**36 CFR §1230.14 (a) (1) A complete description of the records with volume and dates if known.**

Response: Emails were sent or received from the personal email accounts of three DOE officials: Travis Fisher, a temporary employee under the Intergovernmental Personnel Act, Joshua Loucks, a political appointee no longer with DOE, and Seth Cohen, a political appointee no longer with DOE.

The emails range from March to August 2025 and are publicly available on the Environmental Defense Fund (EDF) website. Exact volume is estimated to be less than 10 GB.

The email messages of the three DOE officials are covered by GRS 6.1 item 011, Email and other types of electronic messages of Non-Capstone Officials. These emails are retained until 7 years old. These officials serve/served in roles that are not categorized as Capstone Official roles. Copies of the final Climate Working Group report, materials prepared by or for the working group, minutes, correspondence, and research are covered by GRS 6.2 item 010 Substantive Committee Records.

**Department of Energy**
Washington, DC 20585

**36 CFR §1230.14 (a) (2) the office maintaining the records.**

Response: The maintaining Offices are the Office of the Secretary and Deputy Secretary, and the Office of the General Counsel located in Washington DC. The website page is located on Energy.gov at Leadership & Organization | Department of Energy and Office of the General Counsel | Department of Energy. The website for the working group is located on energy.gov at Climate | Department of Energy.

**36 CFR §1230.14 (a) (3) A statement of the exact circumstances surrounding the removal, defacing, alteration, or destruction of records.**

Response: The 2025 Climate Working Group, assembled by Secretary of Energy Chris Wright, developed a report called "A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate." Three DOE employees or appointees—Travis Fisher, Joshua Loucks, and Seth Cohen—sent or received emails from personal email accounts that related to their official DOE responsibilities, including coordination of the activities of the Climate Working Group.

The use of these non-DOE email accounts for DOE business was discovered after the Environmental Defense Fund (EDF) and Union of Concerned Scientists sued the Department of Energy (DOE) and the Environmental Protection Agency (EPA), alleging that both agencies violated the Federal Advisory Committee Act (FACA). In December 2025, a district court ordered DOE to produce all FACA 10(b) documents for the Climate Working Group. DOE had collected relevant documents from the Climate Working Group members and reviewed and produced, in December 2025 and January 2026, approximately 100,000 pages of material to EDF. The materials included thousands of emails, including some sent or received from personal email addresses of the three DOE officials.

DOE O 243.1C Records Management Program requires that "all official DOE business must be conducted using authorized Federal email accounts. DOE business conducted through non-official accounts must be captured on an official Federal email account within 20 calendar days of creation or receipt" (4)(b)(6)(a).

DOE O 515.1 Advisory Committee Management Program, governs the establishment and management of DOE committee and working groups and requires a central location maintain advisory committee documents and records for public inspection and copying. The Order requires that "Federal records must be scheduled under a NARA approved records disposition schedule and maintained in fully electronic format."

**Department of Energy**
Washington, DC 20585

**36 CFR §1230.14 (a) (4) A statement of the safeguards established to prevent further loss of documentation.**

Response: Although Records Management training is already established and required for all DOE employees and contractors, the DOE Senior Agency Official for Records Management (RM) is in constant contact with DOE leadership to ensure that they are provided with records management guidance and training. A training on recordkeeping responsibilities, including the required use of official messaging accounts, was completed on June 11 2026 for all DOE appointees.

At the next available cycle, the DOE O 515.1 will be updated to include a requirement to use DOE official messaging accounts and annual records management training for all departmental staff participating in an advisory committee, in compliance with DOE O 243.1C.

**36 CFR§1230.14 (a) (5) When appropriate, details of the actions taken to salvage, retrieve, or reconstruct the records.**

Response: DOE's Office of the General Counsel engaged with the three DOE employees involved to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE .gov accounts. GC has confirmed with all three individuals that these actions have been completed.

A DOE Office of Inspector General investigation was completed, and the request was closed with no further actions required, which is attached to this memo.

**36 CFR §1230.14 (b) the report must be submitted or approved by the individual authorized to sign records schedules as described in § 1220.34(b) of this subchapter.**

Response: The DOE RM Records Officer is the official authorized by the head of the agency to sign disposition schedules and requests for transfer of records to the custody of the National Archives.

This letter serves as the report for your consideration in closing this matter satisfactorily, subject to your final determination. I, the undersigned, submit and approve this report pursuant to 36 CFR § 1220.34 (b). Should you or your staff have questions, issues, or concerns I can be reached at andrea.heimbrock@hq.doe.gov.

