**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ENVIRONMENTAL DEFENSE FUND,

*Plaintiff*,

v.

CHRISTOPHER WRIGHT, in his official capacity as Secretary of Energy, *et al.*,

*Defendants.*

Case No. 26-cv-928

Judge Carl J. Nichols

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

INTRODUCTION ..................... 1

BACKGROUND ..................... 3

- A. The Federal Records Act ..................... 3
- B. DOE Officials Use Personal Email Accounts and Messaging Apps for Official Business ..................... 5
- C. EDF Notifies NARA and DOE of FRA Violations ..................... 8
- D. Procedural History ..................... 10

LEGAL STANDARD ..................... 10

ARGUMENT ..................... 11

I. EDF's Amended Complaint Is Properly Before the Court ..................... 11

II. The Court Has Jurisdiction Over All of EDF's Claims ..................... 13

- A. EDF Has Adequately Alleged Standing ..................... 13
- B. EDF's Claims Are Ripe ..................... 17
  - 1. EDF Pleaded Ripe Claims in Its Amended Complaint ..................... 18
  - 2. EDF Pleaded Ripe Claims in Its Original Complaint ..................... 20
- C. EDF's Claims Are Not Moot ..................... 23

III. EDF Has Stated a Claim to Relief ..................... 27

CONCLUSION ..................... 30

## TABLE OF AUTHORITIES

**Cases**

*ACLU Found. of Fla. v. U.S. Immigrs. & Customs Enf't*,
No. 22-cv-01129, 2023 WL 6461053 (D.D.C. Aug. 31, 2023) .......... 5, 28

*Al-Gharawy v. U.S. Dep't of Homeland Sec.*,
617 F. Supp. 3d 1 (D.D.C. 2022) .......... 30

*Am. First Legal Found. v. Becerra*,
No. 24-cv-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024) .......... 28, 30

*Am. Nat. Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) .......... 11

*Am. Petroleum Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) .......... 18

*Am. First Legal Foundation v. Greer*,
153 F.4th 1311 (D.C. Cir. 2025) .......... 17

*Am. Oversight v. Dep't of Veterans Affairs*,
498 F. Supp. 3d 145 (D.D.C. 2020) .......... 21, 23

*Am. Oversight v. Hegseth*,
788 F. Supp. 3d 14 (D.D.C. 2025) .......... 21

**Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) .......... 3, 5, 27, 28

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10, 16

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) .......... 13

*Babaei v. U.S. Dep't of State*,
725 F. Supp. 3d 20 (D.D.C. 2024) .......... 29

*Bagherian v. Pompeo*,
442 F. Supp. 3d 87 (D.D.C. 2020) .......... 29

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) .......... 17, 19, 23

*Brzezinski v. U.S. Dep't of Homeland Sec.*,
No. 21-cv-376, 2021 WL 4191958 (D.D.C. Sept. 15, 2021) .......... 29

*Cause of Action Institute v. Pompeo*,
319 F. Supp. 3d 230 (D.D.C. 2018) .......... 26, 27

**Cause of Action Institute v. Tillerson*,
285 F. Supp. 3d 201 (D.D.C. 2018) .......... 19, 20, 26, 27

*CREW v. Dep't of Educ.*,
538 F. Supp. 2d 24 (D.D.C. 2008) .......... 16

*CREW v. Dep't of Homeland Sec.*,
No. 22-cv-3350, 2024 WL 4286031 (D.D.C. Sept. 25, 2024) .......... 23

*CREW v. Exec. Office of the President*,
587 F. Supp. 2d 48 (D.D.C. 2008) .......... 14, 16

*CREW v. SEC*,
858 F. Supp. 2d 51 (D.D.C. 2012) .......... 14, 16, 17, 28

*EDF v. Wright*,
No. 25-cv-12249 (D. Mass.) .......... 6

*Jud. Watch v. Kerry*,
No. 15-cv-785 (D.D.C. May 28, 2015) .......... 21

*Jud. Watch, Inc. v. FBI*,
No. 18-cv-2316, 2019 WL 4194501 (D.D.C. Sept. 4, 2019) .......... 14, 16

**Jud. Watch, Inc. v. Kerry*,
844 F.3d 952 (D.C. Cir. 2016) .......... 3, 5, 17, 19, 20, 21, 23, 24, 25, 26, 27

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 13, 14

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.C. Cir. 1998) .......... 23, 24

*Price v. DOJ*,
2019 WL 2526439 (D.D.C. June 19, 2019) .......... 16, 22

*Pub. Citizen v. Carlin,*
184 F.3d 900 (D.C. Cir. 1999) .......... 15

*Pub. Citizen v. Carlin*,
2 F. Supp. 2d 1 (D.D.C. 1997) .......... 14, 16

*S. Educ. Found. v. U.S. Dep't of Educ.*,
784 F. Supp. 3d 50 (D.D.C. 2025) .......... 19

*Scahill v. District of Columbia*,
909 F.3d 1177 (D.C. Cir. 2018) .......... 18, 23

*Tanner-Brown v. Haaland*,
105 F.4th 437 (D.C. Cir. 2024) .......... 14

*United States ex rel. Jenkins v. Sanford Cap., LLC*,
No. 17-cv-239, 2020 WL 5440551 (D.D.C. Sept. 10, 2020) .......... 15

*United States v. Hicks*,
283 F.3d 380 (D.C. Cir. 2002) .......... 11, 12

*Univ. of Colo. Health v. Azar*,
486 F. Supp. 3d 185 (D.D.C. 2020) .......... 12, 13

**Statutes**

5 U.S.C.

§ 706(1) ........ 5, 27, 28, 29

§ 1009 ........ 6

§ 1010 ........ 6

44 U.S.C.

§ 2115 ........ 5

§ 2902(1) ........ 4

§ 2905(a) ........ 5, 28

§ 2911(a) ........ 4, 8

§ 3102 ........ 4

§ 3105 ........ 4

§ 3106 ........ 4, 5, 21, 28

§ 3106(a) ........ 4, 5, 21

§ 3106(b) ........ 5

**Rules**

Fed. R. Civ. P.

12(b)(1) ........ 12

12(b)(6) ........ 12, 30

15(a) ........ 2, 11, 12, 13, 14

15(a)(1)(B) ........ 11, 12

15(d) ........ 2, 14, 15

**Regulations**

EPA, Proposed Rule: *Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards*, 90 Fed. Reg. 36,288 (Aug. 1, 2025) ........ 5, 6

**Other Authorities**

6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed. 2019) ........ 14

U.S. Dept. of Energy Climate Working Group, Report:
*A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate*
(July 23, 2025) .............................................................................................................. 6

## INTRODUCTION

In December 2025, a federal court ordered the Department of Energy (DOE) to release all records of the Climate Working Group (CWG), a federal advisory committee that had been working in coordination with various DOE officials. Those records revealed widespread use of personal email to conduct government business by those officials: of the approximately 8,000 pages of emails released, more than 1,300 emails were sent to a personal email address belonging to one of three officials. Those records, moreover, reflected only emails that the officials sent to or received from the CWG, and thus represented only a small subset of the broader universe of records that these officials created or received in performing their official duties.

