UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRIGHT,<br>Secretary of Energy, et al.,<br><br>Defendants. | Civil Action No. 26-0928 (CJN) |

**DEFENDANTS' COMBINED REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS, OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND/OR SUPPLEMENT THEIR COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents ........ i

Table of Authorities ........ ii

Argument ........ 1

I. Plaintiff's Amended Complaint is Not Properly Before the Court ........ 1

II. Plaintiff's Claims Should Be Dismissed for Lack of Jurisdiction ........ 4

A. Plaintiff Has Failed to Plausibly Plead Standing ........ 4

B. Plaintiff's Failure to Act Claims Are Not Ripe for Judicial Review ........ 7

C. Plaintiff Has Failed to Show This Case is Not Moot ........ 11

III. Plaintiff Has Failed to State a Claim for Relief on the Merits ........ 14

IV. Plaintiff's Supplemental Complaint Would Be Futile. ........ 16

Conclusion ........ 19

## TABLE OF AUTHORITIES

**Cases:**

*Am. First Legal Found. v. Becerra, Civ. A.*
No. 24-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024) .......... 14, 15

*American First Legal Foundation v. Greer*,
153 F. 4th 1311 (D.C. Cir. 2025) .......... 5

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) .......... 18

*BEG Invs., LLC v. Alberti*,
85 F. Supp. 3d 13 (D.D.C. 2015) .......... 16-17

*Blanchette v. Connecticut Gen. Ins. Corps.*,
419 U.S. 102 (1974) .......... 7, 8

*Cause of Action Institute v. Tillerson*,
285 F. Supp. 3d 201 (D.D.C. 2018) .......... 11

*CREW v. Department of Education*,
538 F. Supp. 2d 24 (D.D.C. 2008) .......... 7

*CREW v. Executive Office of the President*,
587 F. Supp. 2d 48 (D.D.C. 2008) .......... 6

*CREW v. SEC*,
858 F. Supp. 2d 51 (D.D.C. 2012) .......... 6

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) .......... 18

*Hawkins v. Washington Metro. Area Transit Auth.*,
311 F. Supp. 3d 94 (D.D.C. 2018) .......... 16

*In re Ctr. for Biological Diversity*,
53 F.4th 665 (D.C. Cir. 2022) .......... 14

*Jud. Watch, Inc. v. Pompeo*,
744 F. App'x 3 (D.C. Cir. 2018) .......... 12

*Judicial Watch, Inc. v. FBI,*
*Civ. A. No. 18-cv-2316*, 2019 WL 4194501 (D.D.C. Sept. 4, 2019) .......... 6, 7

*Judicial Watch, Inc. v. Kerry*,
844 F.3d 952 (D.C. Cir. 2016) .......... 10, 11

*Lans v. Gateway*
2000, 84 F. Supp. 2d 112 (D.D.C. 1999) .......... 17-18

*Lujan v. Defenders of Wildlife*,

504 U.S. 555 (1992) ........ 5

*Moharam v. Transportation Sec. Admin.*,
134 F.4th 598 (D.C. Cir. 2025) ........ 11

*Organic Trade Ass'n v. United States Dep't of Agric.*,
834 F. Supp. 3d 1 (D.D.C. 2026) ........ 18

*Phoenix Consulting Inc. v. Republic of Angola*,
216 F.3d 36 (D.C. Cir. 2000) ........ 4

*Price v. DOJ,*
*Civ. A. No. 18-CV-1339* (CRC), 2019 WL 2526439 (D.D.C. June 19, 2019) ........ 7, 9

*Scahill v. District of Columbia*,
909 F. 3d 1177 (D.C. Cir. 2018) ........ 18

*Schmidt v. United States*,
749 F.3d 1064 (D.C. Cir. 2014) ........ 4

*Thorp v. D.C.*,
325 F.R.D. 510 (D.D.C. 2018) ........ 3

*University of Colorado Health v. Azar*,
486 F. Supp. 3d 185 (D.D.C. 2020) ........ 2, 3

*Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*,
270 F. Supp. 3d 158 (D.D.C. 2017) ........ 17