**Department of Energy**
Washington, DC 20585

Respectfully submitted,

ANDREA HEIMBROCK Digitally signed by ANDREA HEIMBROCK Date: 2026.06.18 15:23:34 -04'00'

Andrea Heimbrock
Department of Energy
Departmental Records Officer

# Exhibit 4

NATIONAL ARCHIVES

Office *of the* Chief
Records Officer *for the*
U.S. Government

***Sent Via Email. No Hard Copy to Follow.***

July 29, 2026

Andrea Heimbrock
Acting Departmental Records Officer
Department of Energy
1000 Independence Ave., SW
Washington DC 20585-1290

Dear Ms. Heimbrock:

The National Archives and Records Administration (NARA) has received an allegation of unauthorized disposition of records regarding the Department of Energy (DOE). This allegation asserts that DOE political officials are using Signal when conducting official DOE business. Please see the enclosure for more details.

In accordance with 36 CFR 1230.14(a), NARA requests that DOE investigate this allegation and respond within 30 calendar days of the date of this letter. If it is determined that an unauthorized disposition of records has occurred, the response should include the following information:

- A complete description of the records with volume, dates, and applicable disposition authority number if known;
- The office maintaining the records;
- A statement of the exact circumstances surrounding the removal, defacing, alteration, or destruction of records;
- A statement of the safeguards established to prevent further loss of documentation; and
- Details of the actions taken to salvage, retrieve, or reconstruct the records.

However, if there was no unauthorized disposition incident, please provide sufficient information to support that finding. I appreciate your attention to this matter.

If you have any questions or wish to discuss further, please contact the Records Management Oversight and Reporting Program by email at UnauthorizedDisposition@nara.gov.

Sincerely,

WILLIAM FISCHER
Chief Records Officer
for the U.S. Government (Acting)

Enclosure:
2026-06-04_UD20260074_RUD-att-1.pdf

Environmental Defense Fund

June 4, 2026

VIA EMAIL

Edward Forst, Acting Archivist of the United States
William P. Fischer, Acting Chief Records Officer
National Archives & Records Administration
8601 Adelphi Road
College Park, MD 20740

**Re: Obligations to Preserve Electronic Federal Records and Enable Production of Such Records by Agencies When Lawfully Requested**

Dear Acting Archivist Forst and Acting Chief Records Officer Fischer:

Environmental Defense Fund ("EDF") respectfully writes to supplement its letter of February 9, 2026 regarding the legal responsibilities of the National Archives & Records Administration ("NARA") under the Federal Records Act ("FRA") to ensure the preservation of records by federal agencies across the government, and to notify agency heads of possible failures to preserve agency records.

As set out in EDF's February 9 letter, EDF is concerned, based on documents produced in *EDF v. Wright*, No. 25-cv-12249 (D. Mass.), that U.S. Department of Energy ("DOE") political officials are systematically using non-governmental email and electronic messaging accounts to conduct official government business. EDF requested that the Archivist or other acting official immediately take all appropriate action to fulfill its obligations under the FRA, including to ensure that government employees are appropriately creating and preserving records within government systems on a going-forward basis.

EDF understands that NARA has initiated an investigation into DOE political officials' use of non-governmental email accounts to conduct government business and intends to complete that investigation within the next 60 days. We write to supplement our prior letter to expressly request that NARA's investigation include review of the use of Signal by DOE political officials, including Seth Cohen, who is already a subject of NARA's investigation into unauthorized personal email use. EDF has learned that Cohen specifically has regularly used Signal for substantive work communications, and therefore the investigation and recovery of his Signal records should occur at the same time as the inquiry into his personal email use.

Respectfully,

Erin Murphy
Environmental Defense Fund
555 12th Street NW, Suite 400
Washington, DC 20004
emurphy@edf.org
202-572-3525

Cc: Will Brown, Acting Inspector General, National Archives & Records Administration

# Exhibit 5

**Department of Energy**
Washington, DC 20585

September 14, 2026

William Fischer
Chief Records Officer for the U.S. Government (Acting)
National Archives and Records Administration
8601 Adelphi Rd
College Park, Maryland 20740-6001

Dear Mr. Fischer,

I am writing in response to your letter dated July 29, 2026, that was initiated in response to a letter from the Environmental Defense Fund (EDF) concerning the Department of Energy's (DOE's) use of non-governmental accounts for official business. DOE reviewed EDF's letter and offers the following assessment for your consideration.

The DOE Office of the Chief Information Officer (OCIO) completed a digital investigation of Mr. Seth Cohen's Government Furnished Equipment (GFE) and determined that Signal was not, and has never been, installed on his GFE devices. We have no indication of any unauthorized destruction of records regarding Mr. Cohen.

In accordance with 36 CFR 1230.10, DOE continues to work to prevent the unauthorized dispositioning of records, and to take adequate measures to inform all users through policy and training of the associated records management requirements. Should DOE discover any unauthorized disposition, DOE will promptly notify NARA in compliance with 36 CFR 1230.14.

Please contact me at andrea.heimbrock@hq.doe.gov or doerm@hq.doe.gov if there are further questions.

Respectfully submitted,

Andrea Heimbrock
Departmental Records Officer

ANDREA HEIMBROCK

Digitally signed by ANDREA HEIMBROCK
Date: 2026.09.14 14:33:22 -04'00'