Plaintiff Environmental Defense Fund (EDF) has submitted numerous Freedom of Information Act (FOIA) requests for the correspondence records of these officials. After EDF became aware of their widespread use of private email to conduct government business, EDF notified DOE and the National Archives and Records Administration (NARA) of the unlawful removal of records and requested that the agencies investigate and initiate a recovery action for the records.

Having received no response from either agency, EDF filed suit in March 2026, seeking to compel the agencies to initiate such a recovery action, as is required under the Federal Records Act (FRA). EDF filed an amended complaint as of right in August 2026, adding allegations that at least one of the officials used the messaging app Signal to conduct government business. Defendants have now moved to dismiss, raising a hodgepodge of procedural and jurisdictional arguments. None of these arguments has merit.

*First*, nearly all of Defendants' arguments rely on an incorrect premise—that this Court should treat EDF's original complaint as the operative pleading because the amended complaint was, in Defendants' view, a "supplemental" complaint for which EDF should have sought leave under Fed. R. Civ. P. 15(d). But EDF was entitled to file the amended complaint as of right under Rule 15(a). And even if leave were required as Defendants suggest, EDF is filing herewith a motion for leave to file the amended complaint *nunc pro tunc*.

*Second*, EDF has standing to pursue its FRA claims. Numerous courts in this district have held that a plaintiff with pending FOIA requests has standing to pursue FRA claims asserting that the agencies must initiate an action to recover records encompassed by those requests. The fact that EDF may have already received *some* of the personal emails does not eliminate EDF's injury, as EDF's FOIA requests extend beyond the CWG records already produced. Nor does it matter that some of those requests are still pending; courts have recognized that plaintiffs with pending requests have standing because of the informational injury they will suffer if the records they are seeking are not recovered.

*Third*, EDF's claims are ripe. The Supreme Court has held that ripeness is measured based on the situation now, and DOE has now concluded its investigation into EDF's allegations and does not intend to take any further steps to recover the records. EDF's claims could thus not possibly be unripe. And even if the Court were to measure ripeness at the time that EDF filed suit as Defendants contend it should, EDF's claims were ripe at that time because Defendants were on notice of the FRA violations but had not initiated a recovery action as the FRA requires.

*Fourth*, EDF's claims are not moot. Defendants face a heavy burden to establish mootness in an FRA case and must demonstrate that "following the statutory mandate to seek action by the Attorney General" would not "shake loose a few more" federal records. *Jud.*

*Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016). Defendants cannot meet that burden here because their investigation into EDF's allegations was insufficient under binding D.C. Circuit precedent. As to the alleged use of personal email, Defendants only asked the three officials to voluntarily return records, and the D.C. Circuit squarely held in *Kerry* that such efforts cannot establish mootness. As to the alleged use of Signal, Defendants only checked the official's government-issued device to see if Signal was installed, without asking the official whether he used Signal on his personal device for government work—efforts that likewise cannot meet the test set forth by the D.C. Circuit in *Kerry*.

*Finally*, EDF has stated a claim on the merits. Defendants' arguments in this respect largely repeat their other arguments on jurisdiction, contending that they lacked sufficient knowledge of FRA violations at the time EDF filed suit. But the Court must accept EDF's allegations as true at this stage, and those allegations more than plausibly state a claim that Defendants were on notice of the violations—indeed, NARA itself deemed the allegations in the letters to be credible and warranting investigation. Accordingly, Defendants' motion to dismiss should be denied.

## BACKGROUND

### A. The Federal Records Act

The Federal Records Act of 1950 "governs the creation, management, and disposal of federal records." *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991). To ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government," 44 U.S.C. § 2902(1), the Act requires that agency heads "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency," *id.* § 3101. Agency heads also "shall

establish safeguards against the removal or loss of records," including by "making it known to officials and employees of the agency . . . that records in the custody of the agency are not to be alienated or destroyed," *id.* § 3105, and "shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," *id.* § 3102.

Individual federal employees also have obligations under the FRA. Federal employees "may not create or send a record using a non-official electronic messaging account unless such officer or employee" takes one of two measures to ensure the record is preserved: (1) "copies an official electronic messaging account of the officer or employee in the original creation or transmission of the record"; or (2) "forwards a complete copy of the record to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a).

The FRA imposes a mandatory duty on the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a). The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency." *Id.*

The Archivist also has a central role in ensuring fulfillment of FRA requirements. The Archivist "shall notify the head of a Federal agency" of any actual or impending unlawful removal or destruction of records "that shall come to the Archivist's attention." 44 U.S.C. § 2905(a). If the agency head fails to initiate an action for recovery of unlawfully removed records "or other redress within a reasonable period of time," then the Archivist "shall request

the Attorney General to initiate such an action." *Id.*; *see also id.* § 3106(b) (similar); *id.* § 2115 (similar).

The obligations to initiate an enforcement action through the Attorney General to recover unlawfully removed records or for other redress are mandatory, not subject to agency discretion. *Kerry*, 844 F.3d at 956; *Armstrong*, 924 F.2d at 295–96. "Private litigants may, therefore, seek to compel the agency head or the Archivist to initiate an enforcement action under the Administrative Procedure Act, 5 U.S.C. § 706(1)." *ACLU Found. of Fla. v. U.S. Immigrs. & Customs Enf't*, No. 22-cv-01129, 2023 WL 6461053, at *2 (D.D.C. Aug. 31, 2023) (Nichols, J.) (citing *Kerry*, 844 F.3d at 954).

### B. DOE Officials Use Personal Email Accounts and Messaging Apps for Official Business

Through documents that DOE produced to EDF in separate litigation, EDF uncovered direct evidence that senior DOE officials were using personal email accounts to conduct important government business related to the Climate Working Group. Secretary of Energy Chris Wright convened the CWG in March 2025 to "write a report on issues in climate science relevant for energy policymaking, including evidence and perspectives that challenge the mainstream consensus." U.S. Dept. of Energy Climate Working Group, Report: *A Critical Review of Impacts of Greenhouse Gas Emissions on the U.S. Climate* at x (July 23, 2025), https://perma.cc/2H32-MVCY ("CWG Report"). DOE published the report on July 29, 2025. *Id.*

Specifically, the CWG report was aimed at supporting the Environmental Protection Agency's reconsideration of the "Endangerment Finding." *See* Dkt. No. 1-1. On the same day that the CWG report was published, EPA issued a proposed rule to rescind the Endangerment Finding. *See* EPA, Proposed Rule: *Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards*, 90 Fed. Reg. 36,288 (Aug. 1, 2025). The Endangerment

Finding is EPA's 2009 science-based determination that greenhouse gases threaten the public health and welfare of current and future generations, and that emissions from motor vehicles and engines contribute to the greenhouse gas pollution that threatens public health and welfare. *Id.*

Shortly after the CWG published its report and EPA issued its proposed rule, Plaintiff EDF and the Union of Concerned Scientists sued Secretary Wright, DOE, and the CWG in the District of Massachusetts for establishing the CWG in violation of the Federal Advisory Committee Act (FACA). *See EDF v. Wright*, No. 25-cv-12249 (D. Mass.). FACA establishes several requirements for federal advisory committees, including that they generally make their meetings, emails, and other records open to the public. *See* 5 U.S.C. §§ 1009, 1010. Because the CWG complied with none of these requirements, EDF filed suit and sought to compel the government to disclose the records of the CWG.