*Wright v. Dougherty Cty., Ga.*,
358 F.3d 1352 (11th Cir. 2004) ........ 17

*Yaghoubnezhad v. Stufft*,
734 F. Supp. 3d 87 (D.D.C. 2024) ........ 15

**Statutes, Regulations, and Procedures**

5 U.S.C. § 706 ........ 14, 16

44 U.S.C. § 2911 ........ 8, 9, 17

44 U.S.C. § 3106 ........ 1-2, 9

Fed. R. Civ. P. 12 ........ 16

Fed. R. Civ. P. 15 ........ 8, 1, 2, 3, 4, 8, 18

The Department of Energy (the "Department" or "DOE"), its Secretary, the National Archives and Records Administration ("NARA") and its Archivist (collectively, "Defendants"), respectfully submit this combined reply memorandum in support of their motion to dismiss (ECF No. 19) ("Defs.' Mot.") and opposition to Plaintiff Environmental Defense Fund's Motion to Amend and/or Supplement their Complaint Nunc Pro Tunc (ECF No. 21) ("Pl.'s Suppl. Mot.). For the reasons explained in Defendants' motion and herein, the Court should dismiss this case and deny Plaintiff's after-the-fact motion for leave to file the mis-named "Amended Complaint" that improperly was filed without leave in violation of Federal Rule of Civil Procedure ("Rule") 15(d).

## ARGUMENT

### I. Plaintiff's Amended Complaint is Not Properly Before the Court

Plaintiff's "Amended Complaint" is, as established in Defendants' motion, a supplemental pleading that required leave of Court before filing under Rule 15(d). In its opposition, Plaintiff does not meaningfully contest that Rule 15(d) applied to that pleading. Plaintiff asserts the "main addition to the amended complaint was an allegation that [Seth] Cohen used Signal while he was a DOE employee—an allegation that necessarily rested 'on matters in place prior to the filing of the original pleading'[1] and thus would need to be included in an amended complaint rather than a supplemental complaint." Pl.'s Opp'n at 11. But that is misplaced. The relevant question here is not when the agency official allegedly used Signal, but when DOE and NARA had notice of the alleged removal of federal records due to Signal use. *See* 44 U.S.C. § 3106 (describing procedures

[1] Plaintiff brings an Administrative Procedure Act ("APA") action, which focuses on the actions of the agency, not an employee. Hence, that fact that Cohen was an employee prior to the litigation bears no relationship to claims asserted based on Plaintiff's February 9, 2026 notice to Defendants.

"for the recovery of records the head of the Federal agency *knows or has reason to believe* have been unlawfully removed") (citation modified).

The Amended Complaint alleged that the Secretary "knows or reasonably should know that the DOE officials in question, have been communicating about official work from . . . Signal" and that the Archivist "knows or reasonably should know that Defendant Wright failed to take appropriate action to preserve the communications involving or relating to . . . work-related Signal messages." ECF No. 17 ¶¶ 63, 74. But Plaintiff did not notify NARA of alleged Signal use by any DOE official until June 4, 2026, when Plaintiff sent a letter containing generalized allegations of Signal usage by a DOE official. Plaintiff did not separately notify DOE of any alleged Signal usage or associated removal or loss of federal records. If the February 2026 letter on the topic of private email usage began an administrative process, leading Plaintiff to file this action five weeks later for alleged delay under the APA, then it is only logical that a new letter, covering a different topic—alleged use of Signal—sent four months later would form the basis for a newly arising claim. Thus, Plaintiff seeks to assert a new claim under the Federal Records Act based on DOE and NARA's alleged failure to address the allegations about Signal in Plaintiff's June 4, 2026 letter. This constitutes a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented" under Rule 15(d). Plaintiff thus required leave of Court to assert a claim of unreasonable delay based on that letter.

Plaintiff cites to *University of Colorado Health v. Azar*, in support of its position that the Court should not "treat the amended complaint as a supplemental complaint" because the "government 'has not pointed to any undue prejudice that has resulted from [any] mislabeling.'" Pl.'s Opp'n at 11-12 (quoting 486 F. Supp. 3d 185 (D.D.C. 2020)). Plaintiff's argument is misplaced.

First, Plaintiff is unlike the plaintiffs in *University of Colorado Health* and those differences require a different outcome. In that case, the plaintiffs sought to add claims that were "approved for expedited judicial review *after* the filing of the original complaints" and the defendant "waited many months—until after the end of the 60-day period for filing claims in district court—before asserting th[e] argument for the first time." *Univ. of Colorado Health*, 486 F. Supp. 3d 208-210. It was that "'gotcha' quality" that led the court in that case to waive the leave requirement. *See id.* Here, it was Plaintiff who waited many months after filing this lawsuit based on a February 9, 2026 letter regarding alleged private email use before it attempted to raise an entirely new claim via a June 4, 2026 letter to NARA that alleges, for the first time, that Seth Cohen used Signal and that work-related Signal messages may have been lost or deleted. *See* Am. Comp. (ECF No. 17) ¶ 59-60. Moreover, Defendants noted the need for leave of Court when Plaintiff first raised the issue of amending the Complaint. *See* Def.'s MTE (ECF No. 16) at 2 n.1; *see also* Def.'s MTE (ECF No. 18) at 2 n.1.