The district court agreed with EDF that the CWG was a federal advisory committee subject to the requirements of FACA. *EDF v. Wright*, No. 25-cv-12249, 2026 WL 251626, at *1 (D. Mass. Jan. 30, 2026). The court accordingly ordered the government to produce all records of the CWG to EDF. *See* Order, *EDF v. Wright*, No. 25-cv-12249 (D. Mass. Dec. 8, 2025), Dkt. 78.

The records that the government then produced in response to the Court's order revealed extensive use of personal email accounts by DOE appointees to conduct government business. *See* Am. Compl. ¶¶ 36–46 (Dkt. 17) & Exs. 1–10 (Dkt. Nos. 1-1 to 1-10). The records show that at least three DOE officials—Seth Cohen, Travis Fisher, and Joshua Loucks—communicated using their personal email accounts with each other and with members of the CWG regarding the work of the CWG. *Id.*

The disclosed emails were created for official DOE purposes—they discuss DOE's oversight of the CWG and coordination with EPA and the White House, as the advisory

committee developed a report to support EPA's rulemaking to repeal the Endangerment Finding. For example:

- On April 19, 2025, DOE political appointee Fisher emailed the CWG advisory committee members, from a personal account, providing them an "assignment" for their work to draft the report, stating "I was asked to share the table of contents [for the report] with the EPA team this evening," and informing the CWG that "the EPA team asked that the document be DOE-branded." Am. Compl. ¶ 38 & Ex. 1.
- In an April 24, 2025 email sent from a personal account, Fisher emailed the CWG members describing discussions between DOE, the White House, and EPA, including sharing that "Wright and Zeldin are traveling together today, so we should have an answer soon"—referring to Energy Secretary Wright and EPA Administrator Zeldin's pending decision about the deadline for the CWG to complete their report. *Id.* ¶ 39 & Ex. 4.
- On June 3, 2025, DOE political appointee Fisher emailed the CWG from his personal account, with guidance regarding an effort to critique the Fifth National Climate Assessment (NCA5) and the U.S. Global Change Research Program, stating: "[M]y understanding is that we should critically review NCA 5 (at whatever level of detail is feasible in a period of a couple of weeks) through the lens of the statute, the executive order, and the DOE report. As of right now, we should write this document as a response to a request from OSTP [the White House's Office of Science and Technology Policy] . . . ." *Id.* ¶ 40 & Ex. 5.

EDF has reviewed the more than 100,000 pages of CWG records it received through the FACA case, approximately 8,000 pages of which contain email records. Am. Compl. ¶ 46. The FACA records contain at least 400 email chains involving the personal email accounts of DOE appointees, and at least 1,300 individual emails sent from or received by a DOE appointee's personal email account. *Id.* Some of the emails involve the personal email account of one DOE employee and the government email account of another DOE employee. *Id.* Additionally, there are at least 50 email chains and at least 80 individual emails where it is unclear from the records provided whether DOE appointees were using their personal or government email accounts, in emails involving government business. *Id.*

EDF also came to learn, through a third party with direct knowledge, that at least one DOE appointee (Seth Cohen) used the messaging app Signal for substantive work

communications. *See id.* ¶ 48. Under the FRA, government employees are not authorized to use Signal for official government business unless they forward a copy of the record to an official electronic messaging account within 20 days. *See* 44 U.S.C. § 2911(a).

### C. EDF Notifies NARA and DOE of FRA Violations

After receiving and reviewing the government records revealing extensive use of personal email accounts by DOE political appointees, on February 9, 2026, EDF notified Secretary Wright by letter of his obligations to preserve electronic records under the FRA. Am. Compl. ¶ 54; Declaration of Todd Burns ("Burns Decl.") Ex. 1, Dkt. 19-1. EDF provided examples of DOE political appointees Cohen, Fisher, and Loucks using their personal email accounts for official business; attached to its letter a sample of 44 pages of email records demonstrating such use of personal email accounts; and reminded the agency of its obligations to preserve federal records, including the obligation of employees not to use personal email accounts without ensuring that the record is preserved. *Id.* EDF further requested that Secretary Wright immediately take appropriate action to fulfill DOE's obligations under the FRA. Am. Compl. ¶ 55. EDF requested that the Secretary respond by March 2, 2026. *Id.*

At the same time, EDF wrote to NARA regarding the DOE officials' use of personal email for government business. *Id.* ¶ 56; Burns Decl. Ex. 2, Dkt. 19-1 at 61–64. EDF requested that the Archivist notify Secretary Wright of the unlawful removal of agency records through the use of personal messaging platforms. Am. Compl. ¶ 57. EDF requested that the Archivist respond regarding steps he had taken to address the issues by March 2. *Id.* Neither DOE nor the Archivist responded to EDF's February 9 letters. *Id.* ¶ 58.

After EDF learned of Cohen's unauthorized use of Signal, on June 4, 2026, EDF wrote to Defendant Forst and NARA to supplement its letter of February 9 to request that the

investigation into DOE include review of the use of Signal by DOE political officials, including Seth Cohen. *Id.* ¶ 59; Dkt. No. 12-3. NARA did not respond to EDF's June 4 letter. *Id.* ¶ 60.

Although neither DOE nor NARA ever responded to EDF, Defendants have submitted declarations and exhibits with their motion to dismiss showing that NARA found EDF's allegations to be "credible." Declaration of Michelle Bradley ("Bradley Decl.") ¶¶ 13, 23. NARA accordingly sent letters to DOE requesting that the agency investigate EDF's allegations. *Id.* ¶¶ 16, 25.

As to EDF's allegations related to the use of personal email for government business, DOE confirmed that "[t]hree DOE employees or appointees—Travis Fisher, Joshua Loucks, and Seth Cohen—sent or received emails from personal email accounts that related to their official DOE responsibilities, including coordination of the activities of the Climate Working Group." Burns Decl. Ex. 3, Dkt. 19-1 at 67. DOE stated that its Office of General Counsel "engaged with the three DOE employees involved to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE.gov accounts." *Id.* at 68. DOE also noted that its Office of Inspector General completed an investigation, which DOE "attached" to its response to NARA, but has not provided that OIG investigation document with its exhibits in this case. *See id.* Nor has DOE indicated whether its investigation uncovered other emails that Fisher, Loucks, and Cohen had sent from their personal accounts or what steps DOE took to ensure that the three officials forwarded all relevant communications. *See id.*

As to EDF's allegations related to the use of Signal for government business, DOE stated only that it conducted a "digital investigation of Mr. Seth Cohen's Government Furnished Equipment (GFE) and determined that Signal was not, and has never been, installed on his GFE devices." *Id.* Ex. 5. DOE did not indicate, however, whether it asked Cohen whether he had

installed Signal on his personal device or whether he used the messaging app for government business. *See id.* NARA "has not yet determined whether the agency report satisfies the agency's reporting obligation in 36 CFR 1230.14." Bradley Decl. ¶ 28.