Second, there also is no "prejudice" exception to the requirement to obtain leave of Court under Rule 15(d). Regardless, Defendants are prejudiced by the belated attempt to add a new claim to this months-old litigation without first seeking leave of Court. *See Thorp v. D.C.*, 325 F.R.D. 510, 513 (D.D.C. 2018) (denying a plaintiff's motion to supplement a complaint when the more recent "allegations relate[d] to events fully distinct from those underlying factual allegations."). Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading." Plaintiff's belated request for leave *after* Defendants' motion to dismiss has been filed—despite being on notice of its procedural non-compliance prior to that filing (ECF No. 18 at 2 n.1)—denied Defendants the opportunity to address the appropriate "terms" by which any leave of Court might be granted.

Accordingly, there is no basis to excuse the Plaintiff here from compliance with the requirements of Rule 15(d). The Amended Complaint, filed without leave, should be deemed not properly before the Court.

**II. <u>Plaintiff's Claims Should Be Dismissed for Lack of Jurisdiction</u>**

Nevertheless, without waiver of its threshold position that the Amended Complaint is "without legal effect," *Schmidt v. United States,* 749 F.3d 1064, 1069 (D.C. Cir. 2014), and that only the original Complaint is properly before the Court, Defendants respond to Plaintiff's arguments based on both pleadings.

**A. Plaintiff Has Failed to Plausibly Plead Standing**

Plaintiff has not established that it has suffered, or will imminently suffer, a concrete injury-in-fact related to the alleged removal of records. It is undisputed that all but one of Plaintiff's FOIA requests are still "undergoing processing[.]" Pl.'s Opp'n at 16. Plaintiff alleges, without supporting evidence, that it "had one [FOIA] request closed because DOE could not locate any responsive documents." Pl.'s Opp'n at 16-17. Defendants contested that jurisdictional fact, stating that DOE has no record of providing such a response and that DOE's FOIAXpress software shows the request was closed due to EDF's failure to respond to a request to narrow its scope. Burns Decl. (ECF No. 19-1) ¶ 22. A district court need not accept as true the jurisdictional facts alleged by the plaintiff and should not do so here, where Defendants have presented contrary evidence. *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 38 (D.C. Cir. 2000). On this record, Plaintiff has failed to establish any injury has occurred, and its theory that it will be injured by not receiving responsive records in the future remains speculative.

In its opposition, Plaintiff primarily avers that it "has standing to pursue [Federal Records Act ("FRA")] claims concerning the unlawful destruction of records they have sought through FOIA requests." Pl.'s Opp'n at 14. Plaintiff cites to several cases to support its contention that it

has suffered a concrete injury, but those cases contain key differences that made those alleged injuries non-speculative and sufficiently concrete—agency admission that documents were destroyed or an agency wide policy that could lead to documents being destroyed. Here, in contrast, Plaintiff has not provided any non-speculative basis to raise a plausible inference that it had suffered any concrete injury at the time the lawsuit was filed.

This case is governed by the D.C. Circuit decision in *American First Legal Foundation v. Greer*, 153 F. 4th 1311 (D.C. Cir. 2025). There, the plaintiff filed a lawsuit to compel the Office of Special Counsel to investigate plaintiff's allegations that an agency's withholding of information under FOIA was arbitrary and capricious. *Id*. at 1313. The Court characterized plaintiff's standing theory as asserting "that OSCs failure to investigate [the agency] . . . has prevented [plaintiff] from receiving the records it requested under FOIA," and rejected that theory as unduly speculative. *Id.* at 1315. Plaintiff's attempt to distinguish that case (Opp'n at 17) is unpersuasive. Here, as in that case, Plaintiff's theory of harm is not concrete, but entirely speculative. It requires, among other things, the Court to assume that the agency's responses to FOIA requests still being processed at the time this lawsuit was filed will not encompass the private emails of the three individuals falling within the scope of those requests. Plaintiff asks the Court to accept that speculation as meeting its burden despite evidence that the individuals have forwarded any private emails concerning official business to DOE servers and the absence of any contrary allegation or evidence presented by Plaintiff in its opposition. Importantly, under the standing analysis, Plaintiff bears the burden of pleading facts that raise a plausible inference that it has suffered a non-speculative injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). It is not Defendants' burden to establish the absence of such an injury. Plaintiff has failed to meet its burden and the cases it cites do not establish otherwise.

First, Plaintiff cites *CREW v. SEC*, 858 F. Supp. 2d 51 (D.D.C. 2012). *See* Pl.'s Opp'n at 14. However, in that case, the Court determined that the plaintiff's injury was sufficient because the agency admitted that "at least some documents [at issue] were destroyed and are thus no longer available." *Id*. at 59. But in this case, there's been no admission, or even an allegation, that the documents Plaintiff seeks have been destroyed.