### D. Procedural History

EDF filed its original complaint on March 17, 2026. *See* Compl., Dkt. 1. The complaint asserted claims under the Administrative Procedure Act against Defendants for violations of the FRA. *See id.* Counts I–II. In the alternative, the complaint asserted claims against Defendants for mandamus. *See id.* Counts III–IV.

After EDF learned of Cohen's Signal use and notified NARA of that use, EDF filed an amended complaint on August 6, 2026. Dkt. 17. Because EDF had not amended its complaint previously and Defendants had not filed a responsive pleading, EDF amended its complaint as of right. *See* Fed. R. Civ. P. 15(a)(1)(B) (party "may amend its pleading once as a matter of course no later than . . . 21 days after service of a responsive pleading"). The amended complaint added allegations that Cohen had used Signal for government business while he was a DOE employee, Am. Compl. ¶ 47, which included the many months that he was a DOE employee before the original complaint was filed. EDF also updated the amended complaint with additional developments that had occurred since the filing of the original complaint, including NARA's investigation into EDF's prior letter. *Id.* ¶ 58.

## LEGAL STANDARD

Defendants move to dismiss for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The same standard applies to a Rule

12(b)(1) motion for lack of Article III standing. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In considering a motion under Rules 12(b)(1) or 12(b)(6), the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [any] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted).

## ARGUMENT

### I. EDF's Amended Complaint Is Properly Before the Court

As an initial matter, the operative pleading for purposes of Defendants' motion to dismiss is the amended complaint, not the original complaint. Under Rule 15(a), a party may amend its complaint "once as a matter of course no later than . . . 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1)(B). EDF filed an amended complaint as a matter of right on August 6, 2026, before Defendants filed any responsive pleading. Dkt. 17. That amendment added allegations about Cohen's Signal use that predated the filing of the amended complaint. *See* Am. Compl. ¶ 47. It also updated the complaint with developments that had occurred since the filing of the original complaint. *Id.* ¶ 58.

Relying on authority that amended complaints "typically" rest on matters in place prior to the filing of the original pleading, Defendants argue that EDF's amended complaint was in fact a "supplemental" pleading because it also referenced events that occurred after the original pleading. Defs.' Motion to Dismiss (MTD) 10 (quoting *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002)). As noted above, however, the main addition to the amended complaint was an allegation that Cohen used Signal while he was a DOE employee—an allegation that necessarily rested "on matters in place prior to the filing of the original pleading" and thus would need to be included in an *amended* complaint rather than a supplemental complaint. *Hicks*, 283

F.3d at 385. The government cites no authority holding that the Court should disregard an amended complaint, properly filed as of right within the time limits of Rule 15(a), simply because that amended complaint also accounts for developments since the filing of the original complaint.

To the contrary, as Defendants recognize, the court in *University of Colorado Health v. Azar*, 486 F. Supp. 3d 185 (D.D.C. 2020), rejected such a "highly technical" argument. *Id.* at 210. As that court recognized, "[p]arties and courts occasionally confuse supplemental pleadings with amended pleadings" and "the distinction between [them] is sometimes ignored completely." *Id.* (quoting 6A Wright & Miller, Fed. Prac. & Proc. Civ. § 1504 (3d ed. 2019)). Indeed, even when "'a supplemental pleading is interposed by a party without leave of court in the mistaken belief it is a Rule 15(a) amendment that may be made as a matter of course,' it is generally 'doubtful' that any prejudice 'accrue[s] to the opposing party' in such a situation." *Id.* (quoting Wright & Miller § 1504). "That is 'because the time during which amendments as of right may be filed is relatively short and comes early in the action,' and '[a]n opposing party who does feel aggrieved may move to strike the mislabeled pleading, which would have the practical effect of bringing the question of its propriety before the court as if it had been raised on a motion under Rule 15(d).'" *Id.* (quoting Wright & Miller § 1504).

Accordingly, the court in *University of Colorado Health* "exercise[d] its discretion to treat [a] mislabeled amended complaint as a supplemental complaint." *Id.* Thus, even if the Court concludes that leave was technically required (though EDF's position is that it was not), the Court should follow that approach and treat the amended complaint as a supplemental complaint. As in *University of Colorado Health*, the government "has not pointed to any undue prejudice

that has resulted from [any] mislabeling." *Id.* Nor is there any reason to "think the Court would not have granted the motion to supplement." *Id.*

In any event, to remove any possible question about the propriety of the Court considering EDF's amended complaint, EDF is filing herewith a motion for leave to file the amended complaint as an "Amended And/Or Supplemental Complaint." As that motion explains, EDF easily satisfies the liberal standard for supplementing a complaint under Rule 15(d), and the Court can grant leave *nunc pro tunc* so that it applies to the amended complaint as already filed. The government would face no prejudice from the Court granting the motion, as the government has already moved to dismiss "based on both pleadings." MTD 11. And granting the motion for leave *nunc pro tunc* would not result in any delay; to the contrary, it would ensure the expeditious resolution of this matter by considering all issues related to the amended complaint now. Accordingly, the Court can and should consider the amended complaint as the operative pleading for purposes of the government's motion to dismiss.

## II. The Court Has Jurisdiction Over All of EDF's Claims

Defendants contend that this Court lacks jurisdiction on the ground that EDF lacks standing, that it brought its claims too early (and so they are unripe), and also that it brought its claims too late (and so they are moot). None of these arguments has merit.

### A. EDF Has Adequately Alleged Standing

To demonstrate standing, a plaintiff must show (1) "an injury in fact," (2) that is "fairly traceable" to the challenged action and (3) that is "likely . . . to be redressed" by the relief sought. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). "[A]t the pleading stage," a plaintiff is "required only to 'state a *plausible* claim' that each of the standing elements is present." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017). "[W]hen

considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) (quotation omitted). Standing is assessed based "on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569 n.4.

EDF satisfies the requirements for standing that courts have applied in a number of Federal Records Act cases. Under those cases, it is well-established that a plaintiff has standing to pursue FRA claims concerning the unlawful destruction of records they have sought through FOIA requests. For example, in *CREW v. SEC*, 858 F. Supp. 2d 51 (D.D.C. 2012), the plaintiff brought an FRA claim challenging the SEC's failure to undertake efforts to recover preliminary investigative materials. *Id.* at 54. The court rejected the government's argument that the plaintiff lacked standing, noting that the plaintiff had pending FOIA requests for the records that it sought to recover. *Id.* at 60.