Next, Plaintiff cites *CREW v. Executive Office of the President*, 587 F. Supp. 2d 48 (D.D.C. 2008). *See* Pl.'s Opp'n at 14. But in that case, Plaintiff's injury was based on the fact it had pending FOIA requests and the agency at issue had already "determined that hundreds of days of White House e-mails created between March 2003 and October 2005 were missing, amounting to at least five million e-mails that had been deleted from the servers and were recoverable only on back-up tapes." *Id.* at 54 (citation modified). Here, in contrast, NARA has already reported that, as part of its review, it was informed by DOE that its "Office of General Counsel worked with the three involved employees to ensure that they forward all DOE Climate Working Group-related and work-related emails from their personal accounts into official DOE.gov accounts and has confirmed with all three individuals that these actions have been completed." *See* NARA Status Report (ECF No. 14) at 1. Because Plaintiff's FOIA requests were still being processed at the time this action was filed, and with the materials at issue being now in possession of DOE, Plaintiff has failed to meet its burden of establishing a concrete injury. For purposes of standing—whether this Court had jurisdiction at the time this lawsuit was filed—the burden is on the Plaintiff to establish a concrete injury, that is, an injury that is not speculative.

Plaintiff also cites *Judicial Watch, Inc. v. FBI*, No. 18-cv-2316, 2019 WL 4194501, at *7 (D.D.C. Sept. 4, 2019), but Plaintiff's reliance on that case fares no better. In that case, which was dismissed twice, the Court found that the plaintiff had standing because it had pending FOIA

requests and alleged the agency's recordkeeping policy was inadequate. *Id.* at *8. Once again, the facts of this case are different, as Plaintiff's claims are not based on an inadequate DOE policy. Instead, Plaintiff makes clear this claim is about an alleged "failure to initiate a recovery action with respect" to a set of documents. Pl.'s Opp'n at 16. However, without waiting until the agency's response to Plaintiff's FOIA requests is complete, Plaintiff has "put the cart before the horse." *Price v. DOJ,* Civ. A. No. 18-CV-1339 (CRC), 2019 WL 2526439, at *9 (D.D.C. June 19, 2019). Plaintiff cannot establish that a concrete injury has occurred as related to missing documents, when the document production is ongoing and Plaintiff cannot, without speculation, allege that the documents it seeks have not been properly forwarded and are not in line for production. *See id.* at 9 (until the agency's searches and productions are "explored through ordinary FOIA litigation, it is hard to know whether the [defendant's] responses to [the plaintiff's] requests to date reveal much of anything about the agency's compliance with (or violation of) the FRA."). And, the specific allegation in the Amended Complaint regarding Plaintiff's alleged harm does not even attempt to connect the alleged Signal usage to responses received under FOIA. Am. Compl. ¶ 51.

Like the Court in *CREW v. Department of Education*, the Court should not "affirm the existence of standing based on an injury that hasn't happened and that the defendant's challenged conduct hasn't caused." 538 F. Supp. 2d 24, 31 (D.D.C. 2008). Accordingly, for the above reasons, standing has not been plausibly pled here for the claim based on the February 9, 2026 letter regarding alleged private email usage or the separate claim based on the June 4, 2026 letter regarding alleged Signal usage.

**B. Plaintiff's Failure to Act Claims Are Not Ripe for Judicial Review**

In its opposition, Plaintiff argues that "the Court should analyze ripeness by reference to the 'situation now,' not the situation as it existed in March 2026." Pl.'s Opp'n at 19 (citing it *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974)). Plaintiff further declares:

> Under that test, EDF's claims are clearly ripe. At this point in time, DOE and NARA have been on notice of the relevant FRA violations for several months. Indeed, NARA found EDF's allegations to be "credible" and directed DOE to investigate them. Bradley Decl. [(ECF No. 19-2)] ¶¶ 13, 23. DOE has completed its investigation and submitted its response to NARA. *Id*. ¶¶ 18, 27. But neither DOE nor NARA has taken any steps to initiate an enforcement proceeding through the Attorney General as the FRA requires.

*Id*. But Plaintiff's premise is incorrect. At the outset, ripeness should be assessed based on Plaintiff's original complaint, as the mis-named "Amended" Complaint was filed without leave as required by Rule 15(d) and thus is not properly before the Court..