Similarly, in *CREW v. Executive Office of the President*, 587 F. Supp. 2d 48 (D.D.C. 2008), the court held that the plaintiffs had standing to pursue FRA claims because "they have FOIA requests for e-mails currently pending with the [Executive Office of the President] and [Office of Administration]." *Id.* at 60–61. Because the plaintiffs "allege[d] that unless the deleted [records] are restored under [the] FRA enforcement scheme, they will not be able to obtain these federal records through their pending and future requests," the court held that the plaintiffs "ha[d] sufficiently alleged injury in fact." *Id.* at 61; *see also*, *e.g.*, *Jud. Watch, Inc. v. FBI*, No. 18-cv-2316, 2019 WL 4194501, at *7 (D.D.C. Sept. 4, 2019) (plaintiff had established standing because it had pointed to "concrete FOIA requests and pending litigation regarding the electronic messages that are implicated in the current [FRA] suit"); *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1, 6 (D.D.C. 1997) (plaintiffs who had filed FOIA requests "face[d] a real risk that records will not

be available to them" sufficient to support standing), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999).

The government does not acknowledge or address this line of cases. Instead, the government argues that "[t]o the extent Plaintiff alleges an injury based on the alleged removal from agency records systems of communications between the three Department officials and the CWG by virtue of the officials' use of personal email accounts," EDF "ha[s] not been harmed . . . because [EDF] already has obtained those records through discovery in the FACA litigation." MTD 13. But EDF's FOIA requests seek records broader than just the limited set of CWG records that DOE produced in connection with the FACA litigation. *See* Am. Compl. ¶¶ 49–53 (noting eleven requests seeking records of the correspondence of DOE Trump Administration officials, including emails and Signal messages). The fact that the CWG records themselves included over *1,300* emails sent or received from a DOE official's personal email strongly suggests—and certainly supports a plausible inference for purposes of a motion to dismiss—that DOE officials were using personal email to send other work-related emails as well. Defendants note that EDF made this allegation "on information and belief" (because EDF lacks direct knowledge of this fact), but such an allegation—which is firmly supported by the complaint's other allegations about widespread use of personal email—must still be accepted as true for purposes of a motion to dismiss. *United States ex rel. Jenkins v. Sanford Cap., LLC*, No. 17-cv-239, 2020 WL 5440551, at *5 (D.D.C. Sept. 10, 2020) (noting that it "is not correct" that an "allegation made upon information and belief is not entitled to the presumption of truth on a motion to dismiss" (quotation omitted)).

Defendants next contend that EDF cannot establish injury "by relying on the *pending* FOIA requests" because processing of such requests had not yet been completed. MTD 14

(emphasis added). But that is wrong as a matter of law—as noted above, multiple cases in this District have found standing in FRA cases based on pending FOIA requests. *Jud. Watch*, 2019 WL 4194501, at *7; *CREW v. SEC*, 858 F. Supp. 2d at 60; *CREW v. EOP*, 587 F. Supp. 2d at 60–61; *Pub. Citizen*, 2 F. Supp. 2d at 6.

The few cases that Defendants cite are not to the contrary. *Price v. DOJ*, 2019 WL 2526439 (D.D.C. June 19, 2019), did not address standing at all. The court denied a *pro se* plaintiff's motion for a preliminary injunction, holding that he had failed to establish a likelihood of success on his FRA claims because he was simply inferring from FOIA responses that DOJ was not adequately preserving records. *Id.* at *6–14. Here, by contrast, EDF has direct evidence (through the FACA litigation) that federal records related to the CWG were unlawfully removed and has more-than-plausibly alleged that DOE officials were using personal emails for other government work. And unlike in the preliminary-injunction posture of *Price*, the Court at this juncture must accept EDF's well-pleaded allegations as true for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 678.

*CREW v. Department of Education*, 538 F. Supp. 2d 24 (D.D.C. 2008), likewise has no bearing on EDF's standing here. In that case, the court found the plaintiff's injury "speculative" because the agency had denied the plaintiff's fee waiver request, and if the court affirmed that denial, there were a number of possibilities, and "not every path, or even the most likely one, [led] to the [agency] (mis)processing CREW's request." *Id.* at 28–30. The plaintiff, moreover, was challenging an agency-wide email policy, not a failure to initiate a recovery action with respect to a discrete set of documents. EDF has active FOIA requests pending that are undergoing processing and has had one request closed because DOE could not locate any

responsive documents.[1] Am. Compl. ¶ 50. It is thus far from "speculative" that EDF has suffered and will suffer injury from Defendants' FRA violations. *See CREW v. SEC*, 858 F. Supp. 2d at 60 (distinguishing *CREW v. Department of Education* on this basis).

Finally, *America First Legal Foundation v. Greer*, 153 F.4th 1311 (D.C. Cir. 2025), is not an FRA case and is inapposite. The plaintiff in that case sought to rely on a "speculative chain" of decisions by multiple federal agencies to argue that it had standing to seek to compel the Office of Special Counsel (OSC) to investigate DOJ employees for arbitrarily denying a FOIA request. *Id.* at 1315 (plaintiff had to assume that *if* OSC investigated, and *if* OSC decided to pursue corrective action, and *if* the Merit System Protection Board decided to sanction employees for arbitrary FOIA withholdings, *then* DOJ might have decided to produce the requested records). Here, by contrast, numerous courts in this district have concluded that plaintiffs with pending FOIA requests for records have standing to pursue FRA claims alleging unlawful removal or destruction of those records. *See, e.g.*, *CREW v. SEC*, 858 F. Supp. 2d at 60; *see also, e.g.*, *Kerry*, 844 F.3d at 955 (in the mootness context, holding that case was not moot because defendants had not shown that "following the statutory mandate to seek action by the Attorney General" might not "shake loose a few more" federal records).

**B. EDF's Claims Are Ripe**

EDF's claims are also ripe. "[R]ipeness is peculiarly a question of timing." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974); *see Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) ("The ripeness doctrine generally deals with when a federal court can

[1] Defendants assert that this request was closed due to the requester not responding to DOE's request to narrow the scope of the request, but EDF has no record of DOE closing the request on this basis. In any event, as explained above, EDF's pending FOIA requests are sufficient to establish standing.

or should decide a case."). Although the doctrine involves both constitutional and prudential considerations, Defendants here challenge only whether EDF's claims are "constitutionally ripe," which goes to whether EDF has Article III standing. MTD 15–16.

As explained below, constitutional ripeness considers the situation *now*, not when EDF filed its original complaint. Under that standard, EDF's claims are clearly ripe. But even if assessed with respect to the original complaint, EDF's claims are ripe.

### *1. EDF Pleaded Ripe Claims in Its Amended Complaint*

Defendants argue that EDF's claims were not ripe when it filed its original complaint in March 2026. They contend that, at that time, all that had transpired was that EDF had sent a letter to DOE and NARA regarding the FRA violations, and the agencies were investigating EDF's allegations. *See* MTD 17–20. Defendants argue that EDF's claims are thus unripe because EDF should have given the agencies a "reasonable period of time" to investigate the allegations before filing suit. *Id.* at 20.