Further, Plaintiff's statement provides the exact reason this action is premature, because it notes the investigation and that an enforcement proceeding through the Attorney General has not been initiated, but fails to acknowledge that the referral obligation does not attach until remedial measures undertaken "within a reasonable period of time" are "unsuccessful." Defs' Mot. (ECF No. 19) at ECF p. 22. As established in Defendants' motion, Plaintiff's claim was not ripe at the time this action was filed on March 17, 2026, because the February 9, 2026 letters did not establish an actual violation of the Federal Records Act but consisted of examples of what Plaintiff thought were FRA-compliance issues. *Id*. at 23-25.[2] Under 44 U.S.C. § 2911, federal government employees may "create or send a record using a non-official electronic messaging account" provided the employee "forwards a complete copy of the record to an official electronic messaging

---

[2] Defendants note that the February 9, 2026 letter highlighted an email sent by a "CWG member" that encouraged other working group members to be "mindful that our email communications that go to DOE addresses are subject to FOIA." Letter (ECF No. 19-1) at ECF p. 11. That email also was highlighted in the Complaint. Compl. (ECF No. 1) ¶ 45; *id*. (ECF No. 1-10). But the individual who sent that email was not one of the three DOE officials at issue but a member of the public participating on the working group in that capacity. ECF No. 1-10. Accordingly, that email chain has no bearing on whether the three DOE officials at issue complied with their obligations under the Federal Records Act. Plaintiff appears to acknowledge this by its failure to highlight that email in its opposition brief. *See* Opp'n (ECF No. 20) at ECF p. 13.

account of the officer or employee not later than 20 days after the original creation or transmission of the record." *Id*. § 2911(a) (citation modified). Hence, the issue is not whether the DOE or NARA had knowledge from the February 9, 2026 letters that the three DOE officials were using personal email accounts, but whether there was knowledge based on those letters that emails from personal accounts were not forwarded to official accounts such that the messages were unlawfully removed.

Although Plaintiff cites NARA's credibility finding as related to its February 9, 2026 letter, *see* Pl.'s Opp'n at 19-22; "an initial credibility determination is not a determination that an unauthorized disposition has occurred," Bradley Decl. (ECF No. 19-2) ¶ 7. It is merely a threshold determination that the allegations warrant the responding agency to conduct an investigation and report back to NARA on its findings. Moreover, before the March 17, 2026 filing of this lawsuit, DOE and NARA Office of General Counsel already had undertaken efforts to address the allegations in that letter. *Id*. ¶¶ 11-20; Burns Decl. (ECF No. 19-1) ¶ 24.

Focusing on the status at the time the Amended Complaint was filed—to the extent the Court considers that supplemental pleading filed without leave to be properly before the Court—does not cure these defects. As to the allegation of mishandling of private emails, DOE by that time already had demonstrated that it had undertaken successful remedial efforts. Burns Decl. (ECF No. 19-1) ¶ 26; *see also* Bradley Decl. (ECF No. 19-2) ¶ 21. And Plaintiff's allegations in the Amended Complaint regarding Signal usage were based on conclusory allegations in the June 4, 2026 letter, that offered no evidence of such usage. June 4 Letter (ECF No. 19-1) at ECF p. 73. As established in Defendants' motion, the mandatory duties set forth in 44 U.S.C. § 3106 arise only after the agency head or Archivist has identified an "unlawful actual, impending, or threatened removal of records," *see Price*, 2019 WL 2526439, at *11, and the June 4, 2026 letter to NARA afforded no such knowledge. As previously noted, Plaintiff's claim against DOE regarding alleged

Signal use also is unripe because Plaintiff never asserted to DOE, prior to filing its Amended Complaint, that federal records had been removed or lost by virtue of alleged Signal use. And, although NARA forwarded Plaintiff's June 4, 2026 letter to DOE, the inquiry that DOE thereafter conducted into Signal usage identified no violation. Burns Decl. (ECF No. 19-1) ¶¶ 27-28. Ultimately, the Amended Complaint fails to plausibly raise any inference of actual knowledge on the part of DOE or NARA of the removal or loss of federal records due to Signal usage by any DOE employee.

Plaintiff contends that if its claims are found to be unripe, a "FRA plaintiff could never challenge an agency's conclusion not to initiate an FRA enforcement action through the Attorney General . . . before the agency's investigation concludes [and] also after it concludes, so long as the agency determines that no further enforcement action is warranted." Pl.'s Opp'n at 20. That is a misstatement of Defendants' position. If a plaintiff presents information to an agency or NARA sufficient to confer actual knowledge of a FRA violation, and also can establish standing to bring a claim for violation of the FRA, a plaintiff can then seek judicial review of whether the remedial measures undertaken were sufficient to obviate the need for a referral to the Attorney General. That is the scenario, for instance, that the Court addressed in *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016), which involved former Secretary Clinton's maintenance of work-related emails on two nongovernmental accounts for several years while Secretary of State.