But the Supreme Court has held that because ripeness involves a "question of timing," whether a claim is ripe turns on "the situation now," not the situation at some prior point in time. *Blanchette*, 419 U.S. at 140. Indeed, Defendants concede that, under the logic of D.C. Circuit precedent, the ripeness inquiry should not be restricted to events that had transpired at the time a plaintiff filed its original complaint. *See* MTD 13. In *Scahill v. District of Columbia*, 909 F.3d 1177 (D.C. Cir. 2018), the D.C. Circuit held that "a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint." *Id.* at 1184. Defendants acknowledge that "the logic of [*Scahill*] presumably would apply to a ripeness defect as well." MTD 13.

Recognizing that the ripeness inquiry should not be restricted to the original complaint, Defendants argue only that the Court should not consider the amended complaint's allegations based on their argument that the amended complaint is, in their view, a supplemental complaint filed without leave. *Id.* But for the reasons explained above, that argument is wrong or, at minimum, any technical defect can be resolved by granting leave now. Thus, the Court should analyze ripeness by reference to the "situation now," not the situation as it existed in March 2026. *Blanchette*, 419 U.S. at 140; *see also, e.g.*, *S. Educ. Found. v. U.S. Dep't of Educ.*, 784 F. Supp. 3d 50, 68 (D.D.C. 2025) (holding that filing of amended complaint "render[ed] defendants' ripeness argument moot" under *Scahill*).

Under that test, EDF's claims are clearly ripe. At this point in time, DOE and NARA have been on notice of the relevant FRA violations for several months. Indeed, NARA found EDF's allegations to be "credible" and directed DOE to investigate them. Bradley Decl. ¶¶ 13, 23. DOE has completed its investigation and submitted its response to NARA. *Id.* ¶¶ 18, 27. But neither DOE nor NARA has taken any steps to initiate an enforcement proceeding through the Attorney General as the FRA requires. Courts in this district have repeatedly exercised jurisdiction over FRA cases in precisely this posture. *See, e.g.*, *Kerry*, 844 F.3d at 954–56 (reversing a mootness dismissal and remanding for consideration of the merits); *Cause of Action Institute v. Tillerson*, 285 F. Supp. 3d 201, 206–09 (D.D.C. 2018) (holding that plaintiff had standing to pursue FRA claims notwithstanding that agencies had completed their investigations).

Defendants do not explain how the completion of DOE's investigation could somehow mean that it is now too *early* to consider EDF's claims. Instead, Defendants argue that DOE's investigation satisfied their obligations under the FRA and that they do not have any further

obligation to initiate enforcement proceedings through the Attorney General. *See* MTD 21–22. But while an agency's investigation into FRA allegations may go to the ultimate merits question or whether a claim is *moot*, *see, e.g.*, *Kerry*, 844 F.3d at 954–56, Defendants cite no case holding that such an investigation could somehow render an FRA plaintiff's claims *unripe*. If that were so, then an FRA plaintiff could *never* challenge an agency's conclusion not to initiate an FRA enforcement action through the Attorney General, as (in the government's view), such a challenge would be unripe not only before the agency's investigation concludes but also after it concludes, so long as the agency determines that no further enforcement action is warranted. That is not the law, as confirmed by the numerous cases adjudicating FRA claims after an agency investigation concludes. *See, e.g.*, *id.* at 954–56; *Cause of Action Institute*, 285 F. Supp. 3d at 206–09.

The same is true with respect to EDF's claim related to Cohen's use of Signal. As with the claim regarding the use of personal email, NARA found this claim to be credible and directed DOE to investigate it. Bradley Decl. ¶ 23. DOE's investigation is now complete. *Id.* ¶ 27. Whether that investigation was sufficient to satisfy DOE's obligations under the FRA may go to the merits or to mootness, but it does not render EDF's claims unripe.

*2. EDF Pleaded Ripe Claims in Its Original Complaint*

Although ripeness is measured by reference to the situation now, even if the Court were to measure it by reference to the time EDF's original complaint was filed, EDF's claims were ripe at that time. By the time EDF filed its original complaint, DOE was aware of the use of personal email by its employees since at least December 2025, when it was ordered to produce records to EDF in the FACA litigation. *See* Burns Decl. Ex. 3, Dkt. 19-1 at 67 (noting that "[t]he

use of non-DOE email accounts for DOE business was discovered" after EDF brought the FACA suit).

EDF had then sent a letter to the Secretary and the Archivist on February 9, 2026, attaching extensive evidence that DOE appointees had extensively used personal email for government work—evidence that NARA itself found to be "credible." Bradley Decl. ¶¶ 13, 23. Having received no response after five weeks, EDF filed suit on March 17, 2026. At that time, Defendants at minimum "kn[ew] or ha[d] *reason to believe*" that records had been unlawfully removed, which is what triggers the obligation to initiate an action through the Attorney General. 44 U.S.C. § 3106(a) (emphasis added).

Courts in this district have exercised jurisdiction in FRA cases in a similar posture. In *Kerry*, the plaintiff filed suit on May 28, 2015, four weeks after it sent a letter to Secretary Kerry notifying him of alleged unlawful removal of emails on April 30, 2015. Compl. ¶ 17, *Jud. Watch v. Kerry*, No. 15-cv-785 (D.D.C. May 28, 2015). And although *Kerry* recognized that "nothing . . . prevents the agency from first attempting its own remedial measures," 844 F.3d at 954, that does not mean that every suit filed during an agency inquiry is constitutionally unripe. In *American Oversight v. Department of Veterans Affairs*, 498 F. Supp. 3d 145 (D.D.C. 2020), for example, the court denied a motion to dismiss FRA claims on ripeness grounds even though recovery efforts were ongoing, holding that Defendants' ripeness challenge was "inextricably intertwined with the merits of the case" and thus could not be resolved on a motion to dismiss. *Id.* at 153–57; *see also, e.g.*, *American Oversight v. Hegseth*, 788 F. Supp. 3d 14, 19 (D.D.C. 2025) (granting preliminary injunction in part where plaintiff filed suit immediately after learning of improper Signal use, without affording the agency time to investigate).

Again, the government cites no case to the contrary. The government again principally relies (at 16–17) on the district court's unpublished decision in *Price*, but that case is distinguishable for all the reasons explained above: the court did not address standing (or ripeness), holding instead that the *pro se* plaintiff was not likely to succeed on the *merits* of his claim because he had proffered insufficient evidence of the Archivist's knowledge that records had been unlawfully removed. 2019 WL 2526439, at *13. Moreover, the court's discussion in *Price* focused on whether the agency head or Archivist "knew of an FRA violation," *id.* at *11–14, but there can be no serious dispute that the Secretary and Archivist "knew" of an FRA violation at the time EDF filed its original complaint. Indeed, by that time, DOE had known of the unlawfully removed records for months, EDF had sent its letter requesting action several weeks prior, and NARA and DOE had begun taking steps to investigate EDF's allegations. *See Price*, 2019 WL 2526439, at *14 (distinguishing *Judicial Watch v. Kerry* on ground that the agency in that case had taken "some steps toward correcting for the removal of the records," which "quite obviously functioned as an acknowledgement that those records *should* be in the agency's possession").