What a plaintiff cannot do is what Plaintiff has attempted here—to rush to Court without any concrete injury for the Court to redress, without identifying an actual FRA violation as opposed to a potential one, and without affording the agency and NARA a "reasonable period of time" to investigate Plaintiff's allegations of alleged non-compliance. Under that scenario, the Court has

no jurisdiction to entertain Plaintiff's claims and thus no jurisdiction to evaluate whether any remedial steps that were undertaken were sufficient under *Kerry*.

For the same reasons, Plaintiff's reliance on *Cause of Action Institute v. Tillerson*, 285 F. Supp. 3d 201, 202 (D.D.C. 2018), is misplaced under a ripeness inquiry. *See* Pl.'s Opp'n at 20. Like *Kerry*, that case concerned mootness and thus involved a situation where a ripe claim already was before the Court and the question was whether the remedial measures that were undertaken were sufficient to moot the action. The difference is significant because Plaintiff has the burden to establish ripeness, whereas, under *Kerry*, the government has the burden to establish that "shaking the tree harder . . . might not bear" additional records before a case over which the court has jurisdiction might be deemed moot. *Kerry*, 844 F.3d at 955.

Accordingly, Plaintiff's claims also should be dismissed for lack of ripeness.

### C. Plaintiff Has Failed to Show This Case is Not Moot

As a preliminary matter, while Defendants bear the burden of establishing that the case is moot*, see Moharam v. Transportation Sec. Admin.*, 134 F.4th 598, 605 (D.C. Cir. 2025), the Court need not reach that question where, as here, Plaintiff has not met its burden of stating facts to show it has standing and that its claims are ripe. In other words, mootness only is an issue if the Court first determines that it has jurisdiction over this action in the first instance. Because jurisdiction is lacking based on Plaintiff's failure to plausibly plead a concrete injury, and because Plaintiff's claims also are not ripe, the Court need not reach the distinct question of whether the case has become moot. Importantly, it is Plaintiff's burden, not the burden of Defendants, to establish that this Court had jurisdiction in the first instance. As already established, Plaintiff has failed to meet that burden.

To the extent the Court determines that it had jurisdiction over Plaintiff's claims, Defendants have met their burden of establishing that adequate remedial measures have been

taken, and Plaintiff's claims are moot. "[W]hen action is taken that effectively extinguishes the case or controversy before the court, the case must be dismissed as moot." *Jud. Watch, Inc. v. Pompeo*, 744 F. App'x 3, 4 (D.C. Cir. 2018) (citing *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 400 (D.C. Cir. 2017)). Once the Government "has taken every reasonable action to retrieve any remaining emails," referral to the Attorney General becomes "pointless." Id. (quoting *Kerry*, 844 F.3d at 956). Such is the case here. Because Plaintiff obtained the relief Plaintiff sought, Plaintiff's claim is moot and should be dismissed. DOE has taken remedial measures to ensure that any DOE-work-related emails on three custodians' personal email accounts were forwarded to their agency email accounts. Ex. 3 to Burns Decl. Further, NARA has determined, as regards the alleged mishandling of private emails, that "DOE has sufficiently demonstrated that it has recovered all federal records allegedly removed by the custodians." Bradley Decl. (ECF 19-2) ¶ 21; *see* Defs.' Mot. at 23-24. As regards alleged Signal usage by Seth Cohen, DOE has confirmed via digital investigation that Signal "was not, and has never been" installed on Cohen's government-furnished devices. Ex. 5 to Burns Decl. Because Cohen did not use Signal on work-issued devices, and all records on personal devices have been recovered, Plaintiff cannot point to a non-speculative basis on which to conclude that Defendants failed to recover all unlawfully-removed records or establish their fatal loss. Nor is Signal use co-extensive with the destruction of federal records outside of a NARA-approved record schedule.

In its opposition, Plaintiff avers that Defendants have not met their burden of showing Plaintiff's claims are moot because (1) "DOE does not explain whether its efforts in fact resulted in the recovery of additional emails beyond those that EDF obtained through the FACA litigation," (2) "DOE has also provided only limited and highly sanitized information regarding its investigation into the use of personal email," (3) DOE has not produced its Office of Inspector

General report of its investigation, and (4) "DOE does not suggest that it made any efforts to check whether Cohen had installed Signal on his personal device, or even that it ever asked Cohen whether he used Signal to send work-related communications." Pl.'s Opp'n at 24-25. With respect to points (1), (2), and (3), Plaintiff does not identify a legal basis for its apparent expectation that DOE should provide it with all documents and information related to DOE's internal investigation of the alleged removal of federal records. DOE has appropriately corresponded with NARA, consistent with applicable regulations, and has provided Plaintiff and the Court with copies of DOE's letters to NARA and descriptions of the actions DOE has taken.