Defendants also cannot contend that EDF's letters did not put them on notice of FRA violations on the ground that Cohen, Fisher, and Loucks might have hypothetically forwarded all of their work-related emails sent on personal accounts to their official government accounts. *See* MTD 18. That inference would not be reasonable given the sheer volume of emails that were sent from their personal accounts, as confirmed by the fact that NARA itself found the allegations of unlawful removal to be credible. Nor can Defendants rely on the "presumption of regularity," which is an "evidentiary presumption," that is "applicable to evidence at summary judgment, not allegations on motions to dismiss." *CREW v. DHS*, No. 22-cv-3350, 2024 WL

4286031, at *2 (D.D.C. Sept. 25, 2024) (denying motion to dismiss FRA claim and rejecting government's argument that plaintiff's allegations "do not overcome the presumption that [government official] either copied an official account or forwarded the messages to an official account," as nothing "requir[es] a plaintiff to specifically plead that a public official did not properly discharge their official duties").

In all events, as explained above, the Court need not dwell on whether EDF's claims were ripe as of the filing of the original complaint, because *Blanchette* requires consideration of subsequent developments, 419 U.S. at 140, and *Scahill* permits supplementation to cure any alleged jurisdictional defect, 909 F.3d at 1184. And wherever one might draw the line on when an FRA claim becomes ripe, EDF's claims are clearly ripe now—months after the agencies were put on notice of the violations at issue.

**C. EDF's Claims Are Not Moot**

After first contending that it is too early to adjudicate EDF's claims, the government next contends that it is too late on the ground that EDF's claims are moot. MTD 23–24. Defendants' mootness argument is foreclosed by binding D.C. Circuit precedent.

"[T]he bar for establishing mootness in an FRA case is a high one." *Am. Oversight*, 498 F. Supp. 3d at 154; *see also Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998) (party seeking to establish mootness faces "heavy" burden). The Court "assume[s] that the plaintiff[] would be successful on the merits." *Kerry*, 844 F.3d at 955. And in an FRA case, "[e]ven where the agency's efforts have borne 'some fruit,' an agency seeking dismissal of an APA/FRA action must 'explain[] why shaking the tree harder—*e.g.*, by following the statutory mandate to seek action by the Attorney General—might not bear more still.'" *Am. Oversight*, 498 F. Supp. 3d at 154 (quoting *Kerry*, 844 F.3d at 955).

The D.C. Circuit's decision in *Kerry* is directly on point. There, the plaintiff sued the Secretary of State and NARA for failing to ask the Attorney General to initiate enforcement proceedings related to former Secretary Clinton's use of private email accounts. 844 F.3d at 953. The State Department had asked Secretary Clinton to provide her work-related emails voluntarily and, in response to those letters, the Secretary produced "roughly 55,000 pages of emails" from her private account. *Id.* at 954. The district court granted the government's motion to dismiss the case as moot, but the D.C. Circuit reversed, holding that the government had not shown that the enforcement action required under the FRA could not result in the recovery of additional federal records. *Id.* at 955. The D.C. Circuit expressly rejected the district court's reasoning that judicial review became unavailable once the agency "took some action to recover the missing record[s]"—even if the agency engaged in a "sustained effort" to do so. *Id.* at 956. Rather, the court emphasized that the FRA "leave[s] *no* discretion [for the agency]" to decline to initiate an enforcement action through the Attorney General once it becomes aware of records having been unlawfully removed. *Id.* Thus, unless the agency can show "that the requested enforcement action could not shake loose a few more emails, the case is not moot.'" *Id.* at 955.

Under the standard set by the D.C. Circuit in *Kerry*, Defendants have not come close to meeting their heavy burden here.[2] As to the issue of unlawful Signal usage, DOE's efforts consisted solely of checking whether Cohen had installed Signal on his *government* device. Bradley Decl. ¶ 27. But DOE does not suggest that it made any efforts to check whether Cohen had installed Signal on his *personal* device, or even that it ever asked Cohen whether he used Signal to send work-related communications. *See id.* Such rudimentary efforts would obviously

[2] Defendants are wrong to suggest that, to defeat mootness, EDF has the burden to "establish a substantial likelihood that federal records would be recovered." MTD 24. Defendants bear the burden of demonstrating that the case is moot. *Motor & Equip. Mfrs. Ass'n*, 142 F.3d at 459.

be part of any enforcement action by the Attorney General on this issue, and so, under *Kerry,* Defendants cannot meet their burden to show that such an action could not result in the recovery of federal records. 844 F.3d at 955.

Nor have Defendants met their burden to show that EDF's claims concerning personal email usage are moot. Defendants' representations in this regard consist of a single paragraph in the Burns declaration, stating that "DOE's Office of the General Counsel engaged with the three DOE employees involved to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE.gov accounts" and that the DOE Office of General Counsel "has confirmed with all three individuals that these actions have been completed." Burns Decl. ¶ 26. These efforts are lacking in a number of respects.

First, DOE does not explain whether its efforts in fact resulted in the recovery of additional emails beyond those that EDF obtained through the FACA litigation. If they did not, that would raise a significant question as to whether the three officials conducted an adequate search for work-related emails. And if they did, the volume and nature of such emails recovered would shed important light on whether further efforts might bear more fruit—information that Defendants have not provided to EDF or the Court. *See Kerry*, 844 F.3d at 955.

DOE has also provided only limited and highly sanitized information regarding its investigation into the use of personal email. Although the Burns declaration references "additional documentation" that DOE provided to NARA on June 30, 2026 regarding this issue, Burns Decl. ¶ 26, DOE has not produced that documentation or explained what it says. Nor has DOE produced the "DOE Office of Inspector General" report of its investigation that DOE says it attached to its June 18, 2026 letter to NARA. *See* Burns Decl. Ex. 3, Dkt. 19-1 at 68. Nor has DOE provided a declaration from a DOE official or the three employees themselves explaining

in any detail what steps the employees took to search for work-related emails. All of these issues would be appropriate areas for discovery into the issue whether the "requested enforcement action could not shake loose a few more emails." *Kerry*, 844 F.3d at 955.

Defendants cite only one case in support of their mootness argument—*Cause of Action Institute v. Pompeo*, 319 F. Supp. 3d 230 (D.D.C. 2018)—but the procedural history of that case actually demonstrates why EDF's claims are not moot here. In *Cause of Action Institute*, the government initially moved to dismiss, contending that the plaintiff lacked standing because former Secretary Powell had insisted that his personal email account had been closed, he did not retain copies of any emails sent on that account, and there were no official emails left on the system. 285 F. Supp. 3d 201, 205–06 (D.D.C. 2018). The government thus argued (as it argues here) that the court lacked jurisdiction because the agency had "engaged in remedial measures to recover any such records that might still exist." *Id.*

But Judge McFadden rejected that argument in light of the D.C. Circuit's holding in *Kerry*. *Id.* at 206–07. To establish mootness, the court held, the government could not simply "ask Secretary Powell to seek the emails himself, and then declare 'mission accomplished' when Secretary Powell's representative informed them that AOL [which provided the personal account] believed the emails no longer exist." *Id.* at 208. The court noted that, in contrast to an agency request to voluntarily return personal emails, "[t]he Attorney General wields significant power, and has demonstrated that power in this context with grand-jury subpoenas, interviews with those who frequently exchanged relevant emails, the voluntary collection of personal electronic devices . . . , and even a search warrant for a personal computer." *Id.* at 208–09 (quotation omitted). Thus, the court held that there was a "substantial likelihood that Plaintiff's requested relief would yield access to at least some of the emails at issue." *Id.* at 209.