Regarding point (4), Plaintiff's demand that DOE question Mr. Cohen as to whether Signal is installed on his personal devices and whether he ever used Signal for DOE work that proposal is both unreasonable and unnecessary. First, Mr. Cohen is no longer a DOE employee, Burns Decl. (ECF No. 19-1) ¶ 29, and is not obligated to answer questions from DOE about his privately owned devices. Second, there is simply no well-pled factual basis to support the proposition that Mr. Cohen used Signal for DOE work-related purposes. The most specific allegation in Plaintiff's pleadings related to Mr. Cohen's alleged use of Signal is a January 2025 news article that does not mention Mr. Cohen or DOE, but does report that unidentified Department of Government Efficiency ("DOGE") staffers participated in Signal groups around the time of the Inauguration. Am. Compl. ¶ 59, n.2. Plaintiff's brief also asserts that Plaintiff "came to learn, through a third party with direct knowledge" that Mr. Cohen "used the messaging app Signal for substantive work communications." Pl.'s Opp'n at 7. But Plaintiff does not say the referenced "substantive work communications" occurred *while* Mr. Cohen was employed by DOE. In any event, allegations about this anonymous "third party" are not pled in Plaintiff's Amended Complaint and are

unsupported by evidence. DOE has established that Mr. Cohen did not have Signal installed on his government devices, and Plaintiff's claim regarding Signal is moot.

To the extent the Court determines that it had jurisdiction over Plaintiff's claims, Defendants have met their burden of establishing that adequate remedial measures have been taken such that the claims are moot. However, should the Court disagree as to mootness at this stage, Defendants reserve the right to renew their mootness argument on a motion for summary judgment.

**III. Plaintiff Has Failed to State a Claim for Relief on the Merits**

Finally, in its opposition, Plaintiff avers that its amended complaint plausibly alleged (1) "Defendants are required to take a discrete agency action that they have refused to take," Pl.'s Opp'n at 27; and (2) "by refusing to initiate an enforcement action as required, Defendants have "unlawfully withheld or unreasonably delayed" agency action. 5 U.S.C. § 706(1)," *id*. at 29.

First, in its opposition, Plaintiff declares that its "letters put Defendants on notice of the actual removal of federal records," Pl.'s Opp'n at 28, but Plaintiff fails to address how either its Complaint or Amended Complaint plausibly plead that its February 9, 2026 and June 4, 2026 letters were sufficient to place the DOE and NARA on actual notice of an unlawful removal of records. An action under section 706(1) of the APA, or for mandamus, requires the existence of a "crystal clear" duty, *see In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) and Plaintiff's letters—consisting of allegations only—fall short of establishing that any such duty existed when this action was filed. Plaintiff cites to *Am. First Legal Found. v. Becerra*, Civ. A. No. 24-1092, 2024 WL 3741402 (D.D.C. Aug. 9, 2024) to support its contention that it meets § 706(1)'s threshold, but that case actually undermines Plaintiff's contention, because, in that case, the defendant conceded that it "delete[ed] its former employees' emails." *Am. First Legal Found. v. Becerra*, Civ. A. No. 24-1092 (RC), 2024 WL 3741402, at *5 (D.D.C. Aug. 9, 2024). In this case, there has been no such concession.

Second, Plaintiff fails to state facts supporting its contention that an unreasonable period of time has elapsed. *See Am. First Legal Found.*, 2024 WL 3741402, at *7. As an initial matter, the relevant period is the time between the date when the alleged duty arose and the filing of the lawsuit. Thus, even were the Court to accept Plaintiff's allegations as to when the duty arose, the delay between that date and the filing of this action was five weeks. Plaintiff has failed to cite any case authority establishing that such a period of time is unreasonable.

Indeed, to "evaluate whether an agency's delay is unreasonable, [courts in this district] apply [a] six-factor test:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the Court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 105 (D.D.C. 2024) (*citing In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999). This test is often applied at the pleading stage. *See Oystacher v. Rubio*, Civ. A. No. 25-3276 (BAH), 2026 WL 1998762, at *8 (D.D.C. July 10, 2026); *Hussain v. Baker*, Civ. A. No. 25-3075 (SLS), 2026 WL 1815522, at *2 (D.D.C. June 24, 2026); *Sharov v. Rubio*, Civ. A. No. 25-1930-MAU, 2026 WL 759476, at *4 (D.D.C. Mar. 18, 2026).

Here, in neither its Complaint nor Amended Complaint, does Plaintiff provide any allegations raising an inference that the agency's alleged delay is unreasonable. Indeed, the term "unreasonable delay" does not appear in the original or Amended Complaint other than in Plaintiff's paraphrasing of 5 U.S.C. § 706 in the counts of each pleading. *E.g.,* Am. Compl. ¶¶ 70, 76. Under the Rule 12(b)(6) standard, Plaintiff's failure to plead unreasonable delay supersedes any attempt by Plaintiff to try to manufacture an argument for unreasonable delay in its opposition brief. *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 109 (D.D.C. 2018) (quoting *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003)) ("'It is axiomatic that a complaint may not be amended by the briefs in opposition.'").

Thus, Plaintiff's APA claim under section 706(1) and mandamus claim has not been plausibly pled.

## IV. Plaintiff's Supplemental Complaint Would Be Futile.

Plaintiff asks this Court to grant Plaintiff leave to file the already-filed "Amended Complaint" *nunc pro tunc*, meaning that Plaintiff is asking the Court to grant leave retroactively when it was never sought in the first instance. For reasons discussed above, however, granting leave would be futile and the request should be denied.

The "Amended Complaint" does not seek to alter the allegations relevant to the claim regarding private email usage based on the February 2026 letter other than to identify a few additional FOIA requests that are still undergoing processing. As those allegations are insufficient to establish standing for that claim for reasons addressed above, the amendments relating to that claim are futile. *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 24 (D.D.C. 2015) (quoting *Hettinga v. United States*, 677 F.3d 471, 480 (D.C.Cir. 2012)) ("a court may deny a motion to file a

supplemental complaint as futile 'if the proposed claim[s] would not survive a motion to dismiss.'").

The "Amended Complaint" also seeks to add a claim concerning alleged Signal usage based on the June 4, 2026 letter to NARA but that amendment also is futile for reasons addressed above. Plaintiff fails to plausibly plead that Cohen used Signal in a way that violated the FRA, that Plaintiff has suffered any concrete injury related to the alleged Signal usage, or that its Signal usage claim was ripe at the time the "Amended Complaint" was filed. Merely alleging Signal use, without more, does not allege an unauthorized destruction or removal of federal records. Signal use is not co-extensive with using personal accounts to conduct official business. But even if it were, the FRA permits using unofficial accounts to conduct official business as long as any resultant federal records are copied to an official account at the time of creation or transmission, or forwarded within 20 business days. 44 U.S.C. § 2911. Nor is Signal use co-extensive with the destruction of federal records outside of a NARA-approved record schedule. Plaintiff likewise has failed to plead that its conclusory allegations in the June 4, 2026, letter gave rise to any duty to act on the part of NARA or that NARA's response to those allegations was unreasonably delayed.

For all of the reasons set forth above, and those stated in Defendants' Motion to Dismiss, the request for leave should be denied as futile. Indeed, denial of leave to amend is especially warranted here because "'[w]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint[.]'" *Wright v. Dougherty Cty., Ga.*, 358 F.3d 1352, 1356 (11th Cir. 2004) (quoting *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981)); *see also Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.,* 270 F. Supp. 3d 158 (D.D.C. 2017); *Lans v. Gateway 2000*, 84 F. Supp. 2d 112, 116-17 (D.D.C. 1999) ("[I]f a plaintiff lacks standing . . . [at] the time of the filing of the original

complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over the entire matter.”). This rule flows from the established principle that “the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.” *Davis v. Fed. Election Comm’n*, 554 U.S. 724, 734 (2008) (citation modified); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)); *but see Scahill v. District of Columbia*, 909 F. 3d 1177, 1184 (D.C. Cir. 2018) (“a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint”).

Plaintiff continues to lack standing and its claims continue to be unripe for adjudication. Therefore, the Court should deny Plaintiff leave to file its supplemental complaint. *Organic Trade Ass'n v. United States Dep't of Agric.*, 834 F. Supp. 3d 1, 14 (D.D.C. 2026) (“the plain text of Rule 15(d) suggests the district court has wider discretion to deny supplementation than leave to amend.”)

* * *

## CONCLUSION

For these reasons, the Court should dismiss the Complaint and deny Plaintiff's Motion to Amend and/or Supplement their Complaint Nunc Pro Tunc.

Dated: October 22, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ Derrick A. Petit
Derrick A. Petit, D.C. Bar No. 144466
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7269
Derrick.Petit@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER WRIGHT,<br>Secretary of Energy, et al.,<br><br>Defendants. | Civil Action No. 26-0928 (CJN) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Motion to Amend and/or Supplement their Complaint Nunc Pro Tunc (ECF No. 21), Defendants' Opposition, and the entire record herein, it is hereby

ORDERED that Plaintiff's Motion to Amend and/or Supplement their Complaint Nunc Pro Tunc is DENIED.

SO ORDERED:

__________________
Date

__________________________________
CARL J. NICHOLS
United States District Judge