The government relies on a later decision in *Cause of Action Institute* where the court did find the action to be moot. *See* 319 F. Supp. 3d at 232. But by that point in the case, Secretary Powell himself had provided a declaration under penalty of perjury that he did not have possession of or access to any federal records that would not have been preserved in the State Department's record-keeping system. *Id.* at 233. The government also contacted AOL's successor company asking for written confirmation that the Secretary's emails could not be recovered, and the company provided such confirmation. *Id.* at 233. Based on these new developments, the court held that the government had met its "high bar" to establish mootness, as the government had demonstrated that the records at issue had been "fatally lost." *Id.* at 235–36.

Here, by contrast, Defendants have only taken the initial steps of asking the DOE appointees to voluntarily return personal emails—steps that *Kerry* and *Cause of Action Institute* both found to be insufficient. 844 F.3d at 953–56; 285 F. Supp. 3d at 206–08. Defendants thus have not met their heavy burden to establish that EDF's claims are moot.

## III. EDF Has Stated a Claim to Relief

Defendants' arguments as to why EDF has failed to state a claim rehash their justiciability arguments. For the reasons already explained, those arguments fail.

*First*, the amended complaint alleges facts that, accepted as true, state a plausible claim that Defendants are required to take a discrete agency action that they have refused to take—namely, to initiate an enforcement action through the Attorney General. The D.C. Circuit has held that a plaintiff may enforce the FRA through Section 706(1) of the APA because the FRA "leave[s] [the agency head and Archivist] *no* discretion to determine which cases to pursue." *Kerry*, 844 F.3d at 954 (quoting *Armstrong*, 924 F.2d at 295); *see also ACLU Found. of Fla.*,

2023 WL 6461053, at *2. Rather, "the FRA *requires* the agency head and Archivist to take enforcement action." *Armstrong*, 924 F.2d at 295. "Once the Archivist becomes aware of '*any* actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records,' the Archivist '*shall* notify the head of the Federal Agency'" involved and "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law." *Id.* at 296 (quoting 44 U.S.C. § 2905(a)). "Similarly, once the agency head becomes aware of '*any* actual, impending, or threatened unlawful, removal, defacing, alteration, or destruction of records,' the agency head '*shall* notify the Archivist and 'with the assistance of the Archivist *shall* initiate action through the Attorney General." *Id.* (quoting 44 U.S.C. § 3106).

Here, as explained, EDF's letters put Defendants on notice of the actual removal of federal records. EDF's February 2026 letter explained that the records produced in the FACA litigation revealed extensive use of personal email accounts by DOE officials, and EDF attached to that letter the emails themselves that showed those officials' personal email use. *See* Burns Decl. Ex. 1. EDF's June 2026 letter likewise put NARA on notice of Cohen's unauthorized use of Signal. Burns Decl. Ex. 4, Dkt. 19-1 at 73–74. NARA found EDF's allegations in both letters to be credible and directed DOE to investigate the allegations. *See* Bradley Decl. ¶¶ 13, 23. EDF has thus stated a claim that Defendants have a nondiscretionary duty to initiate an enforcement action through the Attorney General. *See CREW v. SEC*, 858 F. Supp. 2d at 64 (denying motion to dismiss FRA § 706(1) claim because plaintiff had "raise[d] sufficient questions regarding the SEC's failure to undertake actions for the recovery of records"); *Am. First Legal Found. v. Becerra*, No. 24-cv-1092, 2024 WL 3741402, at *4, *10 (D.D.C. Aug. 9, 2024) (granting motion

for preliminary injunction on FRA § 706(1) claim because plaintiff had adequately demonstrated that defendants knew about FRA violations and yet failed to initiate enforcement action).

*Second*, EDF has stated a claim that, by refusing to initiate an enforcement action as required, Defendants have "unlawfully withheld or unreasonably delayed" agency action. 5 U.S.C. § 706(1). Defendants have now known of the unlawful removal of records since at least February 2026, but have not taken the actions they are required to take under the FRA. Defendants suggest that the delay is measured up to the date of the complaint, but the majority view in this District is that the delay is measured "as of the time of the court's ruling," not the date of the filing of the complaint. *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 31 n.10 (D.D.C. 2024); *see also Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021) ("The Court has not located a definitive statement in the case law, but cases seem to focus on the delay up to the issuance of the opinion."); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91, 95 (D.D.C. 2020) (measuring delay to opinion issuance as opposed to date of complaint filing). Defendants nowhere suggest that they are still considering taking enforcement action but have simply had insufficient time to make a decision. To the contrary, DOE has concluded its investigation, and neither DOE nor NARA has taken any steps to proceed with an enforcement action. Bradley Decl. ¶¶ 18, 27.

Even if measured from the filing of the complaint, EDF's letters were sufficiently detailed as to put Defendants on notice of the FRA violations and require them to initiate an enforcement action through the Attorney General—an action that Defendants unlawfully withheld and unreasonably delayed. Moreover, courts have held that they "generally" cannot resolve § 706(1) claims at the motion-to-dismiss stage, given that such claims "typically require[] the court to wade through the particular facts and circumstances of an agency's delay."

*Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 18 (D.D.C. 2022). Indeed, Defendants cite no case dismissing an FRA claim for failure to plausibly allege that the amount of delay was unreasonable. Accordingly, Defendants' motion to dismiss on Rule 12(b)(6) grounds should be denied.[3]

**CONCLUSION**

The Court should deny Defendants' motion to dismiss.

Dated: October 1, 2026

/s/ Lynn D. Eisenberg
Daniel F. Jacobson (D.C. Bar 1016621)
Lynn D. Eisenberg (D.C. Bar 1017511)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
lynn@jacobsonlawyersgroup.com

/s/ Erin Murphy
Erin Murphy (Bar ID D00532)*
ENVIRONMENTAL DEFENSE FUND
555 12th St. NW, Suite 400
Washington, D.C. 20004
(202) 572-3525
emurphy@edf.org
**Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)*

*Counsel for Environmental Defense Fund*

[3] Defendants also argue that their decisions not to refer these matters to the Attorney General are not "final agency action" for purposes of review under Section 706(2)(A) of the APA. But because the Court can review Plaintiff's claims under Section 706(1), it need not address the issue whether Defendants' decisions also constituted final agency action. *See Am. First Legal Found.*, 2024 WL 3741402, at *10 n.